IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WESTERN & SOUTHERN FINANCIAL GROUP, INC. AND IFS FINANCIAL SERVICES, INC., | ) ) ) | |
| | ) | C.A. No: |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TOUCHSTONE INVESTMENT CONSULTANTS, LLC, | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT,
FALSE DESIGNATION OF ORIGIN AND CYBERSQUATTING UNDER THE ACPA**

Plaintiffs Western & Southern Financial Group, Inc. ("Western & Southern") and IFS Financial Services, Inc. ("IFS") (jointly, "Plaintiffs"), for their complaint against Defendant Touchstone Investment Consultants state as follows:

**NATURE OF ACTION**

1. Western & Southern is one of the most well-known and respected financial services organizations in the United States. With a heritage that dates back to 1888, Western & Southern provides life insurance, annuities, mutual funds and investments to individuals and businesses throughout the country. Western & Southern's subsidiary, IFS, was established in 1991 and includes, as one of its business units, Touchstone Investments, comprised of Touchstone Securities, Inc. and Touchstone Advisors, Inc. (collectively, "Touchstone"). Touchstone provides investment advice and offers a variety of mutual fund products under the Touchstone name (collectively, the "Touchstone Funds") across the investment spectrum. Touchstone Funds are sold nationally through a network of more than 11,000 licensed broker-dealers, financial planners and financial institutions, including nearly 400 active producers and

more than 2000 business contacts in the State of Minnesota. IFS owns three federal trademark registrations for Touchstone covering various financial services relating to mutual funds, variable annuities and investment advice.

2.    Defendant Touchstone Investment Consultants, LLC is not associated with Plaintiffs, but provides investment advice to individuals and institutions with assets in excess of $1 million. Defendant recommends its clients to various investment managers who are licensed to sell, among other things, mutual funds. Upon information and belief, some of the investment managers associated with Defendant offer Touchstone Funds. Indeed, Defendant's Principal, Mr. David Gutzke, on December 19, 2005 sent an e-mail to Plaintiff's counsel, Joseph R. Dreitler, stating that, " I just noticed that one of our selected investment managers (we suggest our clients hire this firm and they make the final decision) is Frank Mastrapasqua who manages your client's mutual fund, Touchstone Growth Opportunities Fund!" Defendant's unauthorized use of the Touchstone name for its investment services is likely to confuse customers and cause them to believe that Defendant is sponsored by or affiliated with Touchstone. Accordingly, Touchstone is entitled to a permanent injunction to prevent Defendant's unauthorized use of the famous and well-respected Touchstone name to identify itself and market its services.

## THE PARTIES

3.    Western & Southern Financial Group is a corporation organized under the laws of the State of Ohio with its principal place of business at 400 Broadway, Cincinnati, Ohio 45202.

4.    IFS Financial Services, Inc. is member of the Western & Southern Financial Group and is a corporation organized under the laws of the State of Ohio with its principal place of business at 303 Broadway, Suite 1100, Cincinnati, Ohio 45202, incorporated on December 13, 1993 as "IFS Investment Advisors, Inc." and registered as an Investment Advisor with the Securities and Exchange Commission on February 16, 1994. IFS Investment Advisors changed

2

its name to Touchstone Advisors, Inc. on June 6, 1994. A copy of Touchstone Advisors' current ADV is attached as Exhibit A.

5.    Touchstone Investment Consultants, LLC, upon information and belief, is a Delaware LLC, having been formed on March 28, 2005 (copy of State of Delaware Secretary of State record attached as Exhibit B). Touchstone Investment Consultants, LLC qualified as a foreign corporation to do business in the State of Minnesota on April 5, 2005 (copy of State of Minnesota Secretary of State record attached as Exhibit C), with a principal place of business located at 500 Washington Avenue South, Suite 2015, Minneapolis, Minnesota 55415. On July 7, 2005 Touchstone Investment Consultants, LLC registered as an Investment Adviser with the Securities & Exchange Commission (a copy of Form ADV with an effective date of July 12, 2005 is attached as Exhibit D).

## JURISDICTION AND VENUE

6.    This is an action for infringement of trademarks registered under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, 15 U.S.C. § 1114(a); and false designation of origin and cybersquatting under the Lanham Act, 15 U.S.C. § 1125(a) and (d).

7.    This court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

3

## BACKGROUND FACTS

### The Touchstone Marks

8.     Western & Southern is a Fortune 500 company and one of only eleven life insurance groups in the world with a Standard & Poor's AA+ or higher rating.  Western & Southern is comprised of more than a dozen financial services affiliates that provide life insurance, annuities, investment advice and investments under a number of trademarks, including the Touchstone trademark.

9.     According to Kiplinger's Personal Finance, Touchstone Investments is ranked among the top 25 Wholesale Mutual Fund firms in long-term fund net sales in 2004. Touchstone's Large-Gap Growth fund was the best performer in that class for the First Quarter of 2005, and second best overall for the year with a 16.37% return -- more than 10 points better than the category average for the year.  *See* Exhibit E.  Touchstone offers mutual funds that employ a wide range of investment styles and asset classes, and are managed by carefully screened and rigorously monitored independent portfolio managers who act as sub-advisers to the funds.  The Touchstone Funds are sold nationally through a network of more than 11,000 broker-dealers, financial planners and financial institutions, with over 400 active producers in Minnesota.  Touchstone operates a website at www.touchstoneinvestments.com where a potential investor can go to learn more about the company and the Funds   Investors in Touchstone Funds can also access their personal account information on a secure section of the website.  A printout of Plaintiff's website home page is attached as Exhibit F.

10.     Touchstone Investments' process for selecting and monitoring its Funds' sub-advisers is unique among mutual fund companies.  Touchstone Investments evaluates potential sub-advisers with various quantitative measurements, such as comparing their performance

4

against their peers and benchmark standards, and also analyzes their qualitative resources, such as knowledge level and compliance with applicable investment rules and strategies. This selection and monitoring process allows Touchstone Investments to offer to its investors mutual funds with solid, sustainable performance within each investment option. On its website at www.touchstoneinvestments.com, Touchstone Investments describes this selection and monitoring process as the "Touchstone Process." A printout of the Touchstone Investments web pages relating to its selection and monitoring process is attached as Exhibit G, and a brochure describing the "Touchstone Process" is attached as Exhibit H.

11.    IFS owns the following federally registered trademarks and service marks for use in connection with the Touchstone Funds:

> TOUCHSTONE- Registration No. 1,977,192, registered May 28, 1996 for financial services, namely investment, management and distribution regarding mutual funds, variable annuities and fixed annuities; and brokerage trade clearing services;

> THE TOUCHSTONE FAMILY OF FUNDS, 1,974,147, registered May 14, 1996 for financial services, namely mutual fund investment, brokerage, and distribution.

> TOUCHSTONE INVESTMENTS – Registration No. 2,792,701, registered December 9, 2003 for financial services, namely, investment management and distribution regarding mutual funds, variable annuities and fixed annuities; and brokerage and brokerage trade clearing services.

Certified copies of the certificates of registration for each of these trademarks (the "Touchstone Registered Marks") are attached to this complaint as Exhibits I-K. In addition, Touchstone has used other trademarks containing the word "Touchstone" for various financial services and has common law trademark rights in such terms (the registered trademarks and common law trademarks are collectively referred to as the "Touchstone Marks").

12.    The certificates of registration identified in the preceding paragraph are valid and subsisting, and IFS owns record title to the registered trademarks described above.

13.    The certificates of registration are prima facie evidence of the validity of the Touchstone Registered Marks, of IFS's ownership of the Touchstone Registered Marks, and IFS's exclusive right to use the Touchstone Registered Marks in connection with the goods and services specified in the certificates of registration enumerated above pursuant to 15 U.S.C. § 1115(a), as well as constructive notice of the registrant's claim of ownership under 15 U.S.C. § 1072.

14.    Each of the Touchstone Registered Marks is incontestable, which is conclusive evidence of their validity under 15 U.S.C. § 1115(b).

15.    Plaintiffs have used Touchstone as a trademark and service mark continuously and exclusively in connection with Touchstone's mutual fund products and financial services since 1994. Touchstone currently has more than $7.5 billion in assets under management and uses the Touchstone Marks solely in connection with offering the Touchstone Funds and related services throughout the United States.

16.    Plaintiffs maintain strict control over the use of the Touchstone Marks. The Touchstone Funds are offered to the public only through licensed broker dealers, financial planners and institutions, using prospectuses that make extensive and prominent use of the Touchstone Marks.

17.    Since 1994, the Touchstone Funds have been advertised extensively throughout the United States. In addition to various trade publications, Touchstone Funds are listed in mutual fund tables and posted on industry databases such as Morningstar.com and smartmoney.com and are advertised in direct mailings, promotions, NASD-regulated advertising, conference sponsorships and other marketing and public relations activities. The Touchstone Funds have also received coverage in the Investor's Business Daily, Barron's, BusinessWeek

6

Online, Smart Money.com, and Kiplinger's Personal Finance, and Touchstone portfolio managers have been panelists or guests on CNBC and Fox News. *See* articles attached as Exhibit L. The Touchstone Funds have been the subject of extensive coverage in the financial press, including recent articles in the Wall Street Journal. Exhibit M. Because of this extensive and uniform promotion, marketing and advertisement, the investing public and those persons interested in purchasing mutual fund products have come to associate the Touchstone Marks with the Touchstone Funds.

18.     Touchstone spends more than $1.5 million per year on advertising, marketing and promotional materials with the Touchstone Marks in connection with offering and promoting its Touchstone Funds through print ads, web development, conferences, sponsorships, promotional items, and other means throughout the United States.

19.     The advertising and promotion of the Touchstone Funds through the use of the Touchstone Marks for more than twelve years has caused the investing public and investment professionals to recognize the Touchstone mark as an indicator of quality financial products, and to seek out and purchase Touchstone mutual funds rather than those of other providers.

20.     The Touchstone Marks have become and are associated solely and exclusively with Plaintiffs in the minds of consumers and investment professionals interested in financial investing and related services.

## Defendant's Infringing Activities

21.     Defendant is an independent investment advisory firm that claims to work with institutions and individuals with investment portfolios in excess of $1 million. Defendant does not sell financial products directly, but touts its ability to provide its clients with access to a "wide range of available asset classes and investment managers."

22.   Upon information and belief, Defendant did not begin offering investment consulting services under the name "Touchstone Investment Consultants" until August 2005 Defendant's website at www.touchstoneinvestmentconsultants.com is very similar in look and design to Plaintiff's www.touchstoneinvestments.com website. Compare Ex. G with Ex. N, a printout of Defendant's website. Defendant's website describes the method that Defendant uses to provide investment advice as the "Touchstone Way," and clients can access account information directly from the website. Defendant also utilizes at least one of Plaintiffs' sub-advisers for the Touchstone Growth Opportunities Fund, and may employ other investment advisers who sell and/or recommend Touchstone Funds. Thus, Defendants are actually providing access to Plaintiffs' products to the same customer base as purchasers of Plaintiffs' products. Under these circumstances, the potential for confusion among consumers and investment professionals is very significant.

23.   On September 16, 2005, Plaintiffs' outside counsel sent Defendant the cease and desist letter attached as Exhibit O. Defendant responded by telephone 3 days later, denying any potential for consumer confusion and actually offering to "partner" with Plaintiffs. *See* Exhibit P. On December 16, 2005, Plaintiffs' outside counsel reiterated its demand that Defendants cease all use of the Touchstone name and transfer the touchstoneinvestmentconsultants.com website to Plaintiffs. *See* Exhibit Q. Via email correspondence, Defendant continued its insistence that the parties could work together. *See* Exhibit R. Finally, Defendant's outside counsel sent a reply to Plaintiffs' counsel stating that her client's use of the "Touchstone" trademark predated Defendant's use, and asserting Defendant's purported right to continue to use the name. *See* Exhibit S. According to the WHOIS domain registry records, the domain name www.touchstoneinvestmentconsultants.com was not registered until May 9, 2005. *See* Exhibit T.

8

24.     Defendant is continuing its infringing use of the Touchstone Registered Marks.

## COUNT ONE
## TRADEMARK INFRINGEMENT

25.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 24 as if fully restated herein.

26.     Upon information and belief, Defendant's use of the Touchstone trademark in connection with offering investment advisory and financial consulting services was with knowledge of Plaintiffs' well-known use of the Touchstone Marks in the financial services industry.

27.     Defendant's use of the Touchstone trademark will create a likelihood of confusion through an association of sponsorship, affiliation or endorsement by Plaintiffs in an appreciable number of the consumers of the financial consulting services offered by Defendants as well as in all potential consumers who view the website located at www.touchstoneinvestmentconsultants.com, which bears numerous instances of the TOUCHSTONE marks in connection with the offering of financial services. Such consumers will also assume that Plaintiffs are somehow affiliated with, sponsored, endorsed by, have underwritten, have licensed the Defendant to sell the Touchstone Funds, or that Plaintiffs' sub-advisers are affiliated with Defendant, which is false.

28.     The goodwill of the Touchstone Registered Marks is of enormous value, and Plaintiffs are suffering and will continue to suffer immediate and irreparable harm should Defendant's unauthorized offering of financial consulting services under the Touchstone trademark on the www.touchstoneinvestmentconsultants.com website continue.

29.     The acts of Defendant in its unauthorized use of Touchstone as a trademark in connection with offering its financial consulting services are intended to and will divert to the

9

Defendant the benefit of the business reputation and goodwill symbolized by the Touchstone Marks which belong exclusively to Plaintiffs. Such acts will confuse potential investors in Plaintiffs' Touchstone Funds into thinking that Defendant and/or its representatives are offering investment advice or financial services that are somehow backed by, underwritten by, licensed by, endorsed by, sponsored, affiliated with or connected with Plaintiffs.

30.     Defendant's infringing use of the Touchstone trademark, and offering its financial services over the Internet under the Touchstone trademark and domain name will likely continue unless enjoined by this Court.

31.     Plaintiffs are entitled to a permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

**COUNT TWO**
**FALSE DESIGNATION OF ORIGIN**

32.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 31 as if fully restated herein.

33.     Defendant's use of the Touchstone trademark in connection with its offering of financial services falsely represents that such services originate with, are sponsored, endorsed, underwritten or licensed by Plaintiffs.

34.     Defendant is an unauthorized user of the Touchstone trademarks and Plaintiffs cannot exercise any control over the nature and quality of Defendant's financial services, or the investment advisers it recommends to its clients.

35.     Upon information and belief, Defendant's false designation of origin has been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Plaintiffs among consumers and in the investment community

10

36. Plaintiffs' goodwill among consumers and in the investment community is of enormous value, and Plaintiffs will suffer irreparable harm if Defendant's false designation of origin as to the Touchstone Registered Marks is allowed to continue.

37. Defendant's false designation of origin will likely continue unless enjoined by this Court.

38. Plaintiffs are entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited, to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees

## COUNT THREE
### CYBERSQUATTING

39. Plaintiffs incorporate the allegations contained in paragraphs 1 through 38 as if fully restated herein.

40. Defendant has acted in bad faith to profit by registering a domain name that contains Plaintiff's federally-registered "Touchstone" mark and is confusingly similar to Plaintiffs' touchstoneinvestments.com domain name

41. Defendants registered the touchstoneinvestmentconsultants.com domain name on May 9, 2005, long after Plaintiffs' Touchstone trademarks had become identified solely and exclusively with Plaintiffs in the minds of the consumers interested in investing services and among the investment community, long after Plaintiffs' federal trademark registrations of Touchstone, and long after Plaintiffs registered the touchstoneinvestments com domain name on July 9, 2002.

42. Defendant's domain name registration and operation of the touchstoneinvestmentconsultants.com website has been without Plaintiffs' authorization.

11

43.     Defendant has no intellectual property rights in the Touchstone trademark, nor does the domain name touchstoneinvestmentconsultants.com consist of the legal name of the Defendant who registered the domain.

44.     The foregoing acts and conduct of Defendants constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). Such conduct entitles Plaintiff to permanent injunctive relief and statutory damages in an amount of up to $100,000 under 15 U.S.C. § 1117(d).

WHEREFORE, Plaintiffs request that the Court order:

A.     The issuance of a permanent injunction enjoining Defendant, its officers, directors, and its agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from using the Touchstone trademark in any manner in the advertising, promoting or selling of any financial services, and from infringing or falsely designating the origin of the Touchstone Registered Marks;

B.     That Defendant immediately cease use of the word Touchstone as a trademark, trade name and corporate name, and file appropriate documents to effect such changes with all governmental agencies within seven (7) days of this Court's order.

C.     That Defendant account to Plaintiffs for its profits, the actual damages suffered by Plaintiffs as a result of Defendant's acts of infringement and false designation of origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Plaintiffs' known rights;

D.     The issuance of a permanent injunction enjoining Defendant from using  or seeking to register, as a trademark, trade name, corporate name or domain name, any of the Touchstone Registered Marks or any term that includes the word Touchstone for financial

12

services or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Plaintiffs with Defendant;

E.    That the domain name registrar of "touchstoneinvestmentconsultants.com", GoDaddy.com, to immediately lock this domain name and transfer it to Plaintiffs;

F.    That Defendant surrender all copies of any materials mentioning financial services that it has created or obtained bearing the Touchstone marks for destruction, and that it be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

G.    That the local telephone company to immediately disconnect telephone number (612) 230-3700 and any other telephone number currently assigned to Defendant, and not forward any calls from such disconnected numbers to any subsequent telephone number issued to Defendant;

H.    That Defendant contact all local, state and federal agencies and regulatory bodies and advise them that it is not connected or affiliated with Plaintiffs;

I.    That Defendant provide a list of all clients of its services and send each client a letter, approved in advance by Plaintiffs, advising that they are not connected or affiliated with Plaintiffs and informing each client of Defendant's new name;

J.    That Defendant pay compensatory and treble damages to Plaintiffs;

K.    That Defendant disgorge all profits realized from its offering of financial consulting services under the Touchstone name;

L.    That Defendant pay Plaintiffs' attorneys' fees, together with the costs of this suit; and

M.    All other and further relief as may be just and equitable.

OF COUNSEL:
Joseph R. Dreitler
Mary R. True
Brian J. Downey
Frost Brown Todd, LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 651-6800


Dated:  May 23, 2006

Frederick L. Cottrell, III (#2555)
Jeffrey L. Moyer (#3309)
Steven J. Fineman (#4025)
Richards, Layton & Finger P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
moyer@rlf.com
fineman@rlf.com
Attorneys for Plaintiffs, Western & Southern
Financial Group, Inc. and IFS Financial Services,
Inc.

14

# EXHIBIT A

**Form ADV (Paper Version)**
**UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION**

| DOMESTIC INVESTMENT ADVISER EXECUTION PAGE |
| --- |

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial application for SEC registration and all amendments to registration.

## Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such persons may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is founded, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing*.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

Signature: _Patricia Wilson_     Date: _3-9-2006_

Printed Name: **Patricia Wilson**     Title: **Chief Compliance Officer**

Adviser *CRD* Number: **107028**

.pyright © 2004 National Regulatory Services (Portions of Software Only)

# FORM ADV (Paper Version)
## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| PART 1A |
|---|

**WARNING:**   Complete this form truthfully. False statements or omissions may result in denial of your application, revocation of your registration, or criminal prosecution. You must keep this form updated by filing periodic amendments. See Form ADV General Instruction 3.

Check the box that indicates what you would like to do (check all that apply):

☐   Submit an initial application to register as an investment adviser with the SEC.

☐   Submit an initial application to register as an investment adviser with one or more states.

☐   Submit an *annual updating amendment* to your registration for your fiscal year ended _____.

☒   Submit an other-than-annual amendment to your registration.

## Item   1       Identifying Information

Responses to this Item tell us who you are, where you are doing business, and how we can contact you.

A.  Your full legal name (if you are a sole proprietor, your last, first, and middle names):

    Touchstone Advisors, Inc.

B.  Name under which you primarily conduct your advisory business, if different from Item 1.A.

    *List on Section 1.B. of Schedule D any additional names under which you conduct your advisory business.*

C.  If this filing is reporting a change in your legal name (Item 1.A.) or primary business name (Item 1.B.), enter the new name and specify whether the name change is of   ☐ your legal name or   ☐ your primary business name:

D.  If you are registered with the SEC as an investment adviser, your SEC file number: 801- 45963

E.  If you have a number ("*CRD Number*") assigned by the *NASD's CRD* system or by the IARD system, your *CRD* number:

    **107028**

    *If your firm does not have a CRD number, skip this Item 1.E. Do not provide the CRD number of one of your officers, employees, or affiliates.*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV Part 1A Page 2 of 16 | Your Name | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|
| | Date  03/09/2006 | | SEC 801-Number | 801- 45963 |

F. *Principal Office and Place of Business*

(1) Address (do not use a P.O. Box):

**303 Broadway, Suite 1100**

_____
(number and street)

**Cincinnati**                 **OH**                    **45202**
_____
(city)                    (state/country)          (zip+4/postal code)

If this address is a private residence, check this box:     ☐

*List on Section 1 F of Schedule D any office, other than your principal office and place of business, at which you conduct investment advisory business. If you are applying for registration, or are registered, with one or more state securities authorities, you must list all of your offices in the state or states to which you are applying for registration or with whom you are registered. If you are applying for registration, or are registered only, with the SEC, list the largest five offices in terms of numbers of employees.*

(2) Days of week that you normally conduct business at your *principal office and place of business*:

☒   Monday - Friday    ☐  Other:    _____

Normal business hours at this location:    8:00 a.m. - 5:00 p.m.

(3) Telephone number at this location:    **(513)**        **362-8256**
                                          (area code)    (telephone number)

(4) Facsimile number at this location:    **(513)**        **362-8318**
                                          (area code)    (telephone number)

G. Mailing address, if different from your *principal office and place of business* address:

_____
(number and street)

_____
(city)                    (state/country)          (zip+4/postal code)

If this address is a private residence, check this box:       ☐

H. If you are a sole proprietor, state your full residence address, if different from your *principal office and place of business* address in Item 1 F.:

_____
(number and street)

_____
(city)                    (state/country)          (zip+4/postal code)

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Part 1A Page 3 of 16 | Your Name | | Touchstone Advisors, Inc. | | CRD Number | **107028** |
|---|---|---|---|---|---|---|
| | Date | 03/09/2006 | | | SEC 801-Number | 801- 45963 |

I. Do you have World Wide Web site addresses?    Yes ☐    No ☒

*If "yes" list these addresses on Section 1.I of Schedule D. If a web address serves as a portal through which to access other information you have published on the World Wide Web, you may list the portal without listing addresses for all of the other information. Some advisers may need to list more than one portal address. Do not provide individual electronic mail addresses in response to this Item.*

J. Contact Employee:

**Patricia Wilson**
_____
(name)

**Chief Compliance Officer**
_____
(title)

**(513)362-8256**                    **(513)362-8318**
_____    _____
(area code) (telephone number)     (area code) (facsimile number)

**303 Broadway, Suite 1100**
_____
(number and street)

**Cincinnati**            **OH**            **45202**
_____    _____    _____
(city)            (state/country)        (zip+4/postal code)

**patty.wilson@touchstoneinvestments.com**
_____
(electronic mail (e-mail) address, if contact employee has one)

*The contact employee should be an employee whom you have authorized to receive information and respond to questions about this Form ADV.*

K. Do you maintain some or all of the books and records you are required to keep under Section 204 of the Advisers Act, or similar state law, somewhere other than your *principal office and place of business?*
   Yes ☐    No ☒

   *If "yes," complete Section 1.K. of Schedule D.*

L. Are you registered with a *foreign financial regulatory authority?*        Yes ☐    No ☒

   *Answer "no" if you are not registered with a foreign financial regulatory authority, even if you have an affiliate that is registered with a foreign financial regulatory authority. If "yes," complete Section 1.L. of Schedule D*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A Page 4 of 16 | Date | **03/09/2006** | | SEC 801-Number | 801- 45963 |

## Item 2    SEC Registration

Responses to this Item help us (and you) determine whether you are eligible to register with the SEC. Complete this Item 2 only if you are applying for SEC registration or submitting an *annual updating amendment* to your SEC registration.

A. To register (or remain registered) with the SEC, you must check at least one of the Items 2.A(l) through 2.A(11), below. If you are submitting an *annual updating amendment* to your SEC registration and you are no longer eligible to register with the SEC, check Item 2.A(12). You:

    ☒  (1)  have *assets under management* of $25 million (in U.S. dollars) or more;

    *See Part IA Instruction 2.a. to determine whether you should check this box*

    ☐  (2)  have your *principal office and place of business* in the U.S. Virgin Islands or Wyoming;

    ☐  (3)  have your *principal office and place of business* outside the United States;

    ☒  (4)  are an investment adviser (or sub-adviser) to an investment company registered under the Investment Company Act of 1940;

    *See Part 1A Instruction 2.b. to determine whether you should check this box.*

    ☐  (5)  have been designated as a nationally recognized statistical rating organization;

    *See Part 1A Instruction 2.c. to determine whether you should check this box.*

    ☐  (6)  are a pension consultant that qualifies for the exemption in rule 203A-2(b);

    *See Part 1A Instruction 2.d. to determine whether you should check this box*

    ☐  (7)  are relying on rule 203A-2(c) because you are an investment adviser that *controls,* is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

    *See Part IA Instruction 2.e. to determine whether you should check this box. If you check this box, complete Section 2.A.(7) of Schedule D.*

    ☐  (8)  are a newly formed adviser relying on rule 203A-2(d) because you expect to be eligible for SEC registration within 120 days;

    *See Part 1A Instruction 2.f. to determine whether you should check this box. If you check this box, complete Section 2.A.(8) of Schedule D.*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | | CRD Number | 107028 |
|---|---|---|---|---|---|---|
| Part 1A Page 5 of 16 | Date | 03/09/2006 | | | SEC 801-Number | 801- 45963 |

☐  (9) are a multi-state adviser relying on rule 203A-2(e);

*See Part 1A Instruction 2.g. to determine whether you should check this box. If you check this box, complete Section 2.A(9) of Schedule D.*

☐  (10) are an Internet investment adviser relying on rule 203A-2(f);

*See Part 1A Instructions 2 h to determine whether you should check this box.*

☐  (11) have received an SEC *order* exempting you from the prohibition against registration with the SEC;

*If you check this box, complete Section 2.A(11) of Schedule D*

☐  (12) are no longer eligible to remain registered with the SEC.

*See Part 1A Instructions 2.i. to determine whether you should check this box.*

B.  Under state laws, SEC-registered advisers may be required to provide to *state securities authorities* a copy of the Form ADV and any amendments they file with the SEC. These are called *notice filings*. If this is an initial application, check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings you submit to the SEC. If this is an amendment to direct your *notice filings* to additional state(s), check and circle the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings you submit to the SEC. If this is an amendment to your registration to stop your *notice filings* from going to state(s) that currently receive them, circle the unchecked box(es) next to those state(s).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ AL | ☒ CT | ☐ HI | ☒ KY | ☐ MN | ☐ NH | ☒ OH | ☐ SC | ☐ VA |
| ☐ AK | ☐ DE | ☐ ID | ☐ LA | ☐ MS | ☒ NJ | ☐ OK | ☐ SD | ☐ WA |
| ☐ AZ | ☐ DC | ☐ IL | ☐ ME | ☐ MO | ☐ NM | ☐ OR | ☐ TN | ☐ WV |
| ☐ AR | ☐ FL | ☐ IN | ☐ MD | ☐ MT | ☒ NY | ☐ PA | ☐ TX | ☐ WI |
| ☐ CA | ☐ GA | ☐ IA | ☐ MA | ☐ NE | ☐ NC | ☐ PR | ☐ UT | |
| ☐ CO | ☐ GU | ☐ KS | ☐ MI | ☐ NV | ☐ ND | ☐ RI | ☐ VT | |

*If you are amending your registration to stop your notice filings from going to a state that currently receives them and you do not want to pay that state's notice filing fee for the coming year, your amendment must filed before the end of the year (December 31).*

## Item  3    Form of Organization

A.  How are you organized?

☒   Corporation          ☐   Sole Proprietorship              ☐  Limited Liability Partnership (LLP)
☐   Partnership          ☐   Limited Liability Company (LLC)

☐   Other (specify):_____

*If you are changing your response to this Item, see Part 1A Instruction 4.*

B.  In what month does your fiscal year end each year?          **December**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A Page 6 of 16 | Date | **03/09/2006** | | SEC 801-Number | **801- 45963** |

C. Under the laws of what state or country are you organized?  **Ohio**

*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed  If you are a sole proprietor, provide the name of the state or country where you reside.*

*If you are changing your response to this Item, see Part 1A Instruction 4.*

## Item 4    Successions

A. Are you, at the time of this filing, succeeding to the business of a registered investment adviser?

  ☐ Yes    ☒ No

*If "yes," complete Item 4 B. and Section 4 of Schedule D.*

B. Date of Succession: _____

       (mm/dd/yyyy)

*If you have already reported this succession on a previous Form ADV filing, do not report the succession again. Instead, check "No." See Part 1A Instruction 4.*

## Item 5    Information About Your Advisory Business

Responses to this Item help us understand your business, assist us in preparing for on-site examinations, and provide us with data we use when making regulatory policy. Part 1A Instruction 5.a. provides additional guidance to newly-formed advisers for completing this Item 5.

### *Employees*

A. Approximately how many *employees* do you have? Include full and part-time *employees* but do not include any clerical workers.

 ☒ 1- 5   ☐ 6- 10   ☐ 11-50   ☐ 51-250   ☐ 251-500   ☐ 501-1,000   ☐ More than 1,000

 If more than 1,000, how many? _____   (round to the nearest 1,000)

B.

 (1) Approximately how many of these *employees* perform investment advisory functions (including research)?

  ☐ 0   ☒ 1-5   ☐ 6-10    ☐ 11-50    ☐ 51-250    ☐ 251-500    ☐ 501-1,000

  ☐ More than 1,000   If more than 1,000, how many?_____ (round to the nearest 1,000)

 (2) Approximately how many of these *employees* are registered representatives of a broker-dealer?

  ☐ 0   ☒ 1-5   ☐ 6-10    ☐ 11-50    ☐ 51-250    ☐ 251-500    ☐ 501-1,000

  ☐ More than 1,000   If more than 1,000, how many?_____ (round to the nearest 1,000)

*If you are organized as a sole proprietorship, include yourself as an employee in your responses to Items 5.A(1) and 5.B(2). If an employee performs more than one function, you should count that employee in each of your responses to Item 5.B(1) and 5.B(2).*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A Page 7 of 16 | Date | **03/09/2006** | | SEC 801-Number | 801- 45963 |

(3) Approximately how many firms or other *persons* solicit advisory *clients* on your behalf?

☒ 0    ☐ 1-5    ☐ 6-10    ☐ 11-50    ☐ 51-250    ☐ 251-500    ☐ 501-1,000
☐  More than 1,000    If more than 1,000, how many? _____ (round to the nearest 1,000)

*In your response to Item 5.B(3), do not count any of your employees and count a firm only once - do not count each of the firm's employees that solicit on your behalf.*

## Clients

C.  To approximately how many *clients* did you provide investment advisory services during your most-recently completed fiscal year?

☐ 0    ☐ 1-10    ☐ 11-25    ☒ 26-100    ☐ 101-250    ☐ 251-500
☐  More than 500    If more than 500, how many? _____ (round to the nearest 500)

D.  What types of *clients* do you have? Indicate the approximate percentage that each type of *client* comprises of your total number of *clients*.

| | | None | Up To 10% | 11-25% | 26-50% | 51-75% | More Than 75% |
|---|---|---|---|---|---|---|---|
| (1) | Individuals (other than *high net worth individuals*) | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (2) | *High net worth individuals* | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (3) | Banking or thrift institutions | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (4) | Investment companies (including mutual funds) | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| (5) | Pension and profit sharing plans (other than plan participants) | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (6) | Other pooled investment vehicles (e.g., hedge funds) | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (7) | Charitable organizations | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (8) | Corporations or other businesses not listed above | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (9) | State or municipal *government entities* | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| (10) | Other: _____ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

*The category "individuals" includes trusts, estates, 401(k) plans and IRAs of individuals and their family members, but does not include businesses organized as sole proprietorships.*

*Unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, check "None" in response to Item 5.D(4).*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|---|
| Part 1A Page 8 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

## Compensation Arrangements

E. You are compensated for your investment advisory services by (check all that apply):

- ☒ (1) A percentage of assets under your management
- ☐ (2) Hourly charges
- ☐ (3) Subscription fees (for a newsletter or periodical)
- ☐ (4) Fixed fees (other than subscription fees)
- ☐ (5) Commissions
- ☐ (6) *Performance-based fees*
- ☐ (7) Other (specify): _____

## Assets Under Management

F. (1) Do you provide continuous and regular supervisory or management services to securities portfolios?   ☒ Yes   ☐ No

(2) If yes, what is the amount of your assets under management and total number of accounts?

| | | U.S. Dollar Amount | | Total Number of Accounts |
|---|---|---|---|---|
| Discretionary: | (a) $ | 7,679,231,340 .00 | (d) | 52 |
| Non-Discretionary: | (b) $ | 0 .00 | (e) | 0 |
| Total: | (c) $ | 7,679,231,340 .00 | (f) | 52 |

*Part 1A Instruction 5 b explains how to calculate your assets under management. You must follow these instructions carefully when completing this Item.*

## Advisory Activities

G. What type(s) of advisory services do you provide? Check all that apply.

- ☐ (1) Financial planning services
- ☐ (2) Portfolio management for individuals and/or small businesses
- ☒ (3) Portfolio management for investment companies
- ☐ (4) Portfolio management for businesses or institutional *clients* (other than investment companies)
- ☐ (5) Pension consulting services
- ☐ (6) Selection of other advisers
- ☐ (7) Publication of periodicals or newsletters
- ☐ (8) Security ratings or pricing services
- ☐ (9) Market timing services
- ☐ (10) Other (specify): _____

*Do not check Item 5.G(3) unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940.*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|---|
| Part 1A Page 9 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801-45963 |

H. If you provide financial planning services, to how many *clients* did you provide these services during your last fiscal year?

☒ 0    ☐ 1-10    ☐ 11-25    ☐ 26-50    ☐ 51-100    ☐ 101-250    ☐ 251-500

☐ More than 500          If more than 500, how many? _____ (round to the nearest 500)

I. If you participate in a *wrap fee program*, do you (check all that apply):

☐ (1) *sponsor* the *wrap fee program*?

☐ (2) act as a portfolio manager for the *wrap fee program*?

*If you are a portfolio manager for a wrap fee program, list the names of the programs and their sponsors in Section 5.I(2) of Schedule D.*

*If your involvement in a wrap fee program is limited to recommending wrap fee programs to your clients, or you advise a mutual fund that is offered through a wrap fee program, do not check either Item 5 I(1) or 5 I(2).*

## Item 6    Other Business Activities

In this Item, we request information about your other business activities.

A. You are actively engaged in business as a (check all that apply):

☐ (1) Broker-dealer
☐ (2) Registered representative of a broker-dealer
☐ (3) Futures commission merchant, commodity pool operator, or commodity trading advisor
☐ (4) Real estate broker, dealer, or agent
☐ (5) Insurance broker or agent
☐ (6) Bank (including a separately identifiable department or division of a bank)
☐ (7) Other financial product salesperson (specify): _____

B. (1) Are you actively engaged in any other business not listed in Item 6 A. (other than giving investment advice)?          ☐ Yes    ☒ No

(2) If yes, is this other business your primary business?          ☐ Yes    ☐ No

*If "yes," describe this other business on Section 6 B. of Schedule D.*

(3) Do you sell products or provide services other than investment advice to your advisory *clients*?
☐ Yes    ☒ No

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A Page 10 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

## Item 7     Financial Industry Affiliations

In this Item, we request information about your financial industry affiliations and activities. This information identifies areas in which conflicts of interest may occur between you and your *clients*

Item 7 requires you to provide information about you and your *related persons*. Your *related persons* are all of your advisory affiliates and any *person* that is under common *control* with you.

   A. You have a *related person* that is a (check all that apply):

      ☒ (1) broker-dealer, municipal securities dealer, or government securities broker or dealer
      ☒ (2) investment company (including mutual funds)
      ☒ (3) other investment adviser (including financial planners)
      ☐ (4) futures commission merchant, commodity pool operator, or commodity trading advisor
      ☒ (5) banking or thrift institution
      ☒ (6) accountant or accounting firm
      ☒ (7) lawyer or law firm
      ☒ (8) insurance company or agency
      ☐ (9) pension consultant
      ☒ (10) real estate broker or dealer
      ☒ (11) sponsor or syndicator of limited partnerships

*If you checked item 7 A.(3), you must list on Section 7.A. of Schedule D all your related persons that are investment advisers. If you checked Item 7 A (1), you may elect to list on Section 7.A of Schedule D all your related persons that are broker-dealers. If you choose to list a related broker-dealer, the IARD system will accept a single Form U4 to register an investment adviser representative who also is a broker-dealer agent ("registered rep") of that related broker-dealer.*

   B. Are you or any *related person* a general partner in an *investment-related* limited partnership or manager of an *investment-related* limited liability company, or do you advise any other "private fund," as defined under SEC rule 203(b)(3)-1?        ☒ Yes   ☐ No

*If "yes," for each limited partnership or limited liability company, or (if applicable) private fund, complete Section 7 B. of Schedule D. If, however, you are an SEC-registered adviser <u>and</u> you have related persons that are <u>SEC-registered</u> advisers who are the general partners of limited partnerships or the managers of limited liability companies, you do not have to complete Section 7.B. of Schedule D with respect to those related advisers' limited partnerships or limited liability companies*

*To use this alternative procedure, you must state in the Miscellaneous Section of Schedule D:*
*(1) that you have related SEC-registered investment advisers that manage limited partnerships or limited liability companies that are not listed in Section 7.B. of your Schedule D;*
*(2) that complete and accurate information about those limited partnerships or limited liability companies is available in Section 7.B. of Schedule D of the Form ADVs of your related SEC-registered advisers; and*
*(3) whether your clients are solicited to invest in any of those limited partnerships or limited liability companies.*

## Item 8     Participation or Interest in *Client* Transactions

In this Item, we request information about your participation and interest in your *clients'* transactions. Like Item 7, this information identifies areas in which conflicts of interest may occur between you and your *clients*.

Like Item 7, Item 8 requires you to provide information about you and your *related persons*.

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A Page 11 of 16 | Date | **03/09/2006** | | SEC 801-Number | 801- 45963 |

### Proprietary Interest in *Client* Transactions

A. Do you or any *related person*:

                                                                     Yes    No

    (1) buy securities for yourself from advisory *clients*, or sell securities you own to advisory *clients* (principal transactions)?     ☒    ☐

    (2) buy or sell for yourself securities (other than shares of mutual funds) that you also recommend to advisory *clients*?     ☒    ☐

    (3) recommend securities (or other investment products) to advisory *clients* in which you or any *related person* has some other proprietary (ownership) interest (other than those mentioned in Items 8.A(l) or (2))?     ☐    ☒

### Sales Interest in *Client* Transactions

B. Do you or any *related person*:

                                                                        Yes    No

    (1) as a broker-dealer or registered representative of a broker-dealer, execute securities trades for brokerage customers in which advisory *client* securities are sold to or bought from the brokerage customer (agency cross transactions)?     ☐    ☒

    (2) recommend purchase of securities to advisory *clients* for which you or any *related person* serves as underwriter, general or managing partner, or purchaser representative?     ☐    ☒

    (3) recommend purchase or sale of securities to advisory *clients* for which you or any *related person* has any other sales interest (other than the receipt of sales commissions as a broker or registered representative of a broker-dealer)?     ☐    ☒

### Investment or Brokerage Discretion

C. Do you or any *related person* have *discretionary authority* to determine the:     Yes    No

    (1) securities to be bought or sold for a *client's* account?     ☒    ☐

    (2) amount of securities to be bought or sold for a *client's* account?     ☒    ☐

    (3) broker or dealer to be used for a purchase or sale of securities for a *client's* account?     ☒    ☐

    (4) commission rates to be paid to a broker or dealer for a *client's* securities transactions?     ☒    ☐

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|---|---|---|---|---|---|
| Part 1A<br>Page 12 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

|  | Yes | No |
|---|---|---|
| D. Do you or any *related person* recommend brokers or dealers to *clients*? | ☐ | ☒ |
| E. Do you or any *related person* receive research or other products or services other than execution from a broker-dealer or a third party in connection with *client* securities transactions? | ☒ | ☐ |
| F. Do you or any *related person*, directly or indirectly, compensate any *person* for *client* referrals? | ☒ | ☐ |

*In responding to this Item 8 F., consider in your response all cash and non-cash compensation that you or a related person gave any person in exchange for client referrals, including any bonus that is based, at least in part, on the number or amount of client referrals.*

## Item 9    Custody

In this Item, we ask you whether you or a *related person* has *custody* of *client* assets. If you are registering or registered with the SEC and you deduct your advisory fees directly from your *clients'* accounts but you do not otherwise have *custody* of your *clients'* funds or securities, you may answer "no" to Item 9A.(1) and 9A (2).

|  | Yes | No |
|---|---|---|
| A. Do you have *custody* of any advisory *clients'*: | | |
| (1) cash or bank accounts? | ☐ | ☒ |
| (2) securities? | ☐ | ☒ |
| B. Do any of your *related persons* have *custody* of any of your advisory *clients'*: | | |
| (1) cash or bank accounts? | ☐ | ☒ |
| (2) securities? | ☐ | ☒ |
| C. If you answered "yes" to either Item 9 B(l) or 9 B(2), is that *related person* a broker-dealer registered under Section 15 of the Securities Exchange Act of 1934? | ☐ | ☐ |

## Item 10    Control Persons

In this Item, we ask you to identify every *person* that, directly or indirectly, *controls* you.

If you are submitting an initial application, you must complete Schedule A and Schedule B. Schedule A asks for information about your direct owners and executive officers. Schedule B asks for information about your indirect owners. If this is an amendment and you are updating information you reported on either Schedule A or Schedule B (or both) that you filed with your initial application, you must complete Schedule C.

Does any *person* not named in Item 1.A. or Schedules A, B or C, directly or indirectly, *control* your management or policies?        ☐    Yes    ☒    No

*If yes, complete Section 10 of Schedule D*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|---|
| Part 1A Page 13 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

## Item 11    Disclosure Information

In this Item, we ask for information about your disciplinary history and the disciplinary history of all your *advisory affiliates*. We use this information to determine whether to grant your application for registration, to decide whether to revoke your registration or to place limitations on your activities as an investment adviser, and to identify potential problem areas to focus on during our on-site examinations. One event may result in "yes" answers to more than one of the questions below.

Your *advisory affiliates* are: (1) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions); (2) all of your officers, partners, or directors (or any *person* performing similar functions); and (3) all *persons* directly or indirectly *controlling* you or *controlled* by you. If you are a "separately identifiable department or division" (SID) of a bank, see the Glossary of Terms to determine who your *advisory affiliates* are.

*If you are registered or registering with the SEC, you may limit your disclosure of any event listed in Item 11 to ten years following the date of the event. If you are registered or registering with a state, you must respond to the questions as posed, you may, therefore, limit your disclosure to ten years following the date of an event only in responding to Items 11.A(1), 11 A(2), 11.B(1), 11.B(2), 11.D(4), and 11.H(1)(a). For purposes of calculating this ten-year period, the date of an event is the date the final order, judgment, or decree was entered, or the date any rights of appeal from preliminary orders, judgments, or decrees lapsed.*

For "Yes" answers to the following questions, complete a Criminal Action DRP.

|  |  | Yes | No |
|---|---|---|---|
| A. | In the past ten years, have you or any advisory *affiliate*: | | |
| (1) | been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ☐ | ☒ |
| (2) | been *charged* with any *felony*? | ☐ | ☒ |

*If you are registered or registering with the SEC, you may limit your response to Item 11.A(2) to charges that are currently pending.*

|  |  | | |
|---|---|---|---|
| B. | In the past ten years, have you or any *advisory affiliate*: | | |
| (1) | been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to a *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements, or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ☐ | ☒ |
| (2) | been charged with a misdemeanor listed in Item 11 B(1)? | ☐ | ☒ |

*If you are registered or registering with the SEC, you may limit your response to Item 11.B(2) to charges that are currently pending.*

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|---|
| Part 1A Page 14 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

For "yes" answers to the following questions, complete a Regulatory Action DRP

C. Has the SEC or the Commodity Futures Trading Commission (CFTC) ever:    <u>Yes</u>   <u>No</u>

   (1) *found* you or any *advisory affiliate* to have made a false statement or omission?    ☒   ☐

   (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of SEC or CFTC regulations or statutes?    ☒   ☐

   (3) *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?    ☐   ☒

   (4) entered an *order* against you or any *advisory affiliate* in connection with *investment-related* activity?    ☒   ☐

   (5) imposed a civil money penalty on you or any *advisory affiliate*, or *ordered* you or any *advisory affiliate* to cease and desist from any activity?    ☒   ☐

D. Has any other federal regulatory agency, any state regulatory agency, or any *foreign financial regulatory authority*:

   (1) ever *found* you or any *advisory affiliate* to have made a false statement or omission, or been dishonest, unfair, or unethical?    ☐   ☒

   (2) ever *found* you or any *advisory affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes?    ☐   ☒

   (3) ever *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?    ☐   ☒

   (4) in the past ten years, entered an *order* against you or any *advisory affiliate* in connection with an *investment-related* activity?    ☐   ☒

   (5) ever denied, suspended, or revoked your or any *advisory affiliate's* registration or license, or otherwise prevented you or any *advisory affiliate*, by *order*, from associating with an *investment-related* business or restricted your or any *advisory affiliate's* activity?    ☐   ☒

E. Has any *self-regulatory organization* or commodities exchange ever:

   (1) *found* you or any *advisory affiliate* to have made a false statement or omission?    ☐   ☒

   (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the SEC)?    ☐   ☒

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|
| Part 1A<br>Page 15 of 16 | Date | 03/09/2006 | SEC 801-Number | 801-45963 |

<table>
<tr><td></td><td>Yes</td><td>No</td></tr>
<tr><td>(3) *found* you or any *advisory affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?</td><td>☐</td><td>☒</td></tr>
<tr><td>(4) disciplined you or any *advisory affiliate* by expelling or suspending you or the *advisory affiliate* from membership, barring or suspending you or the *advisory affiliate* from association with other members, or otherwise restricting your or the *advisory affiliate's* activities?</td><td>☐</td><td>☒</td></tr>
<tr><td>F. Has an authorization to act as an attorney, accountant, or federal contractor granted to you or any *advisory affiliate* ever been revoked or suspended?</td><td>☐</td><td>☒</td></tr>
<tr><td>G. Are you or any *advisory affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of Item 11.C., 11.D., or 11.E.?</td><td>☐</td><td>☒</td></tr>
</table>

For "yes" answers to the following questions, complete a Civil Judicial Action DRP.          Yes    No

<table>
<tr><td>H. (1) Has any domestic or foreign court:</td><td></td><td></td></tr>
<tr><td>(a) in the past ten years, *enjoined* you or any *advisory affiliate* in connection with any *investment-related activity*?</td><td>☐</td><td>☒</td></tr>
<tr><td>(b) ever *found* that you or any *advisory affiliate* were *involved* in a violation of *investment-related* statutes or regulations?</td><td>☐</td><td>☒</td></tr>
<tr><td>(c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you or any *advisory affiliate* by a state or *foreign financial regulatory authority*?</td><td>☐</td><td>☒</td></tr>
<tr><td>(2) Are you or any *advisory affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of Item 11.H(1)?</td><td>☐</td><td>☒</td></tr>
</table>

## Item 12    Small Businesses

The SEC is required by the Regulatory Flexibility Act to consider the effect of its regulations on small entities. In order to do this, we need to determine whether you meet the definition of "small business" or "small organization" under rule 0-7.

Answer this Item 12 only if you are registered or registering with the SEC <u>and</u> you indicated in response to Item 5.F(2)(c) that you have assets under management of less than $25 million. You are not required to answer this Item 12 if you are filing for initial registration as a state adviser, amending a current state registration, or switching from SEC to state registration.

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | **107028** |
|----------|-----------|--|--------------------------|------------|------------|
| Part 1A Page 16 of 16 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

For purposes of this Item 12 only:

- Total Assets refers to the total assets of a firm, rather than the assets managed on behalf of *clients*. In determining your or another *person's* total assets, you may use the total assets shown on a current balance sheet (but use total assets reported on a consolidated balance sheet with subsidiaries included, if that amount is larger).

- Control means the power to direct or cause the direction of the management or policies of a *person*, whether through ownership of securities, by contract, or otherwise. Any *person* that directly or indirectly has the right to vote 25 percent or more of the voting securities, or is entitled to 25 percent or more of the profits, of another *person* is presumed to control the other *person*.

|  | <u>Yes</u> | <u>No</u> |
|--|-----|----|
| A. Did you have total assets of $5 million or more on the last day of your most recent fiscal year? | ☒ | ☐ |

*If "yes," you do not need to answer Items 12 B. and 12 C.*

B. Do you:

| | | |
|--|--|--|
| (1) *control* another investment adviser that had assets under management of $25 million or more on the last day of its most recent fiscal year? | ☐ | ☐ |
| (2) *control* another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ☐ | ☐ |

C. Are you:

| | | |
|--|--|--|
| (1) *controlled* by or under common *control* with another investment adviser that had assets under management of $25 million or more on the last day of its most recent fiscal year? | ☐ | ☐ |
| (2) *controlled* by or under common *control* with another *person* (other than a natural person) that had total assets of $5 million or more on the last day of its most recent fiscal year? | ☐ | ☐ |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

# FORM ADV (Paper Version)
## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| PART 1B |
|---|

**You must complete this Part 1B only if you are applying for registration, or are registered, as an investment adviser with any of the *state securities authorities*.**

Item 1    State Registration

Complete this Item 1 if you are submitting an initial application for state registration or requesting additional state registration(s). Check the boxes next to the states to which you are submitting this application. If you are already registered with at least one state and are applying for registration with an additional state or states, check the boxes next to the states in which you are applying for registration. Do not check the boxes next to the states in which you are currently registered or where you have an application for registration pending.

| ☐ AL | ☐ CT | ☐ HI | ☐ KY | ☐ MN | ☐ NH | ☐ OH | ☐ SC | ☐ VA |
|---|---|---|---|---|---|---|---|---|
| ☐ AK | ☐ DE | ☐ ID | ☐ LA | ☐ MS | ☐ NJ | ☐ OK | ☐ SD | ☐ WA |
| ☐ AZ | ☐ DC | ☐ IL | ☐ ME | ☐ MO | ☐ NM | ☐ OR | ☐ TN | ☐ WV |
| ☐ AR | ☐ FL | ☐ IN | ☐ MD | ☐ MT | ☐ NY | ☐ PA | ☐ TX | ☐ WI |
| ☐ CA | ☐ GA | ☐ IA | ☐ MA | ☐ NE | ☐ NC | ☐ PR | ☐ UT | |
| ☐ CO | ☐ GU | ☐ KS | ☐ MI | ☐ NV | ☐ ND | ☐ RI | ☐ VT | |

Item 2    Additional Information

A. *Person* responsible for supervision and compliance:

Patricia Wilson
_____
(name)

Chief Compliance Officer
_____
(title)

513-362-8256                    513-362-8318
_____
(area code) (telephone number)        (area code) (facsimile number)

303 Broadway, Suite 1100
_____
(number and street)

Cincinnati                  OH                45202
_____
(city)                (state/country)      (zip+4/postal code)

patty.wilson@touchstoneinvestments.com
_____
(electronic mail (e-mail) address, if the person has one)

If this address is a private residence, check this box: ☐

B. Bond/Capital Information, if required by your *home state*.

(1) Name of Issuing Insurance Company:

_____

(2) Amount of Bond: $ _____ .00

(3) Bond Policy Number: _____

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Your Name | | Touchstone Advisors, Inc. | CRD Number | 107028 |
|---|---|---|---|---|---|
| Part 1B Page 2 of 4 | Date | 03/09/2006 | | SEC 801-Number | 801- 45963 |

|  | **Yes** | **No** |
|---|---|---|
| (4) If required by your *home state*, are you in compliance with your *home state's* minimum capital requirements? | ☐ | ☐ |

For "yes" answers to the following question, complete a Bond DRP:

| C. Has a bonding company ever denied, paid out on, or revoked a bond for you? | ☐ | ☒ |
|---|---|---|

For "yes" answers to the following question, complete a Judgment/Lien DRP:

| D. Do you have any unsatisfied judgments or liens against you? | ☐ | ☒ |
|---|---|---|

For "yes" answers to the following questions, complete an Arbitration DRP:

E. Are you, any *advisory affiliate,* or any *management person* currently the subject of, or have you, any *advisory affiliate,* or any *management person* been the subject of, an arbitration claim alleging damages in excess of $2,500, involving any of the following:

| (1) any investment or an *investment-related* business or activity? | ☐ | ☒ |
|---|---|---|
| (2) fraud, false statement, or omission? | ☐ | ☒ |
| (3) theft, embezzlement, or other wrongful taking of property? | ☐ | ☒ |
| (4) bribery, forgery, counterfeiting, or extortion? | ☐ | ☒ |
| (5) dishonest, unfair, or unethical practices? | ☐ | ☒ |

For "yes" answers to the following questions, complete a Civil Judicial Action DRP:

F. Are you, any *advisory affiliate,* or any *management person* currently subject to, or have you, any *advisory affiliate,* or any *management person* been *found* liable in, a civil, *self-regulatory organization,* or administrative *proceeding* involving any of the following:

| (1) an investment or *investment-related* business or activity? | ☐ | ☒ |
|---|---|---|
| (2) fraud, false statement, or omission? | ☐ | ☒ |
| (3) theft, embezzlement, or other wrongful taking or property? | ☐ | ☒ |
| (4) bribery, forgery, counterfeiting, or extortion? | ☐ | ☒ |
| (5) dishonest, unfair, or unethical practices? | ☐ | ☒ |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV**<br>Part 1B<br>Page 3 of 4 | Your Name _____<br><br>Date  03/09/2006 _____ | Touchstone Advisors, Inc. | *CRD* Number  **107028**<br><br>SEC 801-Number  801-  45963 |
| --- | --- | --- | --- |

G.  Other Business Activities

   (1)  Are you actively engaged in business as a(n) (check all that apply):

   ☐   Attorney
   ☐   Certified public accountant
   ☐   Tax preparer

   (2)  If you are actively engaged in any business other than those listed in Item 6.A. of Part 1A or Item
   2.G(1) of Part 1B, describe the business and the approximate amount of time spent on that business:

H.  If you provide financial planning services, the investments made based on those services at the end of your
last fiscal year totaled:

|  | Securities<br>Investments | Non-Securities<br>Investments |
| --- | --- | --- |
| Under $100,000 | ☐ | ☐ |
| $100,001 to $500,000 | ☐ | ☐ |
| $500,001 to $1,000,000 | ☐ | ☐ |
| $1,000,001 to $2,500,000 | ☐ | ☐ |
| $2,500,001 to $5,000,000 | ☐ | ☐ |
| More than $5,000,000 | ☐ | ☐ |

   If securities investments are over $5,000,000, how much?
   $ _____  (round to the nearest $1,000,000)

   If non-securities investments are over $5,000,000, how much?
   $ _____  (round to the nearest $1,000,000)

I.  *Custody*

|  | Yes | No |
| --- | --- | --- |
| (1)  Do you withdraw advisory fees directly from your *clients'* accounts?<br>If you answered "yes", respond to the following: | ☐ | ☒ |
| (a) Do you send a copy of your invoice to the custodian or trustee at the<br>same time that you send a copy to the *client?* | ☐ | ☐ |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** | Your Name | Touchstone Advisors, Inc. | *CRD* Number | **107028** |
|---|---|---|---|---|
| Part 1B | Date | 03/09/2006 | SEC 801-Number | 801-  45963 |
| Page 4 of 4 | | | | |

<table>
<tr><td></td><td><u>Yes</u></td><td><u>No</u></td></tr>
<tr><td>(b) Does the custodian send quarterly statements to your <em>clients</em> showing all disbursements for the custodian account, including the amount of the advisory fees?</td><td>☐</td><td>☐</td></tr>
<tr><td>(c) Do your <em>clients</em> provide written authorization permitting you to be paid directly for their accounts held by the custodian or trustee?</td><td>☐</td><td>☐</td></tr>
<tr><td>(2) Do you act as a general partner for any partnership or trustee for any trust in which your advisory <em>clients</em> are either partners of the partnership or beneficiaries of the trust?<br>If you answered "yes", respond to the following:</td><td>☐</td><td>☐</td></tr>
<tr><td>(a) As the general partner of a partnership, have you engaged an attorney or an independent certified public accountant to provide authority permitting each direct payment or any transfer of funds or securities from the partnership account?</td><td>☐</td><td>☐</td></tr>
<tr><td>(3) Do you require prepayment of fees of more than $500 per <em>client</em> and for six months or more in advance?</td><td>☐</td><td>☐</td></tr>
</table>

J.  If you are organized as a sole proprietorship, please answer the following:

<table>
<tr><td></td><td><u>Yes</u></td><td><u>No</u></td></tr>
<tr><td>(1) (a) Have you passed, on or after January 1, 2000, the Series 65 examination?</td><td>☐</td><td>☐</td></tr>
<tr><td>(b) Have you passed, on or after January 1, 2000, the Series 66 examination and also passed, at any time, the Series 7 examination?</td><td>☐</td><td>☐</td></tr>
<tr><td>(2) (a) Do you have any investment advisory professional designations?</td><td>☐</td><td>☐</td></tr>
</table>

*If "no," you do not need to answer Item 2.J(2)(b).*

(b) I have earned and I am in good standing with the organization that issued the following credential:

☐  1. Certified Financial Planner ("CFP")
☐  2. Chartered Financial Analyst ("CFA")
☐  3. Chartered Financial Consultant (" ChFC")
☐  4. Chartered Investment Counselor ("CIC")
☐  5. Personal Financial Specialist ("PFS")
☐  6. None of the above

(3) Your social security number: _____

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0049 |
| Expires: | July 31, 2008 |
| Estimated average burden hours per response. . . . . | 9.402 |

**FORM ADV**

**Part II - Page 1**

## Uniform Application for Investment Adviser Registration

Name of Investment Adviser:

Touchstone Advisors, Inc.

| Address: (Number and Street) | (City) | (State) | (Zip Code) | Area Code   Telephone Number |
|---|---|---|---|---|
| 303 Broadway, Suite 1100 | Cincinnati | OH | 45202 | (513  ) 362-8256 |

This part of Form ADV gives information about the investment adviser and its business for the use of clients. The information has not been approved or verified by any governmental authority.

## Table of Contents

| Item Number | Item | Page |
|---|---|---|
| 1 | Advisory Services and Fees | 2 |
| 2 | Types of Clients | 2 |
| 3 | Types of Investments | 3 |
| 4 | Methods of Analysis, Sources of Information and Investment Strategies | 3 |
| 5 | Education and Business Standards | 4 |
| 6 | Education and Business Background | 4 |
| 7 | Other Business Activities | 4 |
| 8 | Other Financial Industry Activities or Affiliations | 4 |
| 9 | Participation or Interest in Client Transactions | 5 |
| 10 | Conditions for Managing Accounts | 5 |
| 11 | Review of Accounts | 5 |
| 12 | Investment or Brokerage Discretion | 6 |
| 13 | Additional Compensation | 6 |
| 14 | Balance Sheet | 6 |
| | Continuation Sheet | Schedule F |
| | Balance Sheet, if required | Schedule G |

(Schedules A, B, C, D, and E are included with Part 1 of this Form, for the use of regulatory bodies, and are not distributed to clients.)

Potential persons who are to respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV | Applicant: | SEC File Number: | Date: |
|---|---|---|---|
| **Part II - Page 2** | Touchstone Advisors, Inc. | 801- 45963 | 03/09/2006 |

**1.   A.   Advisory Services and Fees.** (check the applicable boxes)

For each type of service provided, state the approximate % of total advisory billings from that service. (See instruction below.)

Applicant:

| | | | |
|---|---|---|---|
| ☐ | (1) | Provides investment supervisory services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ % |
| ☒ | (2) | Manages investment advisory accounts not involving investment supervisory services . . . . . . . . . . . . . . . | **100** % |
| ☐ | (3) | Furnishes investment advice through consultations not included in either service described above . . . . . . . . . . . . . . . . . . | _____ % |
| ☐ | (4) | Issues periodicals about securities by subscription . . . . . . . . . . . . . . . . . . . . . . . . . | _____ % |
| ☐ | (5) | Issues special reports about securities not included in any service described above . . . . . . . . . . . . . . . . . . . . . . . . | _____ % |
| ☐ | (6) | Issues, not as part of any service described above, any charts, graphs, formulas, or other devices which clients may use to evaluate securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ % |
| ☐ | (7) | On more than an occasional basis, furnishes advice to clients on matters not involving securities . . . . . . . . . . . . . . | _____ % |
| ☐ | (8) | Provides a timing service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _____ % |
| ☐ | (9) | Furnishes advice about securities in any manner not described above . . . . . . . . . . . . . . . . . . . . . | _____ % |

(Percentages should be based on applicant's last fiscal year. If applicant has not completed its first fiscal year, provide estimates of advisory billings for that year and state that the percentages are estimates.)

**B.**   Does applicant call any of the services it checked above financial planning or some similar term? . . . . . . . . . . . .

Yes No
☐ ☒

**C.**   Applicant offers investment advisory services for: (check all that apply)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ | (1) | A percentage of assets under management | ☐ | (4) | Subscription fees |
| ☐ | (2) | Hourly charges | ☐ | (5) | Commissions |
| ☐ | (3) | Fixed fees (not including subscription fees) | ☐ | (6) | Other |

**D**   For each checked box in A above, describe on Schedule F:

- the services provided, including the name of any publication or report issued by the adviser on a subscription basis or for a fee
- applicant's basic fee schedule, how fees are charged and whether its fees are negotiable
- when compensation is payable, and if compensation is payable before service is provided, how a client may get a refund or may terminate an investment advisory contract before its expiration date

**2.**   **Types of Clients** — Applicant generally provides investment advice to: (check those that apply)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | A | Individuals | ☐ | E. | Trusts, estates, or charitable organizations |
| ☐ | B | Banks or thrift institutions | ☐ | F. | Corporations or business entities other than those listed above |
| ☒ | C | Investment companies | ☐ | G. | Other (describe on Schedule F) |
| ☐ | D | Pension and profit sharing plans | | | |

Answer all items. Complete amended pages in full, circle amended items and file with execution page (page 1).

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV Part II - Page 3 | Applicant: Touchstone Advisors, Inc. | SEC File Number: 801- 45963 | Date: 03/09/2006 |
|---|---|---|---|

**3.  Types of Investments.** Applicant offers advice on the following: (check those that apply)

A.  Equity securities

- [ ] (1)  exchange-listed securities
- [ ] (2)  securities traded over-the-counter
- [ ] (3)  foreign issuers

- [ ] B  Warrants

- [ ] C  Corporate debt securities (other than commercial paper)

- [ ] D.  Commercial paper

- [ ] E  Certificates of deposit

- [ ] F  Municipal securities

G.  Investment company securities:

- [x] (1)  variable life insurance
- [x] (2)  variable annuities
- [x] (3)  mutual fund shares

- [ ] H.  United States government securities

I  Options contracts on:
- [ ] (1)  securities
- [ ] (2)  commodities

J.  Futures contracts on:
- [ ] (1)  tangibles
- [ ] (2)  intangibles

K.  Interests in partnerships investing in:
- [ ] (1)  real estate
- [ ] (2)  oil and gas interests
- [ ] (3)  other (explain on Schedule F)

- [ ] L.  Other (explain on Schedule F)

**4.  Methods of Analysis, Sources of Information, and Investment Strategies.**

A  Applicant's security analysis methods include: (check those that apply)

- (1) [ ] Charting
- (2) [ ] Fundamental
- (3) [ ] Technical
- (4) [ ] Cyclical
- (5) [x] Other (explain on Schedule F)

B  The main sources of information applicant uses include: (check those that apply)

- (1) [ ] Financial newspapers and magazines
- (2) [ ] Inspections of corporate activities
- (3) [ ] Research materials prepared by others
- (4) [ ] Corporate rating services
- (5) [ ] Timing services
- (6) [ ] Annual reports, prospectuses, filings with the Securities and Exchange Commission
- (7) [ ] Company press releases
- (8) [x] Other (explain on Schedule F)

C.  The investment strategies used to implement any investment advice given to clients include: (check those that apply)

- (1) [ ] Long term purchases (securities held at least a year)
- (2) [ ] Short term purchases (securities sold within a year)
- (3) [ ] Trading (securities sold within 30 days)
- (4) [ ] Short sales
- (5) [ ] Margin transactions
- (6) [ ] Option writing, including covered options, uncovered options, or spreading strategies
- (7) [x] Other (explain on Schedule F)

**Answer all items. Complete amended pages in full, circle amended items and file with execution page (page 1).**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV<br>Part II - Page 4 | Applicant:<br><br>Touchstone Advisors, Inc. | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|

**5.    Education and Business Standards.**

Are there any general standards of education or business experience that applicant requires of those involved in determining or giving investment advice to clients? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Yes  No
☒  ☐

(If yes, describe these standards on Schedule F)

**6.    Education and Business Background.**
For:

- each member of the investment committee or group that determines general investment advice to be given to clients, or
- if the applicant has no investment committee or group, each individual who determines general investment advice given to clients (if more than five, respond only for their supervisors)
- each principal executive officer of applicant or each person with similar status or performing similar functions

On Schedule F, give the:

- name
- year of birth
- formal education after high school
- business background for the preceding five years

**7.    Other Business Activities.** (check those that apply)

☐  A.    Applicant is actively engaged in a business other than giving investment advice.

☐  B.    Applicant sells products or services other than investment advice to clients.

☒  C.    The principal business of applicant or its principal executive officers involves something other than providing investment advice.

(For each checked box describe the other activities, including the time spent on them, on Schedule F.)

**8.    Other Financial Industry Activities or Affiliations.** (check those that apply)

☐  A    Applicant is registered (or has an application pending) as a securities broker-dealer.

☐  B    Applicant is registered (or has an application pending) as a futures commission merchant, commodity pool operator or commodity trading adviser.

C    Applicant has arrangements that are material to its advisory business or its clients with a related person who is a:

| | | | | | |
|---|---|---|---|---|---|
| ☒ | (1) | broker-dealer | ☒ | (7) | accounting firm |
| ☒ | (2) | investment company | ☒ | (8) | law firm |
| ☒ | (3) | other investment adviser | ☒ | (9) | insurance company or agency |
| ☐ | (4) | financial planning firm | ☐ | (10) | pension consultant |
| ☐ | (5) | commodity pool operator, commodity trading adviser or futures commission merchant | ☒ | (11) | real estate broker or dealer |
| ☒ | (6) | banking or thrift institution | ☒ | (12) | entity that creates or packages limited partnerships |

(For each checked box in C, on Schedule F identify the related person and describe the relationship and the arrangements.)

Yes  No
D    Is applicant or a related person a general partner in any partnership in which clients are solicited to invest?  . . . . . . . . . . . . . . .    ☒  ☐

(If yes, describe on Schedule F the partnerships and what they invest in.)

---

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV<br>Part II - Page 5 | Applicant:<br><br>Touchstone Advisors, Inc. | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|

**9.**   **Participation or Interest in Client Transactions.**

Applicant or a related person: (check those that apply)

☐   A.   As principal, buys securities for itself from or sells securities it owns to any client.

☐   B.   As broker or agent effects securities transactions for compensation for any client.

☐   C.   As broker or agent for any person other than a client effects transactions in which client securities are sold to or bought from a brokerage customer.

☐   D.   Recommends to clients that they buy or sell securities or investment products in which the applicant or a related person has some financial interest.

☐   E.   Buys or sells for itself securities that it also recommends to clients.

(For each box checked, describe on Schedule F when the applicant or a related person engages in these transactions and what restrictions, internal procedures, or disclosures are used for conflicts of interest in those transactions.)

Describe, on Schedule F, your code of ethics, and state that you will provide a copy of your code of ethics to any client or prospective client upon request.

**10.**   **Conditions for Managing Accounts.** Does the applicant provide investment supervisory services, manage investment advisory accounts or hold itself out as providing financial planning or some similarly termed services  *and* impose a minimum dollar value of assets or other conditions for starting or maintaining an account? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Yes   No

☒   ☐

(If yes, describe on Schedule F.)

**11.**   **Review of Accounts.** If applicant provides investment supervisory services, manages investment advisory accounts, or holds itself out as providing financial planning or some similarly termed services:

A.   Describe below the reviews and reviewers of the accounts.  For reviews, include their frequency, different levels, and triggering factors. For reviewers, include the number of reviewers, their titles and functions, instructions they receive from applicant on performing reviews, and number of accounts assigned each.

**See Schedule F**

B.   Describe below the nature and frequency of regular reports to clients on their accounts.

**See Schedule F**

---

**Answer all items. Complete amended pages in full, circle amended items and file with execution page (page 1).**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| FORM ADV Part II - Page 6 | Applicant: Touchstone Advisors, Inc. | SEC File Number: 801-45963 | Date: 03/09/2006 |
|---|---|---|---|

**12. Investment or Brokerage Discretion.**

A. Does applicant or any related person have authority to determine, without obtaining specific client consent, the:

|  |  | Yes | No |
|---|---|---|---|
| (1) | securities to be bought or sold? | ☒ | ☐ |
| (2) | amount of the securities to be bought or sold? | ☒ | ☐ |
| (3) | broker or dealer to be used? | ☒ | ☐ |
| (4) | commission rates paid? | ☒ | ☐ |

B. Does applicant or a related person suggest brokers to clients?  ☐ Yes  ☒ No

For each yes answer to A describe on Schedule F any limitations on the authority  For each yes to A(3), A(4) or B, describe on Schedule F the factors considered in selecting brokers and determining the reasonableness of their commissions  If the value of products, research and services given to the applicant or a related person is a factor, describe:

- the products, research and services
- whether clients may pay commissions higher than those obtainable from other brokers in return for those products and services
- whether research is used to service all of applicant's accounts or just those accounts paying for it; and
- any procedures the applicant used during the last fiscal year to direct client transactions to a particular broker in return for products and research services received

**13. Additional Compensation.**

Does the applicant or a related person have any arrangements, oral or in writing, where it:

A    is paid cash by or receives some economic benefit (including commissions, equipment or non-research services) from a non-client in connection with giving advice to clients?  ☒ Yes  ☐ No

B    directly or indirectly compensates any person for client referrals?  ☒ Yes  ☐ No

(For each yes, describe the arrangements on Schedule F.)

**14. Balance Sheet.** Applicant must provide a balance sheet for the most recent fiscal year on Schedule G if applicant:

- has custody of client funds or securities (unless applicant is registered or registering only with the Securities and Exchange Commission); or
- requires prepayment of more than $500 in fees per client and 6 or more months in advance

Has applicant provided a Schedule G balance sheet?  ☐ Yes  ☒ No

---

Answer all items. Complete amended pages in full, circle amended items and file with execution page (page 1).

Copyright © 2004 National Regulatory Services (Portions of Software Only )

| **FORM ADV** | Your Name: _____ | Touchstone Advisors, Inc. | SEC File No.: 801- ____ 45963 |
|---|---|---|---|
| Schedule A | Date: 03/09/2006 | | CRD No.: 107028 |

## Direct Owners and Executive Officers

1. Complete Schedule A only if you are submitting an initial application. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.

2. Direct Owners and Executive Officers. List below the names of:

    (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer (Chief Compliance Officer is required and cannot be more than one individual), director, and any other individuals with similar status or functions;

    (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);

    Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, *a person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

    (c) if you are organized as a partnership, *all* general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;

    (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and

    (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.

3. Do you have any indirect owners to be reported on Schedule B?    ☒    Yes    ☐    No

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.

5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:    NA - less than 5%    B - 10% but less than 25%    D - 50% but less than 75%
                                      A - 5% but less than 10%    C - 25% but less than 50%    E - 75% or more

7. (a) In the *Control Person* column, enter "Yes" if the person has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have control. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
   (c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM | YYYY | Own-ership Code | Control Person | PR | CRD No If None: S.S. No. and Date of Birth, IRS Tax No., or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| MCGRUDER, JILL, TRIPP | I | CEO | 02 | 1999 | NA | Y | N | 1221720 |
| GRIFO, JAMES HOWARD | I | PRESIDENT | 05 | 2004 | NA | Y | N | 858940 |
| WIEDENHEFT, TERRIE, ANN | I | CFO | 05 | 2000 | NA | Y | N | 2619213 |
| WILSON, PATRICIA, JEAN | I | CCO | 12 | 1993 | NA | Y | N | 1528289 |
| WUEBBLING, DONALD, JOSEPH | I | DIRECTOR | 12 | 1993 | NA | Y | N | 473438 |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** | Your Name: _____ Touchstone Advisors, Inc. | SEC File No : _801-_ 45963 |
|---|---|---|
| Schedule A | Date: _03/09/2006_ | CRD No.: _107028_ |

## Direct Owners and Executive Officers

1. Complete Schedule A only if you are submitting an initial application. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.

2. Direct Owners and Executive Officers. List below the names of:

    (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer (Chief Compliance Officer is required and cannot be more than one individual), director, and any other individuals with similar status or functions;

    (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);

    Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, *a person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

    (c) if you are organized as a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;

    (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and

    (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.

3. Do you have any indirect owners to be reported on Schedule B?　　☒　Yes　　☐　No

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.

5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:　　NA - less than 5%　　　　　B - 10% but less than 25%　　　　D - 50% but less than 75%
                        A - 5% but less than 10%　　　　C - 25% but less than 50%　　　　E - 75% or more

7. (a) In the *Control Person* column, enter "Yes" if the person has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have control. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
    (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
    (c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM | YYYY | Own-ership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No., or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| CLARK, JAMES, NORMAN | I | DIRECTOR | 12 | 1993 | NA | Y | N | 2185377 |
| TAULBEE, RICHARD, KELLY | I | VP | 12 | 1993 | NA | Y | N | 2185367 |
| VANCE, JAMES | I | VP & TREASURER | 05 | 1999 | NA | Y | N | 3235324 |
| IFS FINANCIAL SERVICES, INC. | IDE | SHAREHOLDER | 12 | 1993 | E | Y | N | 31-1328371 |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** | Your Name: | | Touchstone Advisors, Inc. | SEC File No.: 801- **45963** |
|---|---|---|---|---|
| Schedule B | Date: **03/09/2006** | | | CRD No.: **107028** |

## Indirect Owners

1. Complete Schedule B only if you are submitting an initial application. Schedule B asks for information about your indirect owners; you must first complete Schedule A, which asks for information about your direct owners. Use Schedule C to amend this information.

2. Indirect Owners. With respect to each owner listed on Schedule A (except individual owners), list below:

    (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

    For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

    (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

    (c) in the case of an owner that is a trust, the trust and each trustee; and

    (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 25% or more of the LLC's capital, and (ii) if managed by elected managers, all elected managers.

3. Continue up the chain of ownership listing all 25% owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

5. Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are: C - 25% but less than 50%    D - 50% but less than 75%    E - 75% or more    F - Other (general partner, trustee, or elected manager)

7. (a) In the *Control Person* column, enter "Yes" if the person has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
    (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
    (c) Complete each column

| FULL LEGAL NAME (Individuals: Last Name, Date of Birth, First Name, Middle Name) | DE/ FE/ I | Entity in Which Interest is Owned | Status | Date Status — Acquired | | Owner- ship Code | Control Person PR | CRD No. If None: Person S.S. No. and IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|---|
| | | | | MM | YYYY | | | |
| THE WESTERN-SOUTHERN LIFE | DE | IFS FINANCIAL SERVICES | SHAREHOLD | 10 | 1991 | E | Y | N | 31-1000236 |
| THE WESTERN & SOUTHERN LIF I | DE | WSLAC | SHAREHOLD | 04 | 1990 | E | Y | N | 31-0487145 |
| WESTERN & SOUTHERN FINANCI | DE | WSLIC | SHAREHOLD | 09 | 2000 | E | Y | N | 31-1732404 |
| WESTERN-SOUTHERN MUTUAL | DE | WSFG | SHAREHOLD | 09 | 2000 | E | Y | N | 31-1732405 |
| | | | | | | | | | |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** | Your Name: _____ | Touchstone Advisors, Inc. | SEC File No.: _801- 45963 |
| --- | --- | --- | --- |
| Schedule C | Date: 03/09/2006 _____ | | CRD No.: 107028 |

## Amendments to Schedules A and B

1. Use Schedule C only to amend information requested on either Schedule A or Schedule B. Refer to Schedule A and Schedule B for specific instructions for completing this Schedule C. Complete each column.

2. In the Type of Amendment column, indicate "A" (addition), "D" (deletion), or "C" (change in information about the same *person*).

3. Ownership codes are:
   NA - less than 5%        C - 25% but less than 50%    G - Other (general partner, trustee, or
   A - 5% but less than 10%    D - 50% but less than 75%       elected member)
   B - 10% but less than 25%    E - 75% or more

4. List below all changes to Schedule A (Direct Owners and Executive Officers):

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Type of Amendment | Title or Status | Date Title or Status Acquired MM | YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

5. List below all changes to Schedule B (Indirect Owners):

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Type of Amendment | Entity in Which Interest is Owned | Status | Date Status Acquired MM | YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No., or Employer ID No. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV**<br>Schedule D<br>**Page 1 of 5** | Your Name: _____ Touchstone Advisors, Inc. _____ SEC File No.: 801- 45963 |
| | Date:    03/09/2006 _____    CRD No.:    **107028** |

Certain items in Part 1A of Form ADV require additional information on Schedule D. Use this Schedule D Page 1 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an    ☐ INITIAL or    ☒ AMENDED Schedule D Page 1.

**SECTION 1.B Other Business Names**

List your other business names and the jurisdictions in which you use them. You must complete a separate Schedule D for each business name.

Check only one box:  ☐ Add  ☐ Delete  ☐ Amend

Name _____    Jurisdictions _____

**SECTION 1.F.    Other Offices**

Complete the following information for each office, other than your *principal office and place of business*, at which you conduct investment advisory business. You must complete a separate Schedule D Page 1 for each location. If you are applying for registration, or are registered, only with the SEC, list only the largest five (in terms of numbers of employees).

Check only one box:  ☐ Add  ☒ Delete

_____
(number and street)

_____    _____    _____
(city)                       (state/country)      (zip+4/postal code)

If this address is a private residence, check this box:    ☐

_____    _____    _____    _____
(area code)        (telephone number)     (area code)         (facsimile number)

**SECTION 1.I.    World Wide Web Site Addresses**

List your World Wide Web site addresses. You must complete a separate Schedule D for each World Wide Web site address.

Check only one box:  ☐ Add  ☐ Delete

World Wide Web Site Address: _____

**SECTION 1.K.    Location of Books and Records**

Complete the following information for each location at which you keep your books and records, other than your *principal office and place of business*. You must complete a separate Schedule D Page 1 for each location.

Check only one box:  ☐ Add  ☐ Delete  ☐ Amend

Name of entity where books and records are kept: _____

_____
(number and street)

_____    _____    _____
(city)                       (state/country)      (zip+4/postal code)

If this address is a private residence, check this box:    ☐

_____    _____    _____    _____
(area code)        (telephone number)     (area code)         (facsimile number)

This is (check one):    ☐ one of your branch offices or affiliates.
                        ☐ a third-party unaffiliated recordkeeper.
                        ☐ other.

Briefly describe the books and records kept at this location.

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Schedule D Page 2 of 5 | Your Name: | Touchstone Advisors, Inc. | SEC File No.: 801-_45963_ |
|---|---|---|---|
| | Date: 03/09/2006 | | CRD No.: 107028 |

Use this Schedule D Page 2 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an ☐ INITIAL or ☒ AMENDED Schedule D Page 2.

SECTION 1.L. Registration with *Foreign Financial Regulatory Authorities*

List the name, in English, of each *foreign financial regulatory authority* and country with which you are registered. You must complete a separate Schedule D Page 2 for each *foreign financial regulatory authority* with whom you are registered.

Check only one box: ☐ Add ☐ Delete

English Name of *Foreign Financial Regulatory Authority* _____

Name of Country _____

SECTION 2.A(7) Affiliated Adviser
If you are relying on the exemption in rule 203A-2(c) from the prohibition on registration because you *control*, are *controlled* by, or are under common *control* with an investment adviser that is registered with the SEC and your *principal office and place of business* is the same as that of the registered adviser, provide the following information:

Name of Registered Investment Adviser _____

CRD Number of Registered Investment Adviser (if any) _____

SEC Number of Registered Investment Adviser 801 - _____

SECTION 2.A(8) Newly Formed Adviser

If you are relying on rule 203A-2(d), the newly formed adviser exemption from the prohibition on registration, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations. You must make both of these representations:

☐ I am not registered or required to be registered with the SEC or a state securities authority and I have a reasonable expectation that I will be eligible to register with the SEC within 120 days after the date my registration with the SEC becomes effective.

☐ I undertake to withdraw from SEC registration if, on the 120th day after my registration with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers Act from registering with the SEC.

SECTION 2.A(9) Multi-State Adviser

If you are relying on rule 203A-2(e), the multi-state adviser exemption from the prohibition on registration, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations.

If you are applying for registration as an investment adviser with the SEC, you must make both of these representations:

☐ I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of 30 or more states to register as an investment adviser with the securities authorities in those states.

☐ I undertake to withdraw from SEC registration if I file an amendment to this registration indicating that I would be required by the laws of fewer than 25 states to register as an investment adviser with the securities authorities of those states.

If you are submitting your *annual updating amendment*, you must make this representation:

☐ Within 90 days prior to the date of filing this amendment, I have reviewed the applicable state and federal laws and have concluded that I am required by the laws of at least 25 states to register as an investment adviser with the securities authorities in those states.

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Schedule D Page 3 of 5 | Your Name: | | Touchstone Advisors, Inc. | SEC File No.: 801-45963 |
|---|---|---|---|---|
| | Date: | 03/09/2006 | | CRD No.: **107028** |

Use this Schedule D Page 3 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an   ☐ INITIAL or   ☒ AMENDED Schedule D Page 3.

**SECTION 2.A(11) SEC Exemptive** *Order*

If you are relying upon an SEC *order* exempting you from the prohibition on registration, provide the following information:

Application Number: 803-_____     Date of order: _____
                                                              (mm/dd/yyyy)

**SECTION 4        Successions**

Complete the following information if you are succeeding to the business of a currently-registered investment adviser. If you acquired more than one firm in the succession you are reporting on this Form ADV, you must complete a separate Schedule D Page 3 for each acquired firm. See Part 1A Instruction 4.

Name of Acquired Firm _____

Acquired Firm's SEC File No. (if any) 801-_____     Acquired Firm's CRD Number (if any) _____

*SECTION 5 I(2) Wrap Fee Programs*

If you are a portfolio manager for one or more *wrap fee programs*, list the name of each program and its *sponsor*. You must complete a separate Schedule D Page 3 for each *wrap fee program* for which you are a portfolio manager.

Check only one box:   ☐ Add   ☐ Delete   ☐ Amend

Name of Wrap Fee Program _____

Name of Sponsor _____

**SECTION 6.B.      Description of Primary Business**

Describe your primary business (not your investment advisory business):



**SECTION 7.A.      Affiliated Investment Advisers and Broker-Dealers**

You MUST complete the following information for each investment adviser with whom you are affiliated. You MAY complete the following information for each broker-dealer with whom you are affiliated. You must complete a separate Schedule D Page 3 for each listed affiliate.

Check only one box:   ☐ Add   ☐ Delete   ☒ Amend

Legal Name of Affiliate:   **TODD INVESTMENT ADVISORS, INC.**

Primary Business Name of Affiliate:   **TODD INVESTMENT ADVISORS, INC.**

Affiliate is (check only one box):     ☒ Investment Adviser     ☐ Broker-Dealer     ☐ Dual (Investment Adviser and Broker-Dealer)

Affiliated Investment Adviser's SEC File Number (if any) 801- **14700**          Affiliate's CRD Number (if any): **105200**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Schedule D Page 3 of 5 | Your Name: | Touchstone Advisors, Inc. | SEC File No : 801- 45963 |
|---|---|---|---|
| | Date: 03/09/2006 | | CRD No.: 107028 |

Use this Schedule D Page 3 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an  ☐ INITIAL or  ☒ AMENDED Schedule D Page 3.

SECTION 2.A(11) SEC Exemptive *Order*

If you are relying upon an SEC *order* exempting you from the prohibition on registration, provide the following information:

Application Number: 803-_____    Date of order: _____
(mm/dd/yyyy)

SECTION 4    Successions

Complete the following information if you are succeeding to the business of a currently-registered investment adviser. If you acquired more than one firm in the succession you are reporting on this Form ADV, you must complete a separate Schedule D Page 3 for each acquired firm. See Part 1A Instruction 4.

Name of Acquired Firm _____

Acquired Firm's SEC File No. (if any) 801- _____    Acquired Firm's CRD Number (if any) _____

*SECTION 5 I(2) Wrap Fee Programs*

If you are a portfolio manager for one or more *wrap fee programs*, list the name of each program and its *sponsor*. You must complete a separate Schedule D Page 3 for each *wrap fee program* for which you are a portfolio manager.

Check only one box:  ☐ Add  ☐ Delete ☐ Amend

Name of Wrap Fee Program _____

Name of Sponsor _____

SECTION 6 B.    Description of Primary Business

Describe your primary business (not your investment advisory business):

SECTION 7 A.    Affiliated Investment Advisers and Broker-Dealers

You MUST complete the following information for each investment adviser with whom you are affiliated. You MAY complete the following information for each broker-dealer with whom you are affiliated. You must complete a separate Schedule D Page 3 for each listed affiliate.

Check only one box:  ☐ Add  ☐ Delete ☒ Amend

Legal Name of Affiliate: **FORT WASHINGTON INVESTMENT ADVISORS, INC.**

Primary Business Name of Affiliate: **FORT WASHINGTON INVESTMENT ADVISORS, INC.**

Affiliate is (check only one box):  ☒ Investment Adviser    ☐ Broker-Dealer    ☐ Dual (Investment Adviser and Broker-Dealer)

Affiliated Investment Adviser's SEC File Number (if any) 801- **45963**    Affiliate's CRD Number (if any): **107126**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Schedule D Page 3 of 5 | Your Name: | | Touchstone Advisors, Inc. | SEC File No.: 801-45963 | |
|---|---|---|---|---|---|
| | Date: | 03/09/2006 | | CRD No.: | **107028** |

Use this Schedule D Page 3 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an ☐ INITIAL or ☒ AMENDED Schedule D Page 3.

**SECTION 2 A(11) SEC Exemptive *Order***

If you are relying upon an SEC *order* exempting you from the prohibition on registration, provide the following information:

Application Number: 803-_____     Date of order: _____
                                                            (mm/dd/yyyy)

**SECTION 4        Successions**

Complete the following information if you are succeeding to the business of a currently-registered investment adviser. If you acquired more than one firm in the succession you are reporting on this Form ADV, you must complete a separate Schedule D Page 3 for each acquired firm. See Part 1A Instruction 4.

Name of Acquired Firm _____

Acquired Firm's SEC File No. (if any) 801-_____     Acquired Firm's CRD Number (if any) _____

*SECTION 5.I(2) Wrap Fee Programs*

If you are a portfolio manager for one or more *wrap fee programs*, list the name of each program and its *sponsor*. You must complete a separate Schedule D Page 3 for each *wrap fee program* for which you are a portfolio manager.

Check only one box: ☐ Add ☐ Delete ☐ Amend

Name of Wrap Fee Program _____

Name of Sponsor _____

**SECTION 6.B.    Description of Primary Business**

Describe your primary business (not your investment advisory business):

**SECTION 7.A.    Affiliated Investment Advisers and Broker-Dealers**

You MUST complete the following information for each investment adviser with whom you are affiliated. You MAY complete the following information for each broker-dealer with whom you are affiliated. You must complete a separate Schedule D Page 3 for each listed affiliate.

Check only one box: ☐ Add ☐ Delete ☒ Amend

Legal Name of Affiliate: **CAPITAL ANALYSTS, INC.**

Primary Business Name of Affiliate: **CAPITAL ANALYSTS, INC.**

Affiliate is (check only one box):    ☐ Investment Adviser    ☐ Broker-Dealer    ☒ Dual (Investment Adviser and Broker-Dealer)

Affiliated Investment Adviser's SEC File Number (if any) 801- **9678**     Affiliate's CRD Number (if any): **1221720**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV** Schedule D Page 4 of 5 | Your Name: | Touchstone Advisors, Inc. | SEC File No.: 801- | 45963 |
|---|---|---|---|---|
| | Date: 03/09/2006 | | CRD No.: | 107028 |

Use this Schedule D Page 4 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an ☐ INITIAL or ☒ AMENDED Schedule D Page 4.

SECTION 7.B. Limited Partnership or Other Private Fund Participation

You must complete a separate Schedule D Page 4 for each limited partnership in which you or a *related person* is a general partner, each limited liability company for which you or a *related person* is a manager, and each other private fund that you advise.

Check only one box: ☐ Add  ☐ Delete  ☒ Amend

Name of Limited Partnership, Limited Liability Company, or other Private Fund:

Name of General Partner or Manager:

If you are registered or registering with the SEC, is this a "private fund" as defined under SEC rule 203(b)(3)-1?  ☐ yes  ☐ no

Are your *clients* solicited to invest in the limited partnership, limited liability company or other private fund?  ☐ yes  ☐ no

Approximately what percentage of your *clients* have invested in this limited partnership, limited liability company, or other private fund?  _____ %

Minimum investment commitment required of a limited partner, member, or other investor: $ _____

Current value of the total assets of the limited partnership, limited liability company, or other private fund: $ _____

SECTION 10    *Control Persons*

You must complete a separate Schedule D Page 4 for each *control person* not named in Item 1.A. or Schedules A, B, or C that directly or indirectly *controls* your management or policies.

Check only one box: ☐ Add  ☐ Delete  ☐ Amend

Firm or Organization Name

CRD Number (if any) _____    Effective Date _____    Termination Date _____
                                        mm/dd/yyyy                        mm/dd/yyyy

Business Address:

_____
(number and street)

_____
(city)                          (state/country)                    (zip+4/postal code)

If this address is a private residence, check this box:  ☐

Individual Name (if applicable) (Last, First, Middle)

CRD Number (if any) _____    Effective Date _____    Termination Date _____
                                        mm/dd/yyyy                        mm/dd/yyyy

Business Address:

_____
(number and street)

_____
(city)                          (state/country)                    (zip+4/postal code)

If this address is a private residence, check this box:  ☐

Briefly describe the nature of the *control*:

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| **FORM ADV**<br>Schedule D<br>Page 5 of 5 | Your Name: _____ Touchstone Advisors, Inc. _____ | SEC File No.: 801- 45963 _____ |
|---|---|---|
| | Date: **03/09/2006** _____ | CRD No : **107028** _____ |

Use this Schedule D Page 5 to report details for items listed below. Report only new information or changes/updates to previously submitted information. Do not repeat previously submitted information.

This is an   ☐   INITIAL or   ☒   AMENDED Schedule D Page 5.

Miscellaneous

You may use the space below to explain a response to an Item or to provide any other information.

TOUCHSTONE ADVISORS HAS ADVISORY AFFILIATES THAT MANAGE LIMITED PARTNERSHIPS. COMPLETE AND ACCURATE INFORMATION ABOUT THOSE LIMITED PARTNERSHIPS IS AVAILABLE IN SECTION 7 B OF THE RELATED ADVISORS SCHEDULE D. CLIENTS OF TOUCHSTONE ADVISORS ARE NOT SOLICITED TO INVEST IN ANY OF THSOE LIMITED PA RTNERSHIPS OR LIMITED LIABILITY COMPANIES.

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br>Touchstone Advisors, Inc. | | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|---|
| | (Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.) | | | |

| 1  Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl Ident. No :<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|
| **1D, 3L Advisory Services and Fees** | Applicant serves as the Advisor to a series of registered management investment companies ("funds") pursuant to the terms of an Advisory Agreement. Each of the funds has different investment policies and restrictions which are set forth in the funds' prospectus.<br><br>As Advisor, Applicant provides or oversees the provision of all general management, advisory, and portfolio management services for the funds. Applicant provides the funds equipment and personnel necessary to operate and administer their businesses, and supervises provision of services by third parties such as the fund administrator and transfer agent. Applicant also selects one or more portfolio managers for each of the funds (subject to approval of the Board of Trustees), allocates assets among the portfolio managers and monitors the managers' investment activities and results.<br><br>Applicant itself does not research or select the specific securities purchased by the funds. Instead, assets of each fund are allocated among one or more portfolio managers. Each portfolio manager has complete discretion to purchase and sell securities for the portion of the fund which it manages within the parameters of the fund's policies and restrictions. Although the portfolio manager's activities are subject to the oversight of the Applicant, the Applicant does not evaluate the investment merits of the portfolio manager's individual investment selections. Applicant's advice as to different types of securities is limited to the overall structuring of each fund's portfolio, monitoring the performance of portfolio managers and monitoring their portfolio security selections for compliance with investment objectives, policies and restrictions.<br><br>As compensation for its services as Advisor, Applicant retains a portion of the overall fees charged to the funds. The remainder of the management fee is paid to the portfolio manager. The individual portfolio manager fees are disclosed in the prospectus for each of the funds.<br><br>The Advisory Agreement may be terminated by either part to the Agreement upon 60 Days notice and contains the termination provisions required by the Investment Company Act of 1940. |
| **4 A(5) B(8) C(7) Methods of Analysis, Sources ofInformation, and Investment Strategies** | Applicant does not research or recommend specific portfolio securities. Rather Applicant researches portfolio managers for different asset classes and investment styles.<br><br>Applicant's principal sources of information for evaluating and selecting portfolio managers are qualitative and quantitative materials based on in-person visits and telephone conversations with portfolio managers, computer databases concerning investment results of portfolio managers and reviews of publicly available information contained in the financial press and other sources that would demonstrate the portfolio manager's expertise. Advisor's performance is monitored by oversight of trend analysis, benchmark comparisons, balanced scorecard models and style adherence.<br><br>Actual securities analysis is performed by each portfolio manager. |
| **5. Education and Business Standards** | Those persons responsible for determining investment advice generally have college degrees, and may have advanced degrees or other professional credentials. Demonstrated expertise is a key factor in the selection of each portfolio manager. |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Touchstone Advisors, Inc. | | SEC File Number: 801- 45963 | Date: 03/09/2006 |
|---|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Touchstone Advisors, Inc. | | IRS Empl. Ident. No.: 31-1394672 |
|---|---|---|

| Item of Form (identify) | Answer |
|---|---|
| **6. Education & Business Background** | **JILL T. MCGRUDER**<br>Birth Date: 7-9-1955<br>BA Political Science, 1977 Capital University, Columbus, OH<br>JD Law, 1980 Capital University Law School, Columbus, OH<br><br>2/1999 to Present: CEO of Touchstone Advisors, Inc.<br>        CEO of Touchstone Securities, Inc.<br>            President & CEO of IFS Financial Services, Inc.<br>        President, W & S Financial Group Distributors, Inc.<br><br>1/1997 to Present: Sr. Vice President, The Western and Southern Life Insurance Company, Cincinnati, OH<br>NASD Series 6,7,24,26,63  CLU, CFC<br>Fellow, Life Management Institute<br><br><br>**JAMES H. GRIFO**<br>Birth Date: 05/02/1951<br>Bachelor of Arts, Marovian College<br>03/2003 - Present Sr. VP & National Sales Manager, IFS Financial Services<br>02/2004 - Present President, Touchstone Securities, Inc.<br>05/2004 - Present President, Touchstone Advisors, Inc.<br><br>NASD Series 7, 8, 63<br><br><br>**TERRIE WIEDENHEFT**<br>Birth Date: 05/27/1962<br>BA Accounting, 1990, Wilmington College, Wilmington, OH<br><br>06/2000 - Present  Assistant Treasurer, Fort Washington Investment Advisors, Inc.<br>05/2000 - Present  CFO, Touchstone Advisors, Inc.<br>05/2000 - Present  CFO, Touchstone Securities, Inc.<br>05/2000 - Present  Sr. VP & CFO, IFS Financial Services, Inc.<br>12/1997 - Present  CFO & Treasurer, IFS Fund Distributors, Inc.<br>09/1997 - Present  CFO & Treasurer, Integrated Fund Services, Inc.<br>07/1995 - Present  CFO & Treasurer, Fort Washington Brokerage Services, Inc.<br>04/1995 - Present  CFO & Treasurer, IFS Holdings, Inc.<br><br>NASD Series 6 & 27, CPA 1991<br><br>**PATRICIA J. WILSON**<br>Birth Date: 09/16/1956<br>BA Education, 1978, Central Bible College, Springfield, MO<br>11/1992 - Present  AVP, Compliance  IFS Financial Services, Inc.<br>06/1993 - Present  CCO Touchstone Securities, Inc.<br>12/1993 - Present  CCO Touchstone Advisors, Inc.<br>NASD Series 7,24,63  Kentucky Life Health and Variable Insurance License |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br>Touchstone Advisors, Inc. | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1.  Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl. Ident. No :<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|
| **6. Education &<br>Business Background** | **DONALD J. WUEBBLING**<br>Birth Date: 11/29/1945<br>BA, MBA Economics, 1967, University of Cincinnati, Cincinnati, OH<br>JD, Law, 1971, University of Michigan, Ann Arbor<br><br>07/1974 - Present  Sr. VP & General Counsel, The Western and Southern Life Insurance Company<br>10/1991 - Present, Director, Touchstone Securities<br>12/1993 - Present, Director, Touchstone Advisors<br><br>**JAMES CLARK**<br>Birth Date: 01/30/1932<br>BS Accounting, 1954, Bradley University, Peoria, IL<br>MBA Finance, 1964 Xavier University, Cincinnati, OH<br><br>10/1968 - Present  Direct & Executive Vice President, The Western and Southern Life Insurance Company<br>10/1991 - Present  Director, Touchstone Securities<br>12/1993 - Present  Director, Touchstone Advisors<br><br>**JAMES VANCE**<br>Birth Date: 07/12/1961<br>BA, 1983 Wittenberg University, Springfield, OH<br>JD Law 1986 University of Cincinnati, Cincinnati, OH<br>MBA 1988 Indiana University, Bloomington, Indiana<br><br>01/1994 - Present VP & Treasurer, The Western and Southern Life Insurance Company<br>05/1999 - Present VP & Treasurer, Touchstone Advisors and Touchstone Securities<br><br>**RICHARD TAULBEE**<br>Birth Date 10/18/1951<br>BA Accounting, 1974 University of Cincinnati, Cincinnati, OH<br>CPA 1976<br><br>1989 to Present  Vice President, The Western and Southern Life Insurance Company<br>10/1991 to Present  Vice President, Touchstone Securities<br>12/1993 to Present  Vice President, Touchstone Advisors |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br>Touchstone Advisors, Inc. | | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl. Ident. No.:<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|
| **8C Other Financial Industry Activities or Affiliations**<br><br>**8C(1) Broker-Dealers** | Applicant is affiliated with the following registered broker-dealers:<br><br>Touchstone Securities, Inc., 303 Broadway, Suite 1100, Cincinnati, OH 45202. Touchstone Securities is the distributor of the Funds advised by the Applicant and is owned by the Western-Southern Life Assurance Company ("WSLAC"). Touchstone Securities, Touchstone Advisors, and the Touchstone Funds comprise the Touchstone Investments business unit of IFS Financial Services, the parent of Applicant. IFS Financial Services is also owned by WSLAC. Applicant and Touchstone Securities share the same physical location and the day to day affairs are under the control of the same individuals.<br><br>Capital Analysts, Inc., Three Radnor Corporate Center, 100 Matsonford Road, Radnor, PA 19807, is a registered broker-dealer and investment advisor. It is indirectly owned and controlled by The Western and Southern Life Insurance Company, which is the ultimate parent of Applicant. Capital Analysts and Applicant maintain separate business operations and their day to day affairs are the responsibility of and are controlled by different individuals. In its capacity as a broker-dealer, Capital Analysts may offer shares of the Funds to the public.<br><br>Fort Washington Brokerage Services, Inc., is located at 400 Broadway, Cincinnati, OH 45202. It is a wholly owned subsidiary of Western-Southern Life Assurance Company. Fort Washington and Applicant maintain separate business operations. In its capacity as a broker-dealer, Fort Washington may offer shares of the Funds to the public.<br><br>IFS Fund Distributors, Inc., 303 Broadway, Suite 1100, Cincinnati, OH 45202, is a wholly owned subsidiary of IFS Financial Services, as is Applicant. Applicant and IFS Fund Distributors maintain separate business operations. |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br><br>Touchstone Advisors, Inc. | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1  Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl. Ident. No :<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|

**8C(2)  The Funds Advised by Applicant**

**Variable Series Trust**
Touchstone Emerging Growth Fund
Touchstone Baron Small Cap Fund
Touchstone Enhanced Dividend 30 Fund
Touchstone Eagle Capital Appreciation Fund
Touchstone Third Avenue Value Fund
Touchstone Value Plus Fund
Touchstone Growth and Income Fund
Touchstone Balanced Fund
Touchtone High Yield Fund
Touchstone Core Bond Fund
Touchstone Money Market Fund
Touchstone Conservative ETF
Touchstone Moderate ETF
Touchstone Aggressive ETF
Touchstone Enhanced ETF

**Taxable Fixed Income Funds**
Touchstone US Govt Money Market Fund
Touchstone Money Market Fund
Touchstone Institutional Money Market
Touchstone High Yield Fund
Touchstone Core Bond Fund
Constellation Chartwell Ultra Short Duration Fixed Income Fund
Constellation Chartwell Short Duration Fixed Income Fund
Constellation Pitcairn Taxable Bond Fund
Constellation Clover Core Fixed Income Fund

**Tax-Free Fixed Income Funds**
Touchstone Tax Free Money Market Fund
Touchstone Ohio Insured Tax Free Fund
Touchstone Ohio Tax Free Money Market Fund
Constellation Pitcarin Tax Exempt Bond Fund

**Equity Funds**
Touchstone Large Cap Core Equity Fund
Touchstone Large Cap Growth Fund
Touchstone Large Cap Value Fund
Touchstone Growth Opportunities Fund
Touchstone Small Cap Growth Fund
Touchstone Micro-Cap Fund

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br>      Touchstone Advisors, Inc. | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1  Full name of applicant exactly as stated in Item 1A of Part 1 of Form ADV:<br>      Touchstone Advisors, Inc. | IRS Empl. Ident. No :<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|
| | Touchstone Mid-Cap Growth Fund<br>Touchstone Value Plus Fund<br>Constellation Clover Core Value Fund<br>Constellation Clover Small Cap Value Fund<br>Constellation HLAM Large Cap Quality Growth Fund<br>Constellation International Equity Fund<br>Constellation Pitcairn Diversified Growth Fund<br>Constellation Pitcairn Diversified Value Fund<br>Constellation Pitcairn Family Heritage Fund<br>Constellation Pitcairn Small Cap Fund<br>Constellation Sands Capital Growth II Fund<br>Constellation Strategic Value & High Income Fund<br>Constellation TIP Healthcare & Biotechnology Fund<br>Constellation TIP Mid Cap Core Fund<br>Constellation Small Cap Value Opportunities Fund<br><br>**Institutional Equity Funds**<br>Constellation JSAM Value Fund<br>Constellation JSAM Large Cap Value Fund<br>Constellation Sands Capital Institutional Growth Fund<br><br><br>Touchstone retail funds are available in various share classes. |
| 8C(3) Other<br>Investment Advisors | Fort Washington Investment Advisors, Inc., 420 E. Fourth Street, Cincinnati, OH 45202, is a registered investment advisor and as such, may serve as portfolio manager for certain Funds advised by Applicant.  Fort Washington May also create limited partnerships. Fort Washington is a subsidiary of The Western and Southern Life Insurance company, the eventual parent of Applicant.  Fort Washington and Applicant maintain separate business operations.<br><br>Todd Investment Advisors, Inc., 101 S. Fifth Street, Suite 3160, Louisville, KY 40202, is a registered investment advisor.  It is a wholly owned subsidiary of Fort Washington Investment Advisors and has the same ultimate parent as Applicant.  Todd may serve as a portfolio manager for certain funds advised by the Applicant and may create limited partnerships.<br><br>Capital Analysts, Inc.,Three Radnor Corporate Center, 100 Matsonford Road, Radnor, PA  19807, is a registered broker-dealer and investment advisor.  It is indirectly owned and controlled by The Western and Southern Life Insurance |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Touchstone Advisors, Inc. | SEC File Number: 801- 45963 | Date: 03/09/2006 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Touchstone Advisors, Inc. | IRS Empl. Ident No.: 31-1394672 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| | Company, which is the ultimate parent of Applicant. Capital Analysts and Applicant maintain separate business operations and their day to day affairs are the responsibility of and are controlled by different individuals. |
| 8C(6) Banking or Thrift Institution | Fort Washington Trust Company, 311 Pike Street, Cincinnati, OH 45202, is a savings and loan association, organized under the laws of the State of Ohio on June 2, 2003. It is a wholly owned subsidiary of The Western and Southern Life Assurance Company. Fort Washington Trust Company and Applicant maintain separate business operations. |
| 8C(7) Accounting Firm | Ernst & Young LLP, 250 East Fifth Street, Cincinnati, OH 45202, is the independent auditor for the Funds (Trusts) advised by Applicant. |
| 8C(8) Law Firm | Frost Brown Todd, LLC, 201 East Fifth Street, Cincinnati, OH 45202, is the outside legal counsel for the Applicant. |
| 8C(9) Insurance Company or Agency | The Western and Southern Life Insurance Company ("WSLIC"), a stock life insurance company originally organized under the laws of the State of Ohio on February 23, 1888, is located at 400 Broadway, Cincinnati, OH 45202.

Western-Southern Life Assurance Company ("WSLAC") is fully owned by WSLIC. WSLAC is an underwriter of variable annuity products that contain Funds advised by the Applicant. WSLAC is located at 400 Broadway, Cincinnati, OH 45202.

Columbus Life Insurance Company 400 Broadway, Cincinnati, OH 45202, is a subsidiary of WSLIC. Columbus Life is the underwriter of variable universal life products that contain Funds advised by Applicant.

Integrity Life Insurance Company, located at 400 Broadway, Cincinnati, OH and National Integrity Life Insurance Company, located at 55 Mathews Street, Goshen, NY are underwriters of variable annuity products that contain Funds advised by Applicant. These companies have the same ulitmate parent as Applicant, WSLIC.

W & S Financial Group Distributors, Inc., is an insurance agency located at 303 Broadway, Suite 1100, Cincinnati, OH 45202. It is owned by IFS Financial Services, the parent of Applicant. This agency is involved in the distribution of variable products that contain the funds advised by Applicant. |
| 8C(11) Real Estate Broker or Dealer | Eagle Reality Group, Inc., 421 E. Fourth Street, Cincinnati, OH 45202, provides real estate brokerage services, commercial property management, residential property management, real estate invsetment management and real estate |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Touchstone Advisors, Inc. | | SEC File Number: 801- 45963 | Date: 03/09/2006 |
|---|---|---|---|---|
| (Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.) | | | | |

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Touchstone Advisors, Inc | | IRS Empl. Ident. No.: 31-1394672 |
|---|---|---|

| Item of Form (identify) | Answer |
|---|---|
| | investment advisory services.  Eagle has the same eventual parent as Applicant, The Western and Southern Life Insurance Company, Inc.  Eagle and Applicant maintain separate business operations. |
| **8C(12) Entity that Creates or Packages LimitedPartnerships** | Fort Washington Investment Advisors and Todd Investment Advisors may create or package limited partnerships.  Please see item 8C(3) above. |
| **9 Code of Ethics** | Touchstone Advisors has adopted a Code of Ethics in accordance with the provisions of Rule 17j-1 under  the Investment  Company Act of 1940, as amended ) and Rule 204A-1 under the Investment Advisors Act of 1940.

Notwithstanding the above, the Advisor, in its capacity as Advisor to the Touchstone Funds and the Touchstone Variable Series Trust, serves in a very limited capacity.  The Advisor does not hold itself out as providing investment advice or make recommendations, enter orders on behalf of the funds, hold customer funds or securities but rather subcontracts those duties out to select sub-advisors.

The Access Persons of the Advisor are not deemed to have access to or advance knowledge of portfolio selections or trading activities of the sub-advisors.  None of the day-to-day activities of the sub-advisors are under the same management as the Advisor.  Access Persons of the sub-advisors must comply with their respective sub-advisor's Code of Ethics and must report their trading activities according to the provisions of their sub-advisor's Codes.  The sub-advisors will on a quarterly basis, report to the Advisor any violations of their Codes of Ethics by any individuals with responsibilities involving the Touchstone Funds.

As advisor to the Touchstone Funds, the Chief Compliance Officer of the Advisor must provide the Board of the Touchstone Funds an annual report describing any issues arising under either the Advisor's or any sub-advisors' Code of Ethics.The Access Persons of the Advisor are subject to the Advisor's Code and should, therefore, bear these general standards of conduct in mind at all times as well as strict adherence to all applicable federal securities laws. Due to the physical and business separation of the entities, Access Persons of the Advisor are not under any trading restrictions within their personal accounts or any account in which they have beneficial interest with the following exception:

    Any Access Person of the Advisor must obtain written approval of the Chief Compliance Officer or their designated representative prior to investing in an Initial Public Offering or limited offering. |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of<br>Form ADV<br>Continuation Sheet for Form ADV Part II | Applicant:<br>Touchstone Advisors, Inc. | | SEC File Number:<br>801- 45963 | Date:<br>03/09/2006 |
|---|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl. Ident No.:<br>31-1394672 |
|---|---|

| Item of Form<br>(identify) | Answer |
|---|---|
| | All Access Persons are subject however, to the reporting requirements of this Code.<br><br>TAI's Code of Ethics also describes the following  topics: general standards of conduct, standards of conduct for access persons, standards of trading practices for access persons, reporting requirements, Chief Compliance Officer reviews, sanctions, whistleblower provisions, privacy policy, distribution policy for the Code of Ethics, training, and recordkeeping.<br><br>Copies of the Touchstone Advisors Code of Ethics can be obtained by contacting the Chief Compliance Officer. |
| 11A & B Review of Accounts | Touchstone Investments has a Quarterly Review committee made up of individuals from the Applicant and the Funds.  This committee constantly monitors the portfolios. The committee uses Zephry Style Advisor and Willshire to monitor style drift and performance.  It utilizes Elkins McSherry to monitor for best execution.   The committee quarterly assigns a red, green, or yellow rating to each manager. Appropriate action is taken based on the rating. The findings of this committee are reported to the Fund's Trustees at the quarterly Board of Trustees meetings.  Performance is also discussed at least annually in face to face meetings with each portfolio manager. |
| 12ABCD Investment or Brokerage Discretion | The portfolio managers of each Fund generally determine the individual securities and amounts to be bought or sold, the broker or dealer to be utilized, and the related commission rates.  However, as advisor, Applicant has the authority in certain circumstances to specify these items.<br><br>In selecting brokers or dealers to transact securities purchases or sales, the portfolio managers' primary responsibility is to obtain the best net price and execution for the Fund.  This responsibility does not obligate the portfolio manager to solicit competitive bids for each transaction.  The portfolio manager is under no obligation to seek the lowest available commission cost to the Fund, so long as the portfolio manager determines that the broker or dealer is able to obtain the best net price and execution on a particular transaction and  that the commission cost is reasonable in relation to the total quality and reliability of the brokerage research services made available by  the broker to the portfolio manager viewed in terms of either that particular transaction or the portfolio managers' overall responsibilities with respect to its clients, including the Fund, as to which the portfolio manager exercises investment discretion, not withstanding that the portfolio manager may not be direct or exclusive beneficiary of the services, or that another broker may be willing to charge the portfolio manager a lower commission on the transaction. |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule F of Form ADV Continuation Sheet for Form ADV Part II | Applicant: Touchstone Advisors, Inc. | SEC File Number: 801- 45963 | Date: 03/09/2006 |
|---|---|---|---|

(Do not use this Schedule as a continuation sheet for Form ADV Part I or any other schedules.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV: Touchstone Advisors, Inc. | IRS Empl. Ident. No : 31-1394672 |
|---|---|

| Item of Form (identify) | Answer |
|---|---|
| | With the approval of Applicant, the portfolio manager may engage in securities lending and brokerage offset programs involving certain firms including but not limited to Brown Brothers Harriman. These programs are designed to recapture commissions and reduce fund expenses.

As advisor, Applicant has the right to request the specified transactions giving rise to brokerage commissions, in an amount to be agreed upon by the portfolio manager, be executed by brokers and dealers that provide brokerage or research services to the Fund or the Applicant, or as to which an ongoing relationship will be of value to the Fund in the management of its assets. |
| **13 A, B Additional Compensation** | As distributor of the Funds, Touchstone Securities, Inc., will earn commissions from the sale of fund shares. Commissions will be paid by the fund shareholders.

Touchstone Securities may earn commissions from Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company or National Integrity Life Insurance Company as its serves as the exclusive distributor for the variable products underwritten by these companies. Applicant is also the investment advisor for the Funds of the Touchstone Variable Series Trust, which are contained in these products.

In their capacity as broker-dealers, Capital Analysts, Inc., and Fort Washington Brokerage Services, Inc., may earn commissions or referral fees as described in the fund prospectus and below.

In their capacity as registered investment advisors and portfolio managers, Fort Washington Investment Advisors and Todd Investment Advisors will be paid a portion of the management fee charged to the funds. Total management fees and the portion paid to the fund's portfolio manager are disclosed in the prospectus for each of the funds.

For purchases equal to or in excess of $1 million, Touchstone Securities may pay referral fees to certain inviduals who recommend that shareholders invest in the funds. The nature of these fees is disclosed to the investor in the fund prospectus. The referral fees consist of a one-time payment in an amount which represents a percentage of the initial investment to be received from the investor. All such arrangements are conducted in conformance with Rule 206(4)-3and under all applicable rules and regulations |

Copyright © 2004 National Regulatory Services (Portions of Software Only)

| Schedule G of Form ADV Balance Sheet | Applicant: | | SEC File Number: | Date: |
|---|---|---|---|---|
| | | Touchstone Advisors, Inc. | 801- 45963 | 03/09/2006 |

(Answers in Response to Form ADV Part II Item 14.)

| 1. Full name of applicant exactly as stated in Item 1A of Part I of Form ADV:<br>Touchstone Advisors, Inc. | IRS Empl. Ident. No :<br>31-1394672 |
|---|---|

Instructions

1. The balance sheet must be:

   A. Prepared in accordance with generally accepted accounting principles

   B. Audited by an independent public accountant

   C. Accompanied by a note stating the principles used to prepare it, the basis of included securities, and any other explanations required for clarity.

2. Securities included at cost should show their market or fair value parenthetically.

3. Qualifications and any accompanying independent accountant's report must conform to Article 2 of Regulation S-X (17 CFR 210.2-01 et seq.).

4. Sole proprietor investment advisers:

   A. Must show investment advisory business assets and liabilities separate from other business and personal assets and liabilities

   B. May aggregate other business and personal assets and liabilities unless there is an asset deficiency in the total financial position.

**Complete amended pages in full, circle amended items and file with execution page (page 1).**

Copyright © 2004 National Regulatory Services (Portions of Software Only)

## REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)
### *(continuation)*

| PART II |
|---|

1. Regulatory Action initiated by:
   □   SEC   □   Other Federal   □   State   □   *SRO*   □   Foreign

(Full name of regulator, *foreign financial regulatory authority*, federal, state or *SRO*)

| |
|---|

2. Principal Sanction (check appropriate item):

□ Civil and Administrative Penalty(ies)/Fine(s)    □ Disgorgement    □ Restitution
□ Bar    □ Expulsion    □ Revocation
□ Cease and Desist    □ Injunction    □ Suspension
□ Censure    □ Prohibition    □ Undertaking
□ Denial    □ Reprimand    □ Other _____

Other Sanctions:

| |
|---|
| |

3  Date Initiated (MM/DD/YYYY): [          ]   □ Exact   □ Explanation

| If not exact, provide explanation: |
|---|

4 . Docket/Case Number:

| |
|---|

5. *Advisory Affiliate* Employing Firm when activity occurred which led to the regulatory action (if applicable):

| |
|---|

6  Principal Product Type (check appropriate item):

□ Annuity(ies) - Fixed    □ Derivative(s)    □ Investment Contract(s)
□ Annuity(ies) - Variable    □ Direct Investment(s) - DPP & LP Interest(s)    □ Money Market Fund(s)
□ CD(s)    □ Equity - OTC    □ Mutual Fund(s)
□ Commodity Option(s)    □ Equity Listed (Common & Preferred Stock)    □ No Product
□ Debt - Asset Backed    □ Futures - Commodity    □ Options
□ Debt - Corporate    □ Futures - Financial    □ Penny Stock(s)
□ Debt - Government    □ Index Option(s)    □ Unit Investment Trust(s)
□ Debt - Municipal    □ Insurance    □ Other _____

Other Product Types:

| |
|---|
| |

(continued)

Copyright © 2004 National Regulatory Services (Portions of Software Only)

# REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)
## *(continuation)*

7. Describe the allegations related to this regulatory action (your response must fit within the space provided):

8. Current status?        ☐ Pending      ☐ On Appeal  ☐ Final

9. If on appeal, regulatory action appealed to (SEC, *SRO*, Federal or State Court) and Date Appeal Filed:

If Final or On Appeal, complete all items below  For Pending Actions, complete Item 13 only.

10 How was matter resolved (check appropriate item):

☐ Acceptance, Waiver & Consent (AWC)  ☐ Dismissed                  ☐ Vacated
☐ Consent                             ☐ Order                     ☐ Withdrawn
☐ Decision                            ☐ Settled                   ☐ Other_____
☐ Decision & Order of Offer of Settlement  ☐ Stipulation and Consent

11. Resolution Date (MM/DD/YYYY):          [            ]    ☐ Exact        ☐ Explanation

If not exact, provide explanation:

12 Resolution Detail:

   A.   Were any of the following Sanctions Ordered (check all appropriate Items)?

   ☐   Monetary/Fine           ☐ Revocation/Expulsion/Denial      ☐ Disgorgement/Restitution

        Amount: $ [          ]  ☐ Censure     ☐ Cease and Desist/Injunction    ☐ Bar  ☐ Suspension

   B.   Other Sanctions Ordered:

Sanction detail: if suspended, enjoined or barred, provide duration including start date and capacities affected (General Securities Principal, Financial Operations Principal, etc.). If requalification by exam/retraining was a condition of the sanction, provide length of time given to requalify/retrain, type of exam required and whether condition has been satisfied. If disposition resulted in a fine, penalty, restitution, disgorgement or monetary compensation, provide total amount, portion levied against you or an *advisory affiliate*, date paid and if any portion of penalty was waived:

(continued)

Copyright © 2004 National Regulatory Services (Portions of Software Only)

## REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)
### *(continuation)*

13. Provide a brief summary of details related to the action status and (or) disposition and include relevant terms, conditions and dates (your response must fit within the space provided).

# EXHIBIT B

Division of Corporations - Online Services                                      Page 1 of 2

 **State of Delaware**
The Official Website for the First State 

Visit the Governor  |  General Assembly  |  Courts  |  Other Elected Officials  |  Federal, State & L⌐

State Directory  |  Help  |  Search Delaware [        ]    (go)              Citizen Services  |  Business Services  |  \

**Department of State: Division of Corporations**

| | |
|---|---|
| **HOME**<br>About Agency<br>Secretary's Letter<br>Newsroom<br>Frequent Questions<br>Related Links<br>Contact Us<br>Office Location<br><br>**SERVICES**<br>Pay Taxes<br>File UCC's<br>Delaware Laws Online<br>Name Reservation<br>General Information<br>Status<br><br>**INFORMATION**<br>Corporate Forms<br>Corporate Fees<br>UCC Forms and Fees<br>UCC Searches<br>Taxes<br>Expedited Services<br>Service of Process<br>Registered Agents<br>Get Corporate Status<br>Submitting a Request | Frequently Asked Questions   View Search Results   Summary of Charges   Logout |

Entity Details

| | | | |
|---|---|---|---|
| File Number: | 3946561 | Incorporation Date /<br>Formation Date: | 03/28/2005<br>(mm/dd/yyyy) |
| Entity Name: | TOUCHSTONE INVESTMENT CONSULTANTS, LLC | | |
| Entity Kind: | LIMITED<br>LIABILITY<br>COMPANY<br>(LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |
| Status: | GOOD<br>STANDING | | |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report<br>Filed: | NO REPORTS ON FILE | | |
| Annual Tax<br>Assessment: | $ 200.00 | Tax Due: | $ 0.00 |
| Tax Status: | CURRENT | Total Authorized<br>Shares: | 0 |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | NATIONAL REGISTERED AGENTS, INC. | | |
| Address: | 160 GREENTREE DRIVE SUITE 101 | | |
| City: | DOVER | County: | KENT |
| State: | DE | Postal Code: | 19904 |
| Phone: | (302)674-4089 | | |

**FILING HISTORY (Last 5 Filings)**

https://sos-res.state.de.us/tin/controller                                      4/26/2006

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing |
|-----|---------------|-------------|--------------|--------------------------|--------|
| 1 | 0102Y | Register L L C. | 1 | 03/28/2005 | 18:52 |

Back to Entity Search

Printable Version

To contact a Delaware Online Agent click here

site map  |  about this site  |  contact us  |  translate  |  delaware gov

Division of Corporations - General Information - Entity Details                     Page 1 of 1

Frequently Asked Questions   View Search Results   Summary of Charges   Logout

## Entity Details

| | | | |
|---|---|---|---|
| File Number: | 3946561 | Incorporation Date / Formation Date: | 03/28/2005 (mm/dd/yyyy) |
| Entity Name: | TOUCHSTONE INVESTMENT CONSULTANTS, LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |
| Status: | GOOD STANDING | | |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report Filed: | NO REPORTS ON FILE | | |
| Annual Tax Assessment: | $ 200.00 | Tax Due: | $ 0.00 |
| Tax Status: | CURRENT | Total Authorized Shares: | 0 |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | NATIONAL REGISTERED AGENTS, INC. | | |
| Address: | 160 GREENTREE DRIVE SUITE 101 | | |
| City: | DOVER | County: | KENT |
| State: | DE | Postal Code: | 19904 |
| Phone: | (302)674-4089 | | |

**FILING HISTORY (Last 5 Filings)**

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1 | 0102Y | Register L.L.C. | 1 | 03/28/2005 | 18:52 | 03/28/2005 |

Back to Entity Search

To contact a Delaware Online Agent click here

# EXHIBIT C

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY                    Page 1 of 1



DA Home   UCC   Business Services   Account   Session Briefcase   Help/FAQs   About   Login

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 1305723-2 | **Entity Type:** | Foreign Limited Liability Company |
| **Original Date of Filing:** | 4/5/2005 | **Entity Status:** | Active |
| **Entity Date to Expire:** | | **Chapter:** | 322B |
| **Good Standing:** | | | |
| **(date of last annual filing)** | | | |

**Name:**      Touchstone Investment Consultants, LLC
**Address:**   9 Loockerman Str #1B
               Dover, DE, 55405

**(not registered office address)**
**Home State:**   DE

Additional Entity Detail    |    Return to Search List    |    New Search

---

DA Home | OSS Home | Contacts | Privacy Policy | Terms & Conditions

Use of this site and services indicates your acceptance of the Terms & Conditions of Use
©Copyright 2001 , Minnesota Office of the Secretary of State. All Rights Reserved.

# EXHIBIT D

# FORM ADV

**OMB: 3235-0049**

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| | |
|---|---|
| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |

**Rev. 02/2005**

**WARNING:** Complete this form truthfully. False statements or omissions may result in denial of your application, revocation of your registration, or criminal prosecution. You must keep this form updated by filing periodic amendments. See Form ADV General Instruction 3.

### Item 1 Identifying Information

Responses to this Item tell us who you are, where you are doing business, and how we can contact you.

A. Your full legal name (if you are a sole proprietor, your last, first, and middle names):
TOUCHSTONE INVESTMENT CONSULTANTS, LLC

B. Name under which you primarily conduct your advisory business, if different from Item 1.A.
TOUCHSTONE INVESTMENT CONSULTANTS, LLC
*List on Section 1.B. of Schedule D any additional names under which you conduct your advisory business.*

C. If this filing is reporting a change in your legal name (Item 1.A.) or primary business name (Item 1.B.), enter the new name and specify whether the name change is of

☐ your legal name or ☐ your primary business name:

D. If you are registered with the SEC as an investment adviser, your SEC file number: 801-64508

E. If you have a number ("*CRD* Number") assigned by the *NASD's CRD* system or by the IARD system, your *CRD* number: 135812
*If your firm does not have a CRD number, skip this Item 1-E. Do not provide the CRD number of one of your officers, employees, or affiliates.*

F. *Principal Office and Place of Business*

(1) Address (do not use a P.O. Box):

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 500 WASHINGTON AVENUE SOUTH | | SUITE 2015 | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| MINNEAPOLIS | MN | USA | 55415-1151 |

If this address is a private residence, check this box: ☐
*List on Section 1.F. of Schedule D any office, other than your principal office and place of business, at which you conduct investment advisory business. If you are applying for registration, or are registered, with one or more state securities authorities, you must list all of your offices in the state or states to which you are applying for registration or with whom you are registered. If you are applying for registration, or are registered only, with the SEC, list the largest five offices in terms of numbers of employees.*

(2) Days of week that you normally conduct business at your *principal office and place of business*:

☑ Monday-Friday ☉ Other:

Normal business hours at this location:
8:00 AM TO 5:00 PM

(3) Telephone number at this location:
612-230-3700

(4) Facsimile number at this location:
612-235-3359

G. Mailing address, if different from your *principal office and place of business* address:
Number and Street 1:                    Number and Street 2:

City:          State:          Country:          ZIP+4/Postal Code:

If this address is a private residence, check this box: ☐

H. If you are a sole proprietor, state your full residence address, if different from your *principal office and place of business* address in Item 1.F.:
Number and Street 1:                    Number and Street 2:
City:          State:          Country:          ZIP+4/Postal Code:

                                                        **YES NO**

I. Do you have World Wide Web site addresses?              ● ○

*If "yes," list these addresses on Section 1.I. of Schedule D. If a web address serves as a portal through which to access other information you have published on the World Wide Web, you may list the portal without listing addresses for all of the other information. Some advisers may need to list more than one portal address. Do not provide individual electronic mail addresses in response to this Item.*

J. Contact *Employee*:
Name:                          Title:
Telephone Number:              Facsimile Number:
Number and Street 1:           Number and Street 2:
City:          State:          Country:          ZIP+4/Postal Code:
Electronic mail (e-mail) address, if contact *employee* has one:
*The contact employee should be an employee whom you have authorized to receive information and respond to questions about this Form ADV.*

                                                        **YES NO**

K. Do you maintain some or all of the books and records you are required to keep under    ○ ●
Section 204 of the Advisers Act, or similar state law, somewhere other than your
*principal office and place of business*?
*If "yes," complete Section 1.K. of Schedule D.*

                                                        **YES NO**

L. Are you registered with a *foreign financial regulatory authority*?              ○ ●

*Answer "no" if you are not registered with a foreign financial regulatory authority, even if you have an affiliate that is registered with a foreign financial regulatory authority. If "yes", complete Section 1.L. of Schedule D.*

---

# FORM ADV                              OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT | IARD/CRD Number: |
| --- | --- |

| CONSULTANTS, LLC | 135812 |
|---|---|
|  | Rev. 02/2005 |

## Item 2 SEC Registration

Responses to this Item help us (and you) determine whether you are eligible to register with the SEC. Complete this Item 2 only if you are applying for SEC registration or submitting an *annual updating amendment* to your SEC registration.

A. To register (or remain registered) with the SEC, you must check at least one of the Items 2.A(1) through 2.A(11), below. If you are submitting an *annual updating amendment* to your SEC registration and you are no longer eligible to register with the SEC, check Item 2.A (12). You:

☑ (1) have *assets under management* of $25 million (in U.S. dollars) or more;

   *See Part 1A Instruction 2.a. to determine whether you should check this box.*

☐ (2) have your *principal office and place of business* in Wyoming;

☐ (3) have your *principal office and place of business* outside the United States;

☐ (4) are an investment adviser (or sub-adviser) to an investment company registered under the Investment Company Act of 1940;

   *See Part 1A Instruction 2.b. to determine whether you should check this box.*

☐ (5) have been designated as a nationally recognized statistical rating organization;

   *See Part 1A Instruction 2.c. to determine whether you should check this box.*

☐ (6) are a pension consultant that qualifies for the exemption in rule 203A-2(b);

   *See Part 1A Instruction 2.d. to determine whether you should check this box.*

☐ (7) are relying on rule 203A-2(c) because you are an investment adviser that *controls*, is *controlled* by, or is under common *control* with, an investment adviser that is registered with the SEC, and your *principal office and place of business* is the same as the registered adviser;

   *See Part 1A Instruction 2.e. to determine whether you should check this box. If you check this box, complete Section 2.A(7) of Schedule D.*

☐ (8) are a newly formed adviser relying on rule 203A-2(d) because you expect to be eligible for SEC registration within 120 days;

   *See Part 1A Instruction 2.f. to determine whether you should check this box. If you check this box, complete Section 2.A(8) of Schedule D.*

☐ (9) are a multi-state adviser relying on rule 203A-2(e);

   *See Part 1A Instruction 2.g. to determine whether you should check this box. If you check this box, complete Section 2.A(9) of Schedule D.*

☐ (10) are an Internet investment adviser relying on rule 203A-2(f);

*See Part 1A Instructions 2.h. to determine whether you should check this box.*

☐ (11) have received an SEC *order* exempting you from the prohibition against registration with the SEC;

*If you checked this box, complete Section 2.A(11) of Schedule D.*

☐ (12) are no longer eligible to remain registered with the SEC.

*See Part 1A Instructions 2.i. to determine whether you should check this box.*

B. Under state laws, SEC-registered advisers may be required to provide to *state securities authorities* a copy of the Form ADV and any amendments they file with the SEC. These are called *notice filings*. If this is an initial application, check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings you submit to the SEC. If this is an amendment to direct your *notice filings* to additional state(s), check the box(es) next to the state(s) that you would like to receive notice of this and all subsequent filings you submit to the SEC. If this is an amendment to your registration to stop your *notice filings* from going to state(s) that currently receive them, uncheck the box(es) next to those state(s).

| | | | |
|---|---|---|---|
| ☐ AL | ☐ ID | ☐ MO | ☐ PA |
| ☐ AK | ☐ IL | ☐ MT | ☐ PR |
| ☐ AZ | ☐ IN | ☐ NE | ☐ RI |
| ☐ AR | ☐ IA | ☐ NV | ☐ SC |
| ☐ CA | ☐ KS | ☐ NH | ☐ SD |
| ☐ CO | ☐ KY | ☐ NJ | ☐ TN |
| ☐ CT | ☐ LA | ☐ NM | ☐ TX |
| ☐ DE | ☐ ME | ☐ NY | ☐ UT |
| ☐ DC | ☐ MD | ☐ NC | ☐ VT |
| ☐ FL | ☐ MA | ☐ ND | ☐ VA |
| ☐ GA | ☐ MI | ☐ OH | ☐ WA |
| ☐ GU | ☑ MN | ☐ OK | ☐ WV |
| ☐ HI | ☐ MS | ☐ OR | ☐ WI |

*If you are amending your registration to stop your notice filings from going to a state that currently receives them and you do not want to pay that state's notice filing fee for the coming year, your amendment must filed before the end of the year (December 31).*

**FORM ADV**                                  OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

**Rev. 02/2005**

### Item 3 Form Of Organization

A. How are you organized?

○ Corporation  ○ Sole Proprietorship     ○ Limited Liability Partnership (LLP)

○ Partnership  ◉ Limited Liability Company (LLC)  ○ Other (specify):

*If you are changing your response to this Item, see Part 1A Instruction 4.*

B. In what month does your fiscal year end each year?
December

C. Under the laws of what state or country are you organized?
DELAWARE
*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed. If you are a sole proprietor, provide the name of the state or country where you reside.*

*If you are changing your response to this Item, see Part 1A Instruction 4.*

## FORM ADV

**OMB: 3235-0049**

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

**Rev. 02/2005**

### Item 4 Successions

**YES NO**

A. Are you, at the time of this filing, succeeding to the business of a registered investment adviser?      ○ ◉

*If "yes," complete Item 4.B. and Section 4 of Schedule D.*

B. Date of Succession: (MM/DD/YYYY)

*If you have already reported this succession on a previous Form ADV filing, do not report the succession again. Instead, check "No." See Part 1A Instruction 4.*

## FORM ADV

**OMB: 3235-0049**

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
| --- | --- |
| | **Rev. 02/2005** |

## Item 5 Information About Your Advisory Business

Responses to this Item help us understand your business, assist us in preparing for on-site examinations, and provide us with data we use when making regulatory policy. Part 1A Instruction 5.a. provides additional guidance to newly-formed advisers for completing this Item 5.

*Employees*

A.  Approximately how many *employees* do you have? Include full and part-time *employees* but do not include any clerical workers.



⦿ 1- 5 ○ 6-10 ○ 11-50 ○ 51-250 ○ 251-500
○ 501-1,000 ○ More than 1,000    If more than 1,000, how many? (round to the nearest 1,000)

B.

(1) Approximately how many of these *employees* perform investment advisory functions (including research)?

○ 0 ⦿ 1-5 ○ 6-10 ○ 11-50 ○ 51-250
○ 251-500 ○ 501-1,000 ○ More than 1,000    If more than 1,000, how many? (round to the nearest 1,000)

(2) Approximately how many of these *employees* are registered representatives of a broker-dealer?

⦿ 0 ○ 1-5 ○ 6-10 ○ 11-50 ○ 51-250
○ 251-500 ○ 501-1,000 ○ More than 1,000    If more than 1,000, how many? (round to the nearest 1,000)



*If you are organized as a sole proprietorship, include yourself as an employee in your responses to Items 5.A(1) and 5.B(2). If an employee performs more than one function, you should count that employee in each of your responses to Item 5.B(1) and 5.B(2).*

(3) Approximately how many firms or other *persons* solicit advisory *clients* on your behalf?

⦿ 0 ○ 1-5 ○ 6-10 ○ 11-50 ○ 51-250
○ 251-500 ○ 501-1,000 ○ More than 1,000    If more than 1,000, how many? (round to the nearest 1,000)

*In your response to Item 5.B(3), do not count any of your employees and count a firm only once -- do not count each of the firm's employees that solicit on your behalf.*

*Clients*

C.  To approximately how many *clients* did you provide investment advisory services during your most-recently completed fiscal year?

○ 0 ○ 1-10 ○ 11-25 ○ 26-100 ○ 101-250

■ 251-500    ○ More than 500    If more than 500, how many?
(round to the nearest 500)

D. What types of *clients* do you have? Indicate the approximate percentage that each type of *client* comprises of your total number of *clients*.

| | None | Up to 10% | 11-25% | 26-50% | 51-75% | More Than 75% |
|---|---|---|---|---|---|---|
| (1) Individuals (other than *high net worth individuals*) | ○ | ○ | ○ | ■ | ○ | ○ |
| (2) *High net worth individuals* | ○ | ○ | ○ | ○ | ■ | ○ |
| (3) Banking or thrift institutions | ■ | ○ | ○ | ○ | ○ | ○ |
| (4) Investment companies (including mutual funds) | ■ | ○ | ○ | ○ | ○ | ○ |
| (5) Pension and profit sharing plans (other than plan participants) | ○ | ■ | ○ | ○ | ○ | ○ |
| (6) Other pooled investment vehicles (e.g., hedge funds) | ■ | ○ | ○ | ○ | ○ | ○ |
| (7) Charitable organizations | ○ | ■ | ○ | ○ | ○ | ○ |
| (8) Corporations or other businesses not listed above | ■ | ○ | ○ | ○ | ○ | ○ |
| (9) State or municipal *government entities* | ○ | ■ | ○ | ○ | ○ | ○ |
| (10) Other: | ■ | ○ | ○ | ○ | ○ | ○ |

*The category "individuals" includes trusts, estates, 401(k) plans and IRAs of individuals and their family members, but does not include businesses organized as sole proprietorships.*

*Unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940, check "None" in response to Item 5.D(4).*

Compensation Arrangements

E. You are compensated for your investment advisory services by (check all that apply):

☑ (1) A percentage of assets under your management

☐ (2) Hourly charges

☐ (3) Subscription fees (for a newsletter or periodical)

☐ (4) Fixed fees (other than subscription fees)

☐ (5) Commissions

☐ (6) *Performance-based fees*

☐ (7) Other (specify):

Assets Under Management

| | YES | NO |
|---|---|---|
| F. (1) Do you provide continuous and regular supervisory or management services to securities portfolios? | ■ | ○ |

(2) If yes, what is the amount of your assets under management and total number of accounts?

| | U.S. Dollar Amount | Total Number of Accounts |
|---|---|---|
| Discretionary: | (a) $ 103239000.00 | (d) 67 |

| Non-Discretionary: | (b) $ 0.00 | (e) 0 |
| Total: | (c) $ 103239000.00 | (f) 67 |

*Part 1A Instruction 5.b. explains how to calculate your assets under management. You must follow these instructions carefully when completing this Item.*

Advisory Activities

G. What type(s) of advisory services do you provide? Check all that apply.

- ☑ (1) Financial planning services
- ☑ (2) Portfolio management for individuals and/or small businesses
- ☐ (3) Portfolio management for investment companies
- ☑ (4) Portfolio management for businesses or institutional *clients* (other than investment companies)
- ☐ (5) Pension consulting services
- ☑ (6) Selection of other advisers
- ☐ (7) Publication of periodicals or newsletters
- ☐ (8) Security ratings or pricing services
- ☐ (9) Market timing services
- ☐ (10) Other (specify):

*Do not check Item 5.G(3) unless you provide advisory services pursuant to an investment advisory contract to an investment company registered under the Investment Company Act of 1940.*

H. If you provide financial planning services, to how many *clients* did you provide these services during your last fiscal year?

- ○ 0
- ○ 1-10
- ○ 11-25
- ◉ 26-50
- ○ 51-100
- ○ 101-250
- ○ 251-500
- ○ More than 500

If more than 500, how many? (round to the nearest 500)

I. If you participate in a *wrap fee program*, do you (check all that apply):

- ☐ (1) *sponsor* the *wrap fee program*?
- ☐ (2) act as a portfolio manager for the *wrap fee program*?

*If you are a portfolio manager for a wrap fee program, list the names of the programs and their sponsors in Section 5.I(2) of Schedule D.*

*If your involvement in a wrap fee program is limited to recommending wrap fee programs to your clients, or you advise a mutual fund that is offered through a wrap fee program, do not check either Item 5.I(1) or 5.I(2).*

**FORM ADV**          OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

**Rev. 02/2005**

**Item 6 Other Business Activities**

In this Item, we request information about your other business activities.

A. You are actively engaged in business as a (check all that apply):

☐ (1) Broker-dealer

☐ (2) Registered representative of a broker-dealer

☐ (3) Futures commission merchant, commodity pool operator, or commodity trading advisor

☐ (4) Real estate broker, dealer, or agent

☐ (5) Insurance broker or agent

☐ (6) Bank (including a separately identifiable department or division of a bank)

☐ (7) Other financial product salesperson (specify):

|  | YES | NO |
|---|---|---|
| B. (1) Are you actively engaged in any other business not listed in Item 6.A. (other than giving investment advice)? | ○ | ◉ |
| (2) If yes, is this other business your primary business? | ○ | ○ |

*If "yes," describe this other business on Section 6.B. of Schedule D.*

|  | YES | NO |
|---|---|---|
| (3) Do you sell products or provide services other than investment advice to your advisory *clients*? | ○ | ◉ |

## FORM ADV                                    OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

**Rev. 02/2005**

**Item 7 Financial Industry Affiliations**

In this Item, we request information about your financial industry affiliations and activities. This information identifies areas in which conflicts of interest may occur between you and your *clients*.

Item 7 requires you to provide information about you and your *related persons*. Your *related persons* are all of your *advisory affiliates* and any *person* that is under common *control* with you.

A. You have a *related person* that is a (check all that apply):

☐ (1) broker-dealer, municipal securities dealer, or government securities broker or dealer

☐ (2) investment company (including mutual funds)

☐ (3) other investment adviser (including financial planners)
☐ (4) futures commission merchant, commodity pool operator, or commodity trading advisor
☐ (5) banking or thrift institution
☐ (6) accountant or accounting firm
☐ (7) lawyer or law firm
☐ (8) insurance company or agency
☐ (9) pension consultant
☐ (10) real estate broker or dealer
☐ (11) sponsor or syndicator of limited partnerships

*If you checked Item 7.A(3), you must list on Section 7.A. of Schedule D all your <u>related persons</u> that are investment advisers. If you checked Item 7.A(1), you may elect to list on Section 7.A. of Schedule D all your <u>related persons</u> that are broker-dealers. If you choose to list a related broker-dealer, the IARD will accept a single Form U-4 to register an investment adviser representative who also is a broker-dealer agent ("registered rep") of that related broker-dealer.*

                                                                  **YES  NO**

B. Are you or any *related person* a general partner in an *investment-related* limited     ○    partnership or manager of an *investment-related* limited liability company, or do you advise any other "private fund" as defined under SEC rule 203(b)(3)-1?

*If "yes," for each limited partnership or limited liability company, or (if applicable) private fund, complete Section 7.B. of Schedule D. If, however, you are an SEC-registered adviser <u>and</u> you have related persons that are <u>SEC-registered advisers</u> who are the general partners of limited partnerships or the managers of limited liability companies, you do not have to complete Section 7.B. of Schedule D with respect to those related advisers' limited partnerships or limited liability companies.*

*To use this alternative procedure, you must state in the Miscellaneous Section of Schedule D: (1) that you have related SEC-registered investment advisers that manage limited partnerships or limited liability companies that are not listed in Section 7.B. of your Schedule D; (2) that complete and accurate information about those limited partnerships or limited liability companies is available in Section 7.B. of Schedule D of the Form ADVs of your related SEC-registered advisers; and (3) whether your clients are solicited to invest in any of those limited partnerships or limited liability companies.*

# FORM ADV
**OMB: 3235-0049**

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|
| | **Rev. 02/2005** |

**Item 8 Participation or Interest in *Client* Transactions**

In this Item, we request information about your participation and interest in your *clients'* transactions. Like Item 7, this information identifies areas in which conflicts of interest may occur between you and your *clients*.

Like Item 7, Item 8 requires you to provide information about you and your *related persons*.

Proprietary Interest in *Client* Transactions

|  |  | Yes | No |
|---|---|---|---|
| A. Do you or any *related person*: |  |  |  |
| (1) buy securities for yourself from advisory *clients*, or sell securities you own to advisory *clients* (principal transactions)? |  | ○ | ● |
| (2) buy or sell for yourself securities (other than shares of mutual funds) that you also recommend to advisory *clients*? |  | ● | ○ |
| (3) recommend securities (or other investment products) to advisory *clients* in which you or any *related person* has some other proprietary (ownership) interest (other than those mentioned in Items 8.A(1) or (2))? |  | ○ | ● |

Sales Interest in *Client* Transactions

|  | Yes | No |
|---|---|---|
| B. Do you or any *related person*: |  |  |
| (1) as a broker-dealer or registered representative of a broker-dealer, execute securities trades for brokerage customers in which advisory *client* securities are sold to or bought from the brokerage customer (agency cross transactions)? | ○ | ● |
| (2) recommend purchase of securities to advisory *clients* for which you or any *related person* serves as underwriter, general or managing partner, or purchaser representative? | ○ | ● |
| (3) recommend purchase or sale of securities to advisory *clients* for which you or any *related person* has any other sales interest (other than the receipt of sales commissions as a broker or registered representative of a broker-dealer)? | ○ | ● |

Investment or Brokerage Discretion

|  | Yes | No |
|---|---|---|
| C. Do you or any *related person* have *discretionary authority* to determine the: |  |  |
| (1) securities to be bought or sold for a *client's* account? | ● | ○ |
| (2) amount of securities to be bought or sold for a *client's* account? | ● | ○ |
| (3) broker or dealer to be used for a purchase or sale of securities for a *client's* account? | ○ | ● |
| (4) commission rates to be paid to a broker or dealer for a *client's* securities transactions? | ○ | ● |
| D. Do you or any *related person* recommend brokers or dealers to *clients*? | ● | ○ |
| E. Do you or any *related person* receive research or other products or services other than execution from a broker-dealer or a third party in connection with *client* securities transactions? | ● | ○ |
| F. Do you or any *related person*, directly or indirectly, compensate any *person* for *client* referrals? | ○ | ● |

*In responding to this Item 8.F., consider in your response all cash and non-cash compensation that you or a related person gave any person in exchange for client referrals, including any bonus that is based, at least in part, on the number or amount of client referrals.*

# FORM ADV                                     OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|
| | Rev. 02/2005 |

### Item 9 *Custody*

In this Item, we ask you whether you or a *related person* has *custody* of *client* assets. If you are registering or registered with the SEC and you deduct your advisory fees directly from your *clients'* accounts but you do not otherwise have *custody* of your *clients'* funds or securities, you may answer "no" to Item 9A.(1) and 9A.(2).

|  | Yes | No |
|---|---|---|
| A. Do you have *custody* of any advisory *clients'*: | | |
|     (1) cash or bank accounts? | ○ | ● |
|     (2) securities? | ○ | ● |
| B. Do any of your *related persons* have *custody* of any of your advisory *clients'*: | | |
|     (1) cash or bank accounts? | ○ | ● |
|     (2) securities? | ○ | ● |
| C. If you answered "yes" to either Item 9.B(1) or 9.B(2), is that *related person* a broker-dealer registered under Section 15 of the Securities Exchange Act of 1934? | ○ | ○ |

# FORM ADV                                     OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|
| | Rev. 02/2005 |

### Item 10 Control Persons

In this Item, we ask you to identify every *person* that, directly or indirectly, *controls* you.

If you are submitting an initial application, you must complete Schedule A and Schedule B. Schedule A asks for information about your direct owners and executive officers. Schedule B asks for information about your indirect owners. If this is an amendment and you are updating information you reported on either Schedule A or Schedule B (or both) that you filed with your initial application, you must complete Schedule C.

|  | YES | NO |
|---|---|---|
| Does any *person* not named in Item 1.A. or Schedules A, B, or C, directly or indirectly, *control* your management or policies? | ○ | ● |

*If yes, complete Section 10 of Schedule D.*

OMB: 3235-0049

# FORM ADV

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

Rev. 02/2005

## Item 11 Disclosure Information

In this Item, we ask for information about your disciplinary history and the disciplinary history of all your *advisory affiliates.* We use this information to determine whether to grant your application for registration, to decide whether to revoke your registration or to place limitations on your activities as an investment adviser, and to identify potential problem areas to focus on during our on-site examinations. One event may result in "yes" answers to more than one of the questions below.

Your *advisory affiliates* are: (1) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions); (2) all of your officers, partners, or directors (or any *person* performing similar functions); and (3) all *persons* directly or indirectly *controlling* you or *controlled* by you. If you are a "separately identifiable department or division" (SID) of a bank, see the Glossary of Terms to determine who your *advisory affiliates* are.

*If you are registered or registering with the SEC, you may limit your disclosure of any event listed in Item 11 to ten years following the date of the event. If you are registered or registering with a state, you must respond to the questions as posed; you may, therefore, limit your disclosure to ten years following the date of an event only in responding to Items 11.A(1), 11.A(2), 11.B(1), 11.B(2), 11.D(4), and 11.H(1)(a). For purposes of calculating this ten-year period, the date of an event is the date the final order, judgment, or decree was entered, or the date any rights of appeal from preliminary orders, judgments, or decrees lapsed.*

You must complete the appropriate Disclosure Reporting Page ("DRP") for "yes" answers to the questions in this Item 11.

For "yes" answers to the following questions, complete a Criminal Action DRP:

A. In the past ten years, have you or any *advisory affiliate*:         **YES NO**

    (1) been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*?     ○ ◉

    (2) been *charged* with any *felony*?     ○ ◉

*If you are registered or registering with the SEC, you may limit your response to Item 11.A(2) to charges that are currently pending.*

B. In the past ten years, have you or any *advisory affiliate*:

    (1) been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to a *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements, or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?     ○ ◉

    (2) been *charged* with a *misdemeanor* listed in 11.B(1)?     ○ ◉

*If you are registered or registering with the SEC, you may limit your response to Item 11.B(2) to charges that are currently pending.*

For "yes" answers to the following questions, complete a Regulatory Action DRP:

C. Has the SEC or the Commodity Futures Trading Commission (CFTC) ever:    **YES NO**

    (1) *found* you or any *advisory affiliate* to have made a false statement or omission?    ○ ◉

    (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of SEC or CFTC regulations or statutes?    ○ ◉

    (3) *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?    ○ ◉

    (4) entered an *order* against you or any *advisory affiliate* in connection with *investment-related* activity?    ○ ◉

    (5) imposed a civil money penalty on you or any *advisory affiliate*, or *ordered* you or any *advisory affiliate* to cease and desist from any activity?    ○ ◉

D. Has any other federal regulatory agency, any state regulatory agency, or any *foreign financial regulatory authority*:

    (1) ever *found* you or any *advisory affiliate* to have made a false statement or omission, or been dishonest, unfair, or unethical?    ○ ◉

    (2) ever *found* you or any *advisory affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes?    ○ ◉

    (3) ever *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?    ○ ◉

    (4) in the past ten years, entered an *order* against you or any *advisory affiliate* in connection with an *investment-related* activity?    ○ ◉

    (5) ever denied, suspended, or revoked your or any *advisory affiliate's* registration or license, or otherwise prevented you or any *advisory affiliate*, by *order*, from associating with an *investment-related* business or restricted your or any *advisory affiliate's* activity?    ○ ◉

E. Has any *self-regulatory organization* or commodities exchange ever:

    (1) *found* you or any *advisory affiliate* to have made a false statement or omission?    ○ ◉

    (2) *found* you or any *advisory affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a *"minor rule violation"* under a plan approved by the SEC)?    ○ ◉

    (3) *found* you or any *advisory affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted?    ○ ◉

    (4) disciplined you or any *advisory affiliate* by expelling or suspending you or the *advisory affiliate* from membership, barring or suspending you or the *advisory affiliate* from association with other members, or otherwise restricting your or the *advisory affiliate's* activities?    ○ ◉

F. Has an authorization to act as an attorney, accountant, or federal contractor granted to you or any *advisory affiliate* ever been revoked or suspended?    ○ ◉

G. Are you or any *advisory affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of Item 11.C., 11.D., or 11.E.?

For "yes" answers to the following questions, complete a Civil Judicial Action DRP:

H. (1) Has any domestic or foreign court:

        (a) in the past ten years, *enjoined* you or any *advisory affiliate* in connection with any *investment-related* activity?

        (b) ever *found* that you or any *advisory affiliate* were *involved* in a violation of *investment-related* statutes or regulations?

        (c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you or any *advisory affiliate* by a state or *foreign financial regulatory authority*?

   (2) Are you or any *advisory affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of Item 11.H(1)?

---

# FORM ADV

OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

Rev. 02/2005

## Item 12 Small Business

The SEC is required by the Regulatory Flexibility Act to consider the effect of its regulations on small entities. In order to do this, we need to determine whether you meet the definition of "small business" or "small organization" under rule 0-7.

Answer this Item 12 only if you are registered or registering with the SEC **and** you indicated in response to Item 5.F(2)(c) that you have assets under management of less than $25 million. You are not required to answer this Item 12 if you are filing for initial registration as a state adviser, amending a current state registration, or switching from SEC to state registration.

For purposes of this Item 12 only:
- Total Assets refers to the total assets of a firm, rather than the assets managed on behalf of *clients*. In determining your or another *person's* total assets, you may use the total assets shown on a current balance sheet (but use total assets reported on a consolidated balance sheet with subsidiaries included, if that amount is larger).
- Control means the power to direct or cause the direction of the management or policies of a *person*, whether through ownership of securities, by contract, or otherwise. Any *person* that directly or indirectly has the right to vote 25 percent or more of the voting securities, or is entitled to 25 percent or more of the profits, of another *person* is presumed to control the other *person*.

YES NO

A. Did you have total assets of $5 million or more on the last day of your most recent fiscal year?

*If "yes," you do not need to answer Items 12.B. and 12.C.*

B. Do you:

    (1) *control* another investment adviser that had assets under management of $25    ○    ○
    million or more on the last day of its most recent fiscal year?

    (2) *control* another *person* (other than a natural person) that had total assets of $5    ○    ○
    million or more on the last day of its most recent fiscal year?

C. Are you:

    (1) *controlled* by or under common *control* with another investment adviser that    ○    ○
    had assets under management of $25 million or more on the last day of its
    most recent fiscal year?

    (2) *controlled* by or under common *control* with another *person* (other than a    ○    ○
    natural person) that had total assets of $5 million or more on the last day of its
    most recent fiscal year?

---

# FORM ADV          OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|
| | **Rev. 02/2005** |

---

## Form ADV, Schedule A

### Direct Owners and Executive Officers

1. Complete Schedule A only if you are submitting an initial application. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.

2. Direct Owners and Executive Officers. List below the names of:

    (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer(Chief Compliance Officer is required and cannot be more than one individual), director, and any other individuals with similar status or functions;

    (b) If you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);

    Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

    (c) If you are organized as a partnership, <u>all</u> general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;

(d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and

(e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.

3. Do you have any indirect owners to be reported on Schedule B?    ○ Yes    ⬛ No

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.

5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:

| NA - less than 5% | B - 10% but less than 25% | D - 50% but less than 75% |
| A - 5% but less than 10% | C - 25% but less than 50% | E - 75% or more |

7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

(b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

(c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM/YYYY | Ownership Code | Control Person | PR | CRD No. If None: S.S. No. and Date of Birth, IRS Tax No., or Employer ID No. |
|---|---|---|---|---|---|---|---|
| GUTZKE, DAVID, ALBERT | I | DIRECTOR OF SALES AND OPERATIONS / CHIEF COMPLIANCE OFFICER | 06/2005 | B | Y | N | 1360894 |
| BROMELKAMP, DAVID, JOHN | I | PRESIDENT | 08/2005 | D | Y | N | 1886987 |
| GRAFF, JEREMY, BRUCE | I | DIRECTOR OF FINANCIAL PLANNING | 08/2005 | C | Y | N | 2732583 |

**FORM ADV**                           OMB: 3235-0049

**UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION**

| Primary Business Name: TOUCHSTONE INVESTMENT | IARD/CRD Number: |

| CONSULTANTS, LLC | 135812 |
|---|---|

Rev. 02/2005

## Form ADV, Schedule B

### Indirect Owners

1. Complete Schedule B only if you are submitting an initial application. Schedule B asks for information about your indirect owners; you must first complete Schedule A, which asks for information about your direct owners. Use Schedule C to amend this information.

2. Indirect Owners. With respect to each owner listed on Schedule A (except individual owners), list below:

   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation;

   For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.

   (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

   (c) in the case of an owner that is a trust, the trust and each trustee; and

   (d) in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 25% or more of the LLC's capital, and (ii) if managed by elected managers, all elected managers.

3. Continue up the chain of ownership listing all 25% owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

5. Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6. Ownership codes are:

   | C - 25% but less than 50% | E - 75% or more |
   |---|---|
   | D - 50% but less than 75% | F - Other (general partner, trustee, or elected manager) |

7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c) Complete each column.

| No Indirect Owner Information Filed |
|---|

# FORM ADV                                        OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

Rev. 02/2005

## Form ADV, Schedule D

### Section 1.B. Other Business Names

List your other business names and the jurisdictions in which you use them. You must complete a separate Schedule D for each business name.

No Information Filed

### Section 1.F. Other Offices

Complete the following information for each office, other than your *principal office and place of business*, at which you conduct investment advisory business. You must complete a separate Schedule D Page 1 for each location. If you are applying for registration, or are registered, only with the SEC, list only the largest five (in terms of numbers of *employees*).

No Information Filed

### Section 1.I. World Wide Web Site Addresses

List your World Wide Web site addresses. You must complete a separate Schedule D for each World Wide Web site address.

World Wide Web Site Address:  WWW.TICLLC.COM

World Wide Web Site Address:  WWW.TOUCHSTONEINVESTMENTCONSULTANTS.COM

### Section 1.K. Locations of Books and Records

Complete the following information for each location at which you keep your books and records, other than your *principal office and place of business*. You must complete a separate Schedule D Page 1 for each location.

No Information Filed

### Section 1.L. Registration with *Foreign Financial Regulatory Authorities*

List the name, in English, of each *foreign financial regulatory authority* and country with which you are registered. You must complete a separate Schedule D Page 2 for each *foreign financial regulatory authority* with whom you are registered.

No Information Filed

### Section 2.A(7) Affiliated Adviser

No Information Filed

### Section 2.A(8) Newly Formed Adviser

If you are relying on rule 203A-2(d), the newly formed adviser exemption from the prohibition on registration, you are required to make certain representations about your eligibility for SEC registration. By checking the appropriate boxes, you will be deemed to have made the required representations. You must make both of these representations:

☐ I am not registered or required to be registered with the SEC or a *state securities authority* and I have a reasonable expectation that I will be eligible to register with the SEC within

120 days after the date my registration with the SEC becomes effective.
☐ I undertake to withdraw from SEC registration if, on the 120th day after my registration
with the SEC becomes effective, I would be prohibited by Section 203A(a) of the Advisers
Act from registering with the SEC.

## Section 2.A(9) Multi-State Adviser

If you are relying on rule 203A-2(e), the multi-state adviser exemption from the prohibition on
registration, you are required to make certain representations about your eligibility for SEC
registration. By checking the appropriate boxes, you will be deemed to have made the
required representations.

If you are applying for registration as an investment adviser with the SEC, you must make
both of these representations:
☐ I have reviewed the applicable state and federal laws and have concluded that I am
required by the laws of 30 or more states to register as an investment adviser with the
securities authorities in those states.
☐ I undertake to withdraw from SEC registration if I file an amendment to this registration
indicating that I would be required by the laws of fewer than 25 states to register as an
investment adviser with the securities authorities of those states.

If you are submitting your *annual updating amendment*, you must make this representation:
☐ Within 90 days prior to the date of filing this amendment, I have reviewed the applicable
state and federal laws and have concluded that I am required by the laws of at least 25
states to register as an investment adviser with the securities authorities in those states.

## Section 2.A(11) SEC Exemptive *Order*

No Information Filed

## Section 4 Successions

Complete the following information if you are succeeding to the business of a currently-
registered investment adviser. If you acquired more than one firm in the succession you are
reporting on this Form ADV, you must complete a separate Schedule D Page 3 for each
acquired firm. See Part 1A Instruction 4.

No Information Filed

## Section 5.I(2) *Wrap Fee Programs*

If you are a portfolio manager for one or more *wrap fee programs*, list the name of each
program and its *sponsor*. You must complete a separate Schedule D Page 3 for each *wrap fee
program* for which you are a portfolio manager.

No Information Filed

## Section 6.B. Description of Primary Business

No Information Filed

## Section 7.A. Affiliated Investment Advisers and Broker-Dealers

You MUST complete the following information for each investment adviser with whom you are
affiliated. You MAY complete the following information for each broker-dealer with whom you
are affiliated. You must complete a separate Schedule D Page 3 for each listed affiliate.

No Information Filed

**Section 7.B. Limited Partnership Participation or Other Private Fund Participation**

You must complete a separate Schedule D Page 4 for each limited partnership in which you or a *related person* is a general partner, each limited liability company for which you or a *related person* is a manager, and each other private fund that you advise.

| No Information Filed |
|---|

**Section 10 *Control Persons***

You must complete a separate Schedule D Page 4 for each *control person* not named in Item 1.A. or Schedules A, B, or C that directly or indirectly *controls* your management or policies.

| No Information Filed |
|---|

**Schedule D – Miscellaneous**

You may use the space below to explain a response to an Item or to provide any other information.

| No Information Filed |
|---|

# FORM ADV                          OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

Rev. 02/2005

**Form ADV, DRPs**

| **CRIMINAL DISCLOSURE REPORTING PAGE (ADV)** |
|---|
| No Information Filed |

| **REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)** |
|---|
| No Information Filed |

| **CIVIL JUDICIAL ACTION DISCLOSURE REPORTING PAGE (ADV)** |
|---|
| No Information Filed |

| **Bond DRPs** |
|---|
| No Information Filed |

| **Judgment/Lien DRPs** |
|---|
| No Information Filed |

| **Arbitration DRPs** |
|---|
| No Information Filed |

# FORM ADV

OMB: 3235-0049

## UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION

| Primary Business Name: TOUCHSTONE INVESTMENT CONSULTANTS, LLC | IARD/CRD Number: 135812 |
|---|---|

Rev. 02/2005

**Form ADV, Signature Page**

### DOMESTIC INVESTMENT ADVISER EXECUTION PAGE

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial application for SEC registration and all amendments to registration.

## Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such *persons* may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing*.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having custody or possession of these books and records to make them available to federal and state regulatory representatives.

| Signature:<br>DAVID A. GUTZKE | Date: MM/DD/YYYY<br>03/14/2006 |
|---|---|
| Printed Name:<br>DAVID A. GUTZKE | Title:<br>DIR. OF SALES AND OPERATIONS / CCO |
| Adviser *CRD* Number:<br>135812 | |

### *NON-RESIDENT* INVESTMENT ADVISER EXECUTION PAGE

You must complete the following Execution Page to Form ADV. This execution page must be

signed and attached to your initial application for SEC registration and all amendments to
registration.

## 1. Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint
each of the Secretary of the SEC, and the Secretary of State or other legally designated officer,
of any other state in which you are submitting a *notice filing*, as your agents to receive service,
and agree that such *persons* may accept service on your behalf, of any notice, subpoena,
summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers,
and you further agree that such service may be made by registered or certified mail, in any
federal or state action, administrative *proceeding* or arbitration brought against you in any
place subject to the jurisdiction of the United States, if the action, *proceeding*, or arbitration (a)
arises out of any activity in connection with your investment advisory business that is subject
to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the
provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust
Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act
of 1940, or any rule or regulation under any of these acts, or (ii) the laws of any state in which
you are submitting a *notice filing*.

## 2. Appointment and Consent: Effect on Partnerships

If you are organized as a partnership, this irrevocable power of attorney and consent to service
of process will continue in effect if any partner withdraws from or is admitted to the
partnership, provided that the admission or withdrawal does not create a new partnership. If
the partnership dissolves, this irrevocable power of attorney and consent shall be in effect for
any action brought against you or any of your former partners.

## 3. *Non-Resident* Investment Adviser Undertaking Regarding Books and Records

By signing this Form ADV, you also agree to provide, at your own expense, to the U.S.
Securities and Exchange Commission at its principal office in Washington D.C., at any Regional
or District Office of the Commission, or at any one of its offices in the United States, as
specified by the Commission, correct, current, and complete copies of any or all records that
you are required to maintain under Rule 204-2 under the Investment Advisers Act of 1940.
This undertaking shall be binding upon you, your heirs, successors and assigns, and any *person*
subject to your written irrevocable consents or powers of attorney or any of your general
partners and *managing agents*.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the *non-resident*
investment adviser. The investment adviser and I both certify, under penalty of perjury under
the laws of the United States of America, that the information and statements made in this
ADV, including exhibits and any other information submitted, are true and correct, and that I
am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as
required by law. Finally, I authorize any *person* having custody or possession of these books
and records to make them available to federal and state regulatory representatives.

Signature:                          Date: MM/DD/YYYY

Printed Name:                        Title:

Adviser *CRD* Number:
135812

### State Registered Investment Adviser Execution Page

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial application for state registration and all amendments to registration.

## 1. Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the legally designated officers and their successors, of the state in which you maintain your *principal office and place of business* and any other state in which you are applying for registration or amending your registration, as your agents to receive service, and agree that such persons may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding*, or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is founded, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are applying for registration or amending your registration.

## 2. State-Registered Investment Adviser Affidavit

If you are subject to state regulation, by signing this Form ADV, you represent that, you are in compliance with the registration requirements of the state in which you maintain your principal place of business and are in compliance with the bonding, capital, and recordkeeping requirements of that state.

## Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

Signature                            Date MM/DD/YYYY

CRD Number
135812

View All Pages

| Printed Name | Title |
| --- | --- |

# EXHIBIT E



# Kiplinger's
## PERSONAL FINANCE

**FUNDS** | Here are the best of the bunch, and our take on which of the one-, three-, five-, ten- and 20-year winners are worth buying now.

# And the
# WINNERS are...

THE ROAD TO RICHES sometimes takes investors on less-traveled byways. That was certainly the case this past year, when fund investors who strayed off the beaten path generally fared better than those who stayed close to home.

Leading the way were funds that specialize in small companies, both domestic and foreign. Among U.S.-oriented funds, the smaller their target companies, the better the funds performed, on average, for the one-year period to June 1. Small-company funds outpaced midsize-company funds, which in turn outperformed large-company funds. The stellar performance of small-company stocks continues a trend that began in late 1999.

The small-stock effect was especially pronounced overseas. Among nonspecialized funds, the top category over the past year was the group that focuses on stocks of small foreign companies; it returned an average of 43%. Only funds that invest in Japan and those that specialize in Chinese companies performed better, on average, than overseas small-company funds. In fact, it was Asia's performance in general, led by Japanese stocks (the world's second-biggest market),

ance charts. We think foreign stocks still have room to run, and in the article that starts on page 34, we describe our six favorite diversified overseas funds.

Note that the average three- and five-year returns for most sectors were unimpressive. That's because those numbers reflect the deleterious impact of the 2000–02 bear market. Unless stock markets rise dramatically in the second half of this year, you may see a notable decline in the average five-year returns for stock funds by the end of 2004. At that point, the post-bubble five-year results will, for the first time, exclude stocks' stunning gains in late 1999. During the final seven months of that year, Standard & Poor's 500-stock index returned 14%, and the Nasdaq 100 soared 77%.

On the pages that follow, we list the top gainers over the past one, three, five, ten and 20 years in ten different categories. We also identify funds that we think are worthy of your attention. You shouldn't pick funds just because they appear on a list of top performers; consider other issues, such as the length of a manager's tenure, the risks he or she takes and the fund's size (funds that grow too big can become difficult to manage). Still, funds that have achieved superior returns under one manager or a group of managers can be

 KIPLINGER'S | AUGUST 2004

## Large-company growth funds A key ingredient in your portfolio

Large-company growth and value funds should be the core of your investments. But don't look for guidance from the list of one-year winners. Exception: Marsico 21st Century (and its broker-sold Nations clone). Run by a relative newcomer but part of Tom Marsico's collegial shop, the fund has staying power. Longer-term winners boast more focused and consistent stock picking. Team-managed Jensen Portfolio owns about 25 high-quality companies with a history of earnings growth in its concentrated portfolio. Fidelity Contrafund's eclectic holdings range from Yahoo to Colgate-Palmolive, but veteran manager Will Danoff has his hands full steering a fund with assets totaling $38 billion.

### 1 YEAR
| | |
|---|---|
| 1. ProFund UltraOTC Inv | 40.1% |
| 2. Reynolds Fund | 38.9 |
| 3. Rydex Dynamic Velocity 100 H | 38.6 |
| 4. Reynolds Opportunity | 32.5 |
| 5. ProFund UltraDow 30 Inv | 30.6 |
| 6. AllianceBernstein Growth A | 28.7 |
| 7. Touchstone Large Cap Gro A | 27.5 |
| 8. Marsico 21st Century | 27.4 |
| 9. AFBA Five Star USA Global Instl | 27.2 |
| 10. Nations Marsico 21st Century A | 27.0 |
| CATEGORY AVERAGE | 15.5% |

### 3 YEARS
| | |
|---|---|
| 1. Marsico 21st Century | 6.9% |
| 2. Nations Marsico 21st Century A | 6.5 |
| 3. Gartmore US Growth Leaders A | 5.2 |
| 4. Fidelity Contrafund | 4.4 |
| 5. Dreyfus Premier Alpha Growth T | 4.3 |
| 6. Jensen Portfolio | 3.9 |
| 7. Reynolds Fund | 2.1 |
| 8. Calvert Large Cap Growth A | 2.1 |
| 9. J. Hancock US Global Leaders Gro | 1.5 |
| 10. Exeter Tax Managed A | 1.3 |
| CATEGORY AVERAGE | -5.9% |

### 5 YEARS
| | |
|---|---|
| 1. Marsico 21st Century | 6.9% |
| 2. Nations Marsico 21st Century A | 6.5 |
| 3. Gartmore US Growth Leaders A | 5.2 |
| 4. Fidelity Contrafund | 4.4 |
| 5. Dreyfus Premier Alpha Growth T | 4.3 |
| 6. Jensen Portfolio | 3.9 |
| 7. Reynolds Fund | 2.1 |
| 8. Calvert Large Cap Growth A | 2.1 |
| 9. J. Hancock US Global Leaders Gro | 1.5 |
| 10. Exeter Tax Managed A | 1.3 |
| CATEGORY AVERAGE | -5.9% |

### 10 YEARS
| | |
|---|---|
| 1. Santa Barbara Bender Gro A | 9.3% |
| 2. Jensen Portfolio | 7.4 |
| 3. Chesapeake Core Gro (Nottingham) | 6.9 |
| 4. Strong Large Company Growth Inv | 6.7 |
| 5. Exeter Tax Managed A | 6.4 |
| 6. American Growth Fund of America | 5.8 |
| 7. Buffalo USA Global | 5.7 |
| 8. Vanguard Primecap** | 5.1 |
| 9. AFBA Five Star USA Global Instl | 5.0 |
| 10. Fidelity Adv Dyn Cap App T | 3.3 |
| CATEGORY AVERAGE | -3.7% |

### 20 YEARS
| | |
|---|---|
| 1. Vanguard Primecap** | 15.3% |
| 2. American Growth Fund of America | 14.0 |
| 3. Rydex OTC Inv | 13.7 |
| 4. Janus Growth & Income | 13.2 |
| 5. Jensen Portfolio | 13.1 |
| 6. Fidelity Contrafund | 12.6 |
| 7. ABN AMRO Growth N | 12.3 |
| 8. Oppenheimer Cap Appreciation A | 12.3 |
| 9. Van Kampen Exchange** | 12.3 |
| 10. Janus Twenty** | 12.2 |
| CATEGORY AVERAGE | 8.6% |

## Small and midsize blend funds Tempering growth-stock risks with concern for price

Bridgeway Ultra Small Company didn't quite sweep the listings, but it came close, leading the three- and five-year periods and scoring well in the one-year period. This remarkable fund is closed, but manager John Montgomery says it may reopen if prices topple in the corner of the market in which it fishes—the smallest 10%. Given that he thinks stocks there are pretty pricey, you may get a shot at this fund. You should also be cautious in this category. Best to stick with other tried-and-true names, such as still-open Meridian Growth, which ranks highly in the five- and ten-year periods. Had it been just a bit older, Meridian, with a lifetime annualized return of 15%, would surely have been a 20-year winner, too.

### 1 YEAR
| | |
|---|---|
| 1. Gartmore Micro Cap Equity A | 60.1% |
| 2. ProFund UltraSmall Inv | 50.2 |
| 3. Strong Small Company Value | 53.3 |
| 4. ProFund UltraMid Cap Inv | 50.9 |
| 5. Dreyfus Premier Enterprise A** | 49.5 |
| 6. Buffalo Small Cap** | 47.3 |
| 7. Bridgeway Ultra Small Co** | 47.1 |
| 8. Saluit Micro Cap | 45.1 |
| 9. Fidelity Leveraged Co Stock | 43.4 |
| 10. Fountainhead Special Value | 42.9 |
| CATEGORY AVERAGE | 28.0% |

### 3 YEARS
| | |
|---|---|
| 1. Bridgeway Ultra Small Co** | 31.0% |
| 2. Turner Micro Cap Growth** | 30.0 |
| 3. Buffalo Small Cap** | 22.7 |
| 4. Bridgeway Micro-Cap Limited** | 20.3 |
| 5. Wasatch Core Growth** | 18.6 |
| 6. Touchstone Emerging Growth A | 16.0 |
| 7. FBR Small Cap A | 16.0 |
| 8. Meridian Growth | 15.9 |
| 9. Sentinel Small Company A** | 15.6 |
| 10. ABN AMRO Mid Cap N | 14.9 |
| CATEGORY AVERAGE | 9.1% |

### 5 YEARS
| | |
|---|---|
| 1. Bridgeway Ultra Small Co** | 27.1% |
| 2. Fidelity Leveraged Co Stock | 23.2 |
| 3. FBR Small Cap A | 20.2 |
| 4. Saluit Micro Cap | 17.3 |
| 5. American Cent Sm Company Inv** | 17.2 |
| 6. Dreyfus Premier Enterprise A** | 16.9 |
| 7. Delaware American Services A | 16.4 |
| 8. Century Small Cap Select Inv | 16.1 |
| 9. IMS Capital Value | 14.5 |
| 10. Buffalo Small Cap** | 13.5 |
| CATEGORY AVERAGE | 5.8% |

### 10 YEARS
| | |
|---|---|
| 1. Wasatch Core Growth** | 18.4% |
| 2. Osterweis Fund | 14.9 |
| 3. California Invmt S&P Mid Cap Index | 14.9 |
| 4. Columbia Acorn Z** | 14.8 |
| 5. Sentinel Small Company A** | 14.5 |
| 6. First Eagle Fund of America Y | 14.4 |
| 7. Dreyfus Midcap Index | 14.2 |
| 8. Meridian Growth | 14.1 |
| 9. Federated Mid Cap Index | 13.9 |
| 10. Rainier Small/Mid Cap Eqty | 13.9 |
| CATEGORY AVERAGE | 11.9% |

### 20 YEARS
| | |
|---|---|
| 1. Columbia Acorn Z** | 16.6% |
| 2. Wayne Hummer Growth | 12.4 |
| 3. T. Rowe Price Small Cap Stock** | 12.3 |
| 4. Jennison Small Company B | 11.1 |
| 5. Wright Selected Blue Chip Eq | 10.8 |
| 6. WPG Tudor | 10.7 |
| 7. Vanguard Small Cap Index Inv | 10.1 |
| 8. AXP Discovery A** | 8.4 |
| 9. Eagle Growth Shares (Baxter) | 7.6 |
| CATEGORY AVERAGE | 11.1 |

**Closed to new investors.  *Closed to new investors; other share classes are available. Source: Copyright © 2004, Standard & Poor's, a division of The McGraw Hill Companies, Inc.  All rights reserved.

Excerpted and adapted with permission from the August 2004 issue of **Kiplinger's Personal Finance**

# EXHIBIT F

Touchstone Investments



Touchstone Investments

The Fund invests in technology companies, which can be more volatile than other sectors. Funds that invest in a limited number of securities may involve greater risks and more price volatility than funds that do not limit the number of securities in which they invest. The Fund may use derivative instruments such as futures and options contracts for hedging purposes or as part of its investment strategy. Use of these instruments may involve certain costs and risks, including but not limited to, loss to a portfolio of more than the principal amount invested in those instruments.

Past performance is no guarantee of future results. The investment return and principal value of an investment in the Fund will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost.

**An investor should carefully consider the investment objectives, risks, charges and expenses found in the prospectus. For a prospectus containing complete information about the Touchstone Funds, contact your financial professional or Touchstone Securities, Inc. at 800.638.8194. Please read the prospectus carefully before investing or sending money.**

Touchstone Large Cap Value Fund is distributed by Touchstone Securities, Inc.*

*A registered broker-dealer and member NASD and SIPC

Member of Western & Southern Financial Group®

Touchstone
Small Cap
Growth Fund

Touchstone
Large Cap
Growth Fund

Touchstone
High Yield
Fund

**Need a
Financial
Advisor?**

email us and we'll
help you connect
with an
investment
Professional.

Touchstone Investments

prospectuses | privacy policy | contact us

©Copyright 2006 Touchstone Securities. All rights reserved.
The Touchstone Investments service mark has been registered with the U.S. Patent and Trademark Office for financial services.

# EXHIBIT G

TOUCHSTONE
INVESTMENTS

QUICKLINKS
-- please select --

5/19/2006

About Us

|home | investment professional site | about us | contact us|

SELECT A FUND  | -- please select --
SITE DIRECTORY  | -- please select --

| ACCOUNT ACCESS | FUND INFORMATION | FORMS & LITERATURE | NEWS |

SEARCH »

ABOUT US

home > about us

**Details About Us:**    | -- please select -- |

## Who is Touchstone?

Touchstone provides a variety of mutual funds across the investment spectrum. The company is adept at identifying consumer and investment professional needs, designing innovative products and delivering a selection of premier money managers who act in a sub-advisory capacity. Touchstone offers a disciplined approach with proven results focused on consistent performance. The Touchstone Funds are distributed nationally through broker-dealers, financial planners and financial institutions.

## The Touchstone Process

Today's financial marketplace offers investors overwhelming choice and complexity. Since few investors have the time or expertise required to manage their investments well and thoroughly research the universe of more than 8,000 stocks and 2 million bonds being traded in the U.S., professional portfolio management can be extremely valuable.

Touchstone's process for carefully selecting and monitoring its Fund's portfolio managers (sub-advisors) is what sets it apart. These managers, while held to strict performance standards, work with a large measure of independence, operating within their own demonstrated area of expertise.

The Touchstone Advisory Committee, consisting of senior management, sales, marketing, research and compliance personnel, is charged with selecting and reviewing Touchstone's sub-advisors. This

Committee evaluates Fund results, including investment returns, investment style adherence and competitive positioning.

◀

### The Touchstone Formula

Touchstone's formula for creating, evaluating and monitoring mutual funds that help investors achieve their financial goals centers around four fundamental principles:

Research – Design – Select – Monitor.

**Research**

Touchstone seeks opportunities that fill an investment product void in the marketplace based upon a thorough evaluation of trends, shifts and flows. Using proprietary and industry leading analytical tools, Touchstone scans existing asset classes and product offerings in an effort to reveal unserved or under-served areas. It also brings innovative investment solutions to complement products already in existence. This rigorous qualitative and quantitative research, and in-depth understanding of the analysis, equips Touchstone with the foresight to design unique investment products.

**Design**

Touchstone is dedicated to providing the resources to find the best investment opportunities.

Recognizing that mastery of all investment disciplines is beyond the scope of any one firm, Touchstone assembles an array of high quality portfolio managers as sub-advisors to its funds. While not alone in employing a sub-advisory approach, what distinguishes Touchstone is its focus on identifying world-class money management firms that it believes are in their ascendancy. Its use of autonomous fund sub-advisors embodies that commitment.

Touchstone's intent is to contract with the industry's preeminent sub-advisors who not only have performed well in the past, but who have outstanding prospects for continued performance achievement in the years to come. Fund sub-advisors are expected to concisely follow their declared approach to meeting the fund's objectives.

**Select**

Touchstone first looks at the entire universe of managers in a specific discipline. This list is then distilled based upon a preliminary performance screen. Next, the Advisory Committee works to scale down the list to finalists who are interviewed. On-sight visits are then conducted before a fund sub-advisor is

chosen.

Touchstone selects a fund sub-advisor only after it has demonstrated proficiency in its area of expertise. Among the factors considered in evaluating a fund's sub-advisor(s) are:

**Quantitative Measurements**

- Performance against peers and benchmark
- More than five years of lead manager performance
- Performance and style consistency through market cycles
- Risk-adjusted returns
- Returns and holdings-based attribution analysis

**Qualitative Resources**

- Level of knowledge and skill
- Highly structured and disciplined investment process
- Compliance with investment rules and strategies
- Financial strength
- Exceptional employees, facilities, services

Touchstone's process for choosing its sub-advisors who manage its mutual funds ensures a very high level of fund management. Touchstone aligns itself only with those considered to be proven managers in their ascendancy and believes that strict discipline in selecting sub-advisors produces superior performance.

**Monitor**

In addition to continually monitoring its funds and their sub-advisors, Touchstone performs a formal review quarterly. It seeks to have 100% of fund performance consistently above each fund's primary investment universe average and 0% of relative fund performance in the fourth quartile. Performance against each fund's Index and/or benchmark is reviewed. A performance trend analysis is conducted and utilized with a balanced scorecard model.

Touchstone also provides a clear and stated mandate to its sub-advisors and effectively monitors adherence to style and market capitalization parameters defined in the Statement of Investment Policy and Guidelines.

Touchstone : About Us

All style and market capitalization specific equity funds are expected to be managed within a defined market capitalization range defined by a specific index.

All fixed income funds are expected to be managed within a fund's stated maturity and credit quality ranges.

Under-performance and/or style drift for shorter time periods warrant an internal review. Touchstone keeps a close watch on the sub-advisor and works closely with the firm to understand what steps are being taken to improve returns. Touchstone performs a thorough attribution analysis to understand the source of the under-performance and evaluates alternative strategies to achieve competitive performance.

## Summary

Touchstone is committed to providing the investment products that will best meet investors' needs. In doing so, Touchstone:

- Offers strategically focused mutual funds.
- Employs a range of investment options encompassing a variety of asset classes, investment disciplines and risk/return potentials.
- Provides access to a carefully screened and rigorously monitored portfolio management team, focused on solid, sustainable performance within each investment option.

There are risks inherent in mutual fund investing. The investment return and principal value of an investment in a fund will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost.

prospectuses | privacy policy | contact us

©Copyright 2006 Touchstone Securities. All rights reserved.
The Touchstone Investments service mark has been registered with the U.S. Patent and Trademark Office for financial services.

Touchstone Funds are distributed nationally by Touchstone Securities, Inc.\*

**An investor should carefully consider the investment objectives, risks, charges and expenses found in the prospectus. For a prospectus containing complete information about a Touchstone Fund, contact your financial professional or Touchstone at 800.638.8194. Please read the prospectus carefully before investing or sending money.**

\*A registered broker-dealer and member of the NASD and SIPC

A Member of Western & Southern Financial Group℠

# EXHIBIT H

# The Touchstone Philosophy



Research · Design · Select · Monitor



Touchstone provides a variety of mutual funds across the investment spectrum. The company is adept at identifying consumer and investment professional needs, designing innovative products and delivering a selection of premier money managers who act in a sub-advisory capacity. Touchstone offers a disciplined approach with proven results focused on consistent performance. The Touchstone Funds are distributed nationally through broker-dealers, financial planners and financial institutions.

## The Touchstone Process

Today's financial marketplace offers investors overwhelming choice and complexity. Since few investors have the time or expertise required to manage their investments well and thoroughly research the universe of more than 8,000 stocks and 2 million bonds being traded in the U.S., professional portfolio management can be extremely valuable.

Touchstone's process for carefully selecting and monitoring its Fund's portfolio managers (sub-advisors) is what sets it apart. These managers, while held to strict performance standards, work with a large measure of independence, operating within their own demonstrated area of expertise.

The Touchstone Advisory Committee, consisting of senior management, sales, marketing, research and compliance personnel, is charged with selecting and reviewing Touchstone's sub-advisors. This Committee evaluates Fund results, including investment returns, investment style adherence and competitive positioning.

## The Touchstone Formula

Touchstone's formula for creating, evaluating and monitoring mutual funds that help investors achieve their financial goals centers around four fundamental principles:
Research - Design - Select - Monitor

**Research** -- Thorough research is conducted to uncover unique opportunities for products to meet an underserved segment of the financial services marketplace.

Design -- A framework is developed to deliver a carefully designed product. This involves an in-depth analysis of all product components from construction to investment management.

**Select** -- Intensive evaluation leads to selection of a fund sub-advisor only if the firm has demonstrated proficiency in its area of declared expertise over a sustained period of time.

**Monitor** -- Touchstone's monitoring process includes objective performance results tracking and trend analysis, benchmark comparisons, utilization of a balanced scorecard model, and review of style adherence.

Touchstone believes that exacting standards and strict discipline in the conduct of its investment sub-advisory relationships ultimately maximizes the performance of its products over the long term.

# Touchstone Sub-Advisor Profiles

## Touchstone Emerging Growth Fund[1, 2]

### Westfield Capital Management Company, LLC – Mid-Cap Growth

Founded in 1989, Boston-based Westfield Capital Management Company specializes in fundamental, in-depth research and analysis to construct a portfolio of mid-cap companies with consistent or accelerating growth.

### TCW Investment Management Company – Mid-Cap Value

Founded in 1987, the New York-based TCW Investment Management Company team specializes in a bottom-up fundamental research process focused on mid-cap companies that exhibit unrecognized asset values, turnaround potential or undervalued growth.

Style: Mid-Cap U S  Companies                    Benchmark: Russell Midcap™ Index

## Touchstone Large Cap Growth Fund[2]

### Navellier & Associates, Inc.

Founded in 1986, Reno-based Navellier specializes in using a proprietary quantitative research model designed to identify large-cap companies with superior reward/risk characteristics, earnings, revenue and profit margin expansion relative to the general market.

Style: Large U S  Growth Companies                 Benchmark: Russell 1000™ Growth Index

## Touchstone Small Cap Growth Fund[1, 2]

### Longwood Investment Advisors, Inc. – Small-Cap Growth

Founded in 1993, Boston-based Longwood Investment Advisors specializes in a bottom-up selection process focused on small-cap growth companies believed to have above average growth in earnings and return on equity.

### Bjurman, Barry & Associates – Micro-Cap Growth

Founded in 1970, Los Angeles-based Bjurman, Barry & Associates specializes in a bottom-up, economic sensitive selection process focused on rapidly growing micro-cap companies that are reasonably priced and believed to have above average earnings growth prospects.

Style: Small-Cap U S  Growth Companies              Benchmark: Russell 2000™ Growth Index

## Touchstone Micro Cap Growth Fund[1, 2]

### Bjurman, Barry & Associates – Micro-Cap Growth

Founded in 1970, Los Angeles-based Bjurman, Barry & Associates specializes in a bottom-up, economic sensitive selection process focused on rapidly growing micro-cap companies that are reasonably priced and believed to have above average earnings growth prospects

Style: Micro-Cap U S. Growth Companies              Benchmark: Russell 2000™ Growth Index

## Growth Opportunities Fund[2]

### Mastrapasqua Asset Management, Inc.

Founded in 1993, Nashville-based Mastrapasqua & Associates specializes in a disciplined top-down management approach that relies heavily on independent research and concentrates on the management quality, competitive advantage, comparative cost structure and financial flexibility and strength of mid- to large-cap companies

Style: Mid- to Large-Cap U S  Growth Companies       Benchmark: Russell 1000™ Growth Index





## Touchstone Large Cap Core Equity Fund

**Todd Investment Advisors, Inc.**

Founded in 1967, Louisville-based Todd Investment Advisors focuses on building a concentrated portfolio of 30 large-cap companies targeting stocks of large, well-established companies with strong earnings, sales growth and reasonable valuations.

Style: Large U S  Companies                    Benchmark: Russell 1000® Index

## Touchstone Value Plus Fund[2]

**Fort Washington Investment Advisors, Inc.**

Founded in 1990, Cincinnati-based Fort Washington Investment Advisors utilizes a research intensive process focused primarily on large-cap companies with proven management and unique advantages believed to be priced below true value.

Style: Large Fundamentally Undervalued U S  Companies      Benchmarks: Russell 1000™ Value Index

## Touchstone High Yield Fund[3, 4]

**Fort Washington Investment Advisors, Inc.**

Founded in 1990, Cincinnati-based Fort Washington Investment Advisors focuses on a full market cycle design by investing in the higher-quality segment of the high yield market

Style: U.S  High Yield Fixed Income                Benchmark: Merrill Lynch High Yield
                                                    Master Index

## Touchstone Core Bond Fund[4]

**Fort Washington Investment Advisors, Inc.**

Founded in 1990, Cincinnati-based Fort Washington Investment Advisors focuses on a disciplined sector allocation process using comprehensive credit research targeting intermediate-term investment grade bonds

Style: U.S. Core Fixed Income                  Benchmark: Lehman Brothers Aggregate Index

---

[1] Investing in micro-, small- and mid-cap companies is subject to enhanced risks  The Fund invests primarily in micro-, small- or mid-cap company stocks which tend to be more volatile and can be less liquid than large-cap company stocks

[2] The Fund invests in technology stocks, which can be more volatile than other sectors

[3] Investments in high yield bonds have a higher degree of risk than investments in investment grade bonds  Changes in economic conditions or other circumstances may adversely affect a high yield bond issuer's ability to make principal and interest payments.

[4] Bond funds can lose their value as interest rates rise and an investor can lose principal.

The investment return and principal value of an investment in the Funds will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost

Investment products offered are not FDIC insured, may lose value and have no bank guarantee

This is not an offer for sale of any product. It must be preceded or accompanied by a prospectus. An investor should carefully consider the investment objectives, risks, charges and expenses found in the prospectus. For a prospectus containing complete information about a Touchstone Fund and a performance fact sheet, contact your financial professional or Touchstone at 800.638.8194. Please read the prospectus carefully before investing or sending money.



221 East Fourth Street • Cincinnati, Ohio 45202-4133 • 800 638 8194 • www.touchstoneinvestments.com

Touchstone Funds are distributed nationally by Touchstone Securities, Inc.*

*A registered broker-dealer and member NASD and SIPC

Touchstone, Fort Washington and Todd Investment Advisors are members of Western & Southern Financial Group®

## Research 

Touchstone seeks opportunities that fill an investment product void in the marketplace based upon a thorough evaluation of trends, shifts and flows. Using proprietary and industry leading analytical tools, Touchstone scans existing asset classes and product offerings in an effort to reveal unserved or under-served areas. It also brings innovative investment solutions to complement products already in existence. This rigorous qualitative and quantitative research, and in-depth understanding of the analysis, equips Touchstone with the foresight to design unique investment products.

## Design

Touchstone is dedicated to providing the resources to find the best investment opportunities. Recognizing that mastery of all investment disciplines is beyond the scope of any one firm, Touchstone assembles an array of high quality portfolio managers as sub-advisors to its funds. While not alone in employing a sub-advisory approach, what distinguishes Touchstone is its focus on identifying world-class money management firms that it believes are in their ascendancy. Its use of autonomous fund sub-advisors embodies that commitment.

Touchstone's intent is to contract with the industry's preeminent sub-advisors who not only have performed well in the past, but who have outstanding prospects for continued performance achievement in the years to come. Fund sub-advisors are expected to concisely follow their declared approach to meeting the fund's objectives.

## Select

Touchstone first looks at the entire universe of managers in a specific discipline. This list is then distilled based upon a preliminary performance screen. Next, the Advisory Committee works to scale down the list to finalists who are interviewed. On-sight visits are then conducted before a fund sub-advisor is chosen.

Touchstone selects a fund sub-advisor only after it has demonstrated proficiency in its area of expertise. Among the factors considered in evaluating a fund's sub-advisor(s) are:

**Quantitative Measurements**
- Performance against peers and benchmark
- More than five years of lead manager performance
- Performance and style consistency through market cycles
- Risk-adjusted returns
- Returns and holdings-based attribution analysis

**Qualitative Resources**
- Level of knowledge and skill
- Highly structured and disciplined investment process
- Compliance with investment rules and strategies
- Financial strength
- Exceptional employees, facilities, services

Touchstone's process for choosing its sub-advisors who manage its mutual funds ensures a very high level of fund management. Touchstone aligns itself only with those considered to be proven managers in their ascendency and believes that strict discipline in selecting sub-advisors produces superior performance.

## Monitor

In addition to continually monitoring its funds and their sub-advisors, Touchstone performs a formal review quarterly. It seeks to have 100% of fund performance consistently above each fund's primary investment universe average and 0% of relative fund performance in the fourth quartile. Performance against each fund's index and/or benchmark is reviewed. A performance trend analysis is conducted and utilized with a balanced scorecard model.

Touchstone also provides a clear and stated style mandate to its sub-advisors and effectively monitors adherence to style and market capitalization parameters defined in the Statement of Investment Policy and Guidelines.

All style and market capitalization specific equity funds are expected to be managed within a defined market capitalization range defined by a specific index.

All fixed income funds are expected to be managed within a fund's stated maturity and credit quality ranges.

Under-performance and/or style drift for shorter time periods warrant an internal review. Touchstone keeps a close watch on the sub-advisor and works closely with the firm to understand what steps are being taken to improve returns. Touchstone performs a thorough attribution analysis to understand the source of the under-performance and evaluates alternative strategies to achieve competitive performance.

## Summary

Touchstone is committed to providing the investment products that will best meet investors' needs. In doing so, Touchstone:

- Offers strategically focused mutual funds.
- Employs a range of investment options encompassing a variety of asset classes, investment disciplines and risk/return potentials.
- Provides access to a carefully screened and rigorously monitored portfolio management team, focused on solid, sustainable performance within each investment option.

**An investor should carefully consider the investment objectives, risks, charges and expenses found in the prospectus. For a prospectus containing complete information about a Touchstone Fund and a performance fact sheet, contact your financial professional or Touchstone at 800.638.8194. Please read the prospectus carefully before investing or sending money.**

There are risks inherent in mutual fund investing. The investment return and principal value of an investment in a fund will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost



**TOUCHSTONE**
INVESTMENTS

221 East Fourth Street ▪ Cincinnati, Ohio 45202-4133 ▪ 800.638.8194 ▪ www.touchstoneinvestments.com

Touchstone Funds are distributed nationally by Touchstone Securities, Inc.*

*A registered broker-dealer and member NASD and SIPC

A Member of Western & Southern Financial Group®

# EXHIBIT I



7011900

## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

May 15, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,977,192* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *May 28, 1996*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
    *IFS FINANCIAL SERVICES, INC.*
    *AN OHIO CORP*

        By Authority of the
        Under Secretary of Commerce for Intellectual Property
        and Director of the United States Patent and Trademark Office

        M. K. CARTER
        Certifying Officer

Int. Cl.: 36

Prior U.S. Cls.: 100, 101, and 102

## United States Patent and Trademark Office

Reg. No. 1,977,192
Registered May 28, 1996

## SERVICE MARK
### PRINCIPAL REGISTER

## TOUCHSTONE

TOUCHSTONE ADVISORS, INC. (OHIO COR-
PORATION)
318 BROADWAY
CINCINATTI, OH 45202 BY CHNAGE OF NAME
FROM IFS INVESTMENT ADVISORS, INC.
(OHIO CORPORATION) CINCINNATI, OH
40502

FOR: FINANCIAL SERVICES, NAMELY IN-
VESTMENT, MANAGEMENT AND DISTRIBU-
TION REGARDING MUTUAL FUNDS, VARI-
ABLE ANNUITIES AND FIXED ANNUITIES;
AND BROKERAGE AND BROKERAGE
TRADE CLEARING SERVICES, IN CLASS 36
(U.S. CLS. 100, 101 AND 102).

FIRST USE 10-30-1994; IN COMMERCE
10-30-1994.

SN 74-515,945, FILED 4-20-1994.

GLENN CLARK, EXAMINING ATTORNEY

# EXHIBIT J



7011900

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

May 15, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,974,147* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *10* YEARS FROM  *May 14, 1996*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
*IFS FINANCIAL SERVICES, INC.*
*AN OHIO CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER
Certifying Officer

Int. Cl.: 36

Prior U.S. Cls.: 100, 101, and 102

**United States Patent and Trademark Office**

Reg. No. 1,974,147
Registered May 14, 1996

## SERVICE MARK
### PRINCIPAL REGISTER

## THE TOUCHSTONE FAMILY OF FUNDS

TOUCHSTONE ADVISORS, INC. (OHIO COR-
PORATION)
318 BROADWAY
CINCINNATI, OH 45202 . BY CHANGE OF
NAME FROM IFS INVESTMENT ADVISORS,
INC. (OHIO CORPORATION) CINCINNATI,
OH 40502

FOR: FINANCIAL SERVICES, NAMELY
MUTUAL FUND INVESTMENT, BROKERAGE,

AND DISTRIBUTION, IN CLASS 36 (U.S. CLS.
100, 101 AND 102).

FIRST USE 10-30-1994; IN COMMERCE
10-30-1994.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "FAMILY OF FUNDS", APART
FROM THE MARK AS SHOWN.

SN 74-515,943, FILED 4-20-1994.

GLENN CLARK, EXAMINING ATTORNEY

# EXHIBIT K



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

May 15, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION 2,792,701 IS CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION ISSUED BY THE UNITED STATES PATENT AND TRADEMARK OFFICE WHICH REGISTRATION IS IN FULL FORCE AND EFFECT.

REGISTERED FOR A TERM OF 10 YEARS FROM  December 09, 2003
SAID RECORDS SHOW TITLE TO BE IN:  Registrant

By Authority of the

Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

M. K. CARTER

Certifying Officer



Int. Cl.: 36

Prior U.S. Cls.: 100, 101, and 102

**United States Patent and Trademark Office**

Reg. No. 2,792,701
Registered Dec. 9, 2003

## SERVICE MARK
### PRINCIPAL REGISTER



IFS FINANCIAL SERVICES, INC. (OHIO COR-
PORATION)
221 EAST FOURTH STREET, STE 300
CINCINNATI, OH 452023341

FOR: FINANCIAL SERVICES, NAMELY, INVEST-
MENT MANAGEMENT AND DISTRIBUTION RE-
GARDING MUTUAL FUNDS, VARIABLE
ANNUITIES AND FIXED ANNUITIES; AND
BROKERAGE AND BROKERAGE TRADE CLEAR-
ING SERVICES, IN CLASS 36 (U.S. CLS. 100, 101 AND
102).

FIRST USE 2-24-2003; IN COMMERCE 2-24-2003.

OWNER OF U.S. REG. NOS. 1,970,523, 1,977,192,
AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "INVESTMENTS", APART FROM
THE MARK AS SHOWN

SN 76-469,835, FILED 11-25-2002.

CURTIS FRENCH, EXAMINING ATTORNEY

# EXHIBIT L

# INVESTOR'S BUSINESS DAILY

## THURSDAY, NOVEMBER 17, 2005

MUTUAL FUNDS

## MUTUAL FUND PROFILE

# Touchstone Fund Eases Out Of Energy

### Likes Tech, Health Care

An impersonal system keeps manager Price out ahead of the crowd

**BY KEN HOOVER**
INVESTOR'S BUSINESS DAILY

Touchstone Large Cap Growth Fund has been shifting out of energy stocks and into tech, health care and other high-growth areas

The shift stems not because manager Shawn Price has brilliant insight into where the price of oil is headed or the demand for the latest whiz-bang gadgets.

Rather it comes from a system that is designed to put the fund into the right names before most investors understand the reason those stocks are moving higher.

"The system is smarter than we are," said Price.

The $764 million fund TEOAK was up 12.21% year to date going into Wednesday compared with 4.41% for large-cap growth funds tracked by Morningstar and 2.89% the S&P 500. The fund's three-year average annual return was 17.94% against 11.09% for its peers and 2.51% for the S&P. For the past five years it was down 3.55% a year vs. -5.5% for its peers and -0.53% for the S&P.

Price runs the fund with Louis Navellier out of Reno, Nev. Price, 35, was Navellier's first employee 15 years ago when he was still a student at the University of Nevada, Reno. He runs $1.95 bil-

lion, including in managed accounts, using the same large-cap strategy.

Cincinnati-based Touchstone Investments doesn't hire its own fund managers. Instead, it uses a proprietary system to pick outside managers with outstanding records.

The managers use a three-step system to build the portfolio. They start with 700 stocks that have market caps of $10 billion or more.

The first step is to find the stocks that are outperforming the market by screening for those with a positive alpha. Alpha is a measure designed to isolate that part of stock performance that is independent of the general market trend. That gives him about 100 stocks.

Then the managers dig into fundamentals, trying to find out why the stock is outperforming.

"If I can't find the reason, I move on to something I understand," Price said. "We're not pure momentum players.

Superior fundamentals are one reason Apple Computer- AAPL is in the fund. Earnings grew 289% over the past year. The P-E ratio, Price says, is a moderate 37, and the return on equity is a healthy 18%. And the company has strong cash flow.

Price has a rule that no position can be more than 5% of the fund's assets. So despite Apple's run-up over the 18 months it's been in the fund, he's been a net seller to keep it from becoming too big a piece of the fund.

The third step in the process is optimizing the portfo-

lio through diversification. Unlike many managers, Price doesn't worry much about keeping sector and industry weightings in line with his benchmark, the Russell 1000 Growth Index.

He does want a mix of stocks that don't correlate well with one another. That avoids a highly volatile portfolio that's all hot or cold.

The system, says Price, tends to get the fund into and out of stocks at the right time. Among his big sellers are energy winners Valero Energy VLO and Burlington Resources BR.

He has been a net seller of energy since October 2004.

The reason: As stocks run up, they often become more volatile. Unless they have stellar growth numbers to support keeping the stock in the fund, he starts selling them down.

But upside volatility is just fine with Price. That's why

his biggest buy in the latest reporting period was Google GOOG.

"I've had my eye on Google for a long time," he said. "But our system requires that there be one year of price data. So I couldn't put it in the fund until this August."

Health care names among top holdings include United Health Group UNH and Aetna AET.

Price has also been adding names in the financial sector, such as Prudential Financial PRU and Lehman Bros. LEH.

He's most impressed with Prudential's financials, which include a year-over-year growth rate of 70%, a P-E of just 15 and a return on equity of 11%, which he considers high for a financial company.

He recently added to his position in Motorola MOT, making the IBD 100 name a top holding. He likes the wireless-gear maker's 144% growth rate, rising sales and high margins.



**Touchstone Large Cap Growth**

Shawn Price

■ Maximum load: 5.75%
■ Expenses: 1.30%

**Returns as of 11/15/05**
2004: 17.10%    3-yr. avg: 17.94%
YTD: 12.21%    5-yr avg: -3.55%
Source: Morningstar

**Sector weightings as of 10/31/05**

| | % of fund assets | Rel. to S&P 500 |
|---|---|---|
| **Information** | | |
| Software | 4.35% | 1.17 |
| Hardware | 16.38 | 1.63 |
| Media | 0 | 0 |
| Telecom | 4.46 | 1.51 |
| **Service** | | |
| Health care | 19.30 | 1.47 |
| Consumer services | 10.86 | 1.34 |
| Business services | 7.77 | 2.04 |
| Financial services | 14.67 | 0.70 |
| **Manufacturing** | | |
| Consumer goods | 3.02 | 0.34 |
| Industrial materials | 9.17 | 0.76 |
| Energy | 6.66 | 0.70 |
| Utilities | 3.35 | 0.96 |

Investor's Business Daily **www.investors.com** © Copyright 2005

**Touchstone Large Cap Growth Fund**

Performance data quoted represents past performance, which is no guarantee of future results. The investment return and principal value of an investment in the Fund will fluctuate so that an investor's shares, when redeemed, may be worth more or less than their original cost. Current performance may be higher or lower than performance data given. **For performance information current to the most recent month-end, visit www.touchstoneInvestments.com.** From time to time, the investment advisor may waive some fees and/or reimburse expenses, which if not waived or reimbursed, may lower performance. Performance for Class B and C shares will differ due to differences in sales charges and class expenses.

| | Price of Stock Close of Business 11/14/2005 | % of Net Assets November 14, 2005 Large Cap Growth Fund |
|---|---|---|
| Apple Computer, Inc. | $ 61.45 | 3.10% |
| Aetna, Inc | $ 90.60 | 1.90% |
| Burlington Resources. Inc | $ 66.80 | 0.90% |
| Google, Inc. Class A | $396.97 | 3.90% |
| Lehman Brothers Holdings, Inc | $125.75 | 2.10% |
| Motorola, Inc | $ 22.86 | 3.20% |
| Prudential Financial, Inc | $ 74.33 | 3.70% |
| United Health Group, Inc. | $ 59.14 | 2.50% |
| Valero Energy Corp | $100.28 | 1.70% |

There is no guarantee that the Fund will continue to hold any one particular security or stay invested in any one particular sector. Holdings are subject to change.



An investor should carefully consider the investment objectives, risks, charges and expenses found in the prospectus. For a prospectus containing complete information about the Touchstone Fund, contact your financial professional or Touchstone at 800.638.8194. Please read the prospectus carefully before investing or sending money.

Investment products offered are not FDIC insured, may lose value and have no bank guarantee.

**TOUCHSTONE**
**I N V E S T M E N T S**

800.638.8194 • www.touchstoneinvestments.com
Touchstone Funds are distributed by Touchstone Securities, Inc *
*A registered broker-dealer and member NASD and SIPC
A Member of Western & Southern Financial Group®

TSF-1065-0511

# Reprinted from BARRON'S

April 11, 2005 | © 2005 Dow Jones & Company, Inc. All Rights Reserved.

## FIRST QUARTER 2005

# LEADERS & LAGGARDS

### A Glance at the Best and Worst Performers · by Lawrence C. Strauss

*(the following has been excerpted:)*

## Stock Funds    2.35%

| CATEGORY | RETURN | BEST FUND | RETURN |
|---|---|---|---|
| Large-Cap Growth | −4.62 | ► Touchstone:Lg Cap Gr;A | 2.48 |
| Large-Cap Core | −2.30 | RMK Select:LDR Gr&In;I | 1.10 |
| Large-Cap Value | −0.92 | ING Corp Leaders | 6.08 |
| Mid-Cap Growth | −2.82 | CGM Tr:Focus | 10.88 |
| Mid-Cap Core | −0.97 | Artisan:Mid Cap Val;Inv | 5.20 |
| Mid-Cap Value | −0.67 | Hennessy:Focus 30 | 8.38 |
| Multi-Cap Growth | −3.97 | Aquinas:Growth | 1.36 |
| Multi-Cap Core | −2.08 | Analytic Defense Eqty | 5.65 |
| Multi-Cap Value | −0.71 | Merill LgCp Value;I | 2.57 |
| Small-Cap Growth | −4.98 | Neuberger Genesis;InstI | 2.84 |
| Small-Cap Core | −3.23 | Fifth:Sm Cap Val;Inst | 3.69 |
| Small-Cap Value | −1.91 | Artisan:Sm Cap Value;Inv | 2.21 |
| S&P 500 Index Objective | −2.25 | Mutual Amer InstI:Eq Idx | −2.08 |
| Specialty Diversified Equity | 6.23 | Oppenheimer RI Asset;Y | 22.09 |
| Equity Income | −0.38 | Merrill Eqty Div;I | 3.08 |

THE PUBLISHER'S SALE OF THIS REPRINT DOES NOT CONSTITUTE OR IMPLY ANY ENDORSEMENT OR SPONSORSHIP OF ANY PRODUCT, SERVICE, COMPANY OR ORGANIZATION.
Custom Reprints (609)520-4331 P.O. Box 300 Princeton, N.J. 08543-0300. DO NOT EDIT OR ALTER REPRINT/REPRODUCTIONS NOT PERMITTED #29096

# BusinessWeek online

# AVOIDING RISKY BUSINESSES

## Shawn Price of the Touchstone Large-Cap Growth Fund seeks to maximize returns, on minimal risk. Among his top holdings: Apple and Aetna

By using a thorough quantitative screening model to rank and sort stocks before analyzing their fundamentals, co-managers Louis Navellier and Shawn Price of the Touchstone Large-Cap Growth Fund (TEQAX) have built a concentrated portfolio of large-cap companies they believe will outperform the overall stock market. Of paramount importance to the managers is risk control: Overly volatile stocks, no matter how good the underlying picture, are often booted from the portfolio.

The strict methodology had produced stellar returns. The $304 million (assets) fund gained 12.8% for the year ending Jan. 31, 2005, vs. a gain of just 2.2% for the average large-cap growth fund. For the three-year period, the fund returned 5.2%, vs. a decline of 0.4% for the peer group. Over five years, the fund slipped 3.5%, but that still trumped its peers, which dropped 7%.

Based on risk-and-return characteristics over the last three years, Standard & Poor's gives Touchstone Large-Cap Growth its highest rank of 5 Stars.

Palash Ghosh of *Standard & Poor's Fund Advisor* spoke recently with Price, who has co-managed the fund since its inception in December, 1997, about its investing strategy and top holdings. Here are edited excerpts of their conversation:

**Q: Describe your stock-selection process.**

**A:** We seek to maximize returns while minimizing risk by investing in large-cap growth companies we think have strong risk-reward characteristics. To find stocks for the portfolio, we use a three-step process. We begin with a universe of domestic stocks with a minimum of $10 billion market cap (at the moment, this universe represents about 435 names).

Every week, we screen this batch using a quantitative method to identify inefficiently priced companies -- i.e., stocks that are outperforming the overall market and possess, among other things, strong earnings growth, expanding profit margins, and high free-cash flow. Then we calculate standard deviation to weed out stocks that are too volatile.

After that, we examine the stocks' underlying fundamentals to understand why they are outperforming. By now, we have whittled our universe down to about 50 names. From this group, we construct a portfolio of between 35 and 40 stocks that are nicely diversified by sector.

**Q: What limits do you impose on the portfolio?**

**A:** We don't allow any individual holding to occupy more than 5% of the fund's total assets. We typically take an initial position of 1.5% to 2% in our stocks. In addition, we usually don't take any big sector bets relative to our benchmark, the Russell 1000 Growth Index, although we don't place any limits in that respect.

**Q: What are your largest holdings?**

**A:** As of Feb. 28, 2005: Burlington Northern Santa Fe (BNI), 4.1%; Aetna (AET), 3.9%; Encana (ECA), 3.8%; Dell (DELL), 3.8%; Becton Dickinson (BDX), 3.7%; Hershey Foods (HSY), 3.6%; Apple Computer (AAPL), 3.6%; Infosys Technologies (INFY), 3.6%; America Movil (AMX), 3.5%; and Mobile Telesystems (MBT), 3.4%.

**Q: What are your top sectors?**

**A:** As of Feb. 28, 2005: Information technology, 21.4%; energy, 17.8%; health care, 16.7%; consumer discretionary, 12.3%; consumer staples, 11.2%; telecommunications, 8.8%; industrials, 6.3%; financials, 3.4%; and materials, 2.1%.

Relative to the benchmark, we're currently overweight in energy, while the other allocations are pretty close to equal-weightings.

**Q: Can you discuss some of your favorite stocks?**

**A:** Apple scored extremely well in our quantitative screens as it outperformed the market by steadily rising in price. On a fundamentals basis, their sales and earnings growth is

## Insight from Standard & Poor's Fund Q&A

spectacular. They generate huge cash flow, and they run an efficient operation with hefty margins. They have the money to develop the next "big thing" in the PC business.

eBay (EBAY), which suffered a price decline in late January due to some tepid fourth-quarter earnings, remains one of our favorite holdings because of its broad brand-name recognition and solid business model. They enjoy tremendous cash flow, and they're so dominant that they're a virtual monopoly in the online-auction industry. eBay recently signed a $300 million project in China, and they may expand their business into India as well. We think eBay can enjoy further upside.

**Q: Given the continued high oil prices, what's one of your top energy stocks?**

A: ExxonMobil (XOM) has dramatically outpaced the market in price performance, but the stock has not been volatile at all. The company generates huge free cash flow with earnings and sales at record levels. Although it has benefited from high oil prices, that's not the reason we bought it. Exxon and certain other energy stocks have simply passed our screening criteria.

**Q: A number of your top holdings are foreign companies.**

A: We will invest in ADRs if they fulfill our screens, but we won't have more than 10% of the fund in foreign stocks. It's difficult for ADRs to make it into our fund because, in many cases, they don't report their financials according to U.S. standards. ADRs often get rejected based on our fundamentals analysis.

**Q: What are your sell criteria?**

A: We will scale back a holding once it surpasses our 5% [of portfolio value] threshold, which Apple did recently. Our annual turnover ratio is about 65%, and much of that is accounted for by trimming and adding to existing positions.

**Q: Can you cite a stock you recently sold off outright and why?**

A: We sold Cisco Systems (CSCO) in early January when its stock performance couldn't keep pace with the market. We had made a 35% to 40% profit on the stock. The company's fundamentals were still strong, but it slipped on our quantitative screening process.

**Q: What's your outlook for large-cap stocks in 2005?**

A: We think the present climate is quite beneficial for the large-cap growth sector. The U.S. markets are witnessing a broad-based economic rally with Corporate America delivering record levels of profits. The geopolitical scene is relatively stable, consumer sentiment is strong, housing prices are solid, and employment is high.

Although the Fed will likely continue to raise rates, they still remain at relatively low levels. Moreover, the weak dollar actually benefits large-caps because so much of their business comes from overseas.

*From Standard & Poor's Fund Advisor*

*All of the views expressed in this research report accurately reflect the research analyst's personal views regarding any and all of the subject securities or issuers. No part of analyst compensation was, is or will be, directly or indirectly related to the specific recommendations or views expressed in this research report.*

*Standard & Poor's Regulatory Disclosure*

*Any advice, analysis, or recommendations contained in articles labeled "Insight from Standard & Poor's" reflect the views of Standard & Poor's, which operates separately from and independently of BusinessWeek Online. It is possible that BWOL may from time to time publish information that is not consistent with advice, analysis, or recommendations that are published by Standard & Poor's. Standard & Poor's and BusinessWeek Online are each units of The McGraw-Hill Companies, Inc.*

Reprinted from BusinessWeek Online, March 10, 2005, copyright by The McGraw-Hill Companies, Inc., with all rights reserved. This reprint implies no endorsement, either tacit or expressed, of any company, product, service or investment opportunity.

TSF-1015-0503



**The Pro Shop**

# Growth Spurt

**By Lisa Scherzer**

June 23, 2005

GROWTH STOCKS AND boy bands have something in common: Both have been out of style since 2000

When the technology bubble popped, growth took a tumble as investors turned to value instead. But following years of neglect, growth stocks are returning to favor with more and more fund managers and investment strategists. Large-cap names like Microsoft (MSFT), Pfizer (PFE) and Intel (INTC), after being ignored for so long, are looking attractive once again

The numbers appear to back this shift in portfolio strategy. The Russell 1000 Growth Index has climbed 4.2% since April 1, better than the 3 4% return of its value-index counterpart. And if Shawn Price, manager of the **Touchstone Large-Cap Growth fund (TEQAX)**, is right about the resurrection of the depressed sector, that gap could widen even more.

Price is worth listening to. His $500 million fund, started in 1997, has outperformed the Russell 1000 Growth Index, its benchmark, every year except 2001 Over the past year the fund has returned 15 4% vs 6 4% for the average large-cap growth fund, according to Lipper Over the past three years the fund has returned an annualized 11 4% vs 6 3% for its peers

Price's stock-picking relies on a quantitative approach augmented by fundamentals and a healthy dose of market psychology Out of a possible 700 large-cap stocks, the fund holds between 35 and 40 names, which are re-evaluated weekly using a proprietary screening process We sat down with Price recently to find out what his formula is telling him to buy—and sell—right now, and why the market is ripe for a rebound in large-cap growth

SmartMoney.com: What s your approach to picking stocks?

Shawn Price: We're kind of a quantitative manager and kind of a kick-the-tires manager. Every week, we start with the large-cap universe of 700 stocks Then we go through a three-step screening process to get it down to 30 or 40 The first step is quantitative; we calculate key statistics, like alpha variable, so we're looking for stocks with positive alphas, stocks that are outperforming the market.

Something that scares the heck out of us is risk We also calculate standard deviation to weed out stocks that are too volatile. We use the alpha divided by the standard deviation plus the risk-reward ratio to judge the stock We punish each stock if it's bringing too much volatility. We're a risk-adjusted manager

Only 100 stocks pass this step. After this analysis I ask, why is the stock outperforming the market? If I can't figure out why, I'm going to move on to one I do understand. As an example, **UnitedHealth Group's (UNH)** earnings are just very strong, they're consistent, sales are great, and demographics are working great. You have something like 5,000 baby boomers turning 60 everyday. They're capitalizing on that What we don't like to see is things like what happened in the tech boom, where some of these dot-com companies were going from 25 cents to $300. When we asked, why is the stock outperforming, we didn't like what we saw: huge negative cash flow, sometimes no earnings at all. We're just trying to find quality out here.

The way we look at fundamentals is that every quarter, we re-evaluate hundreds of variables; kind of like crowd psychology The markets are going through a manic-depressive state. People get excited and depressed about the market. If they're excited, they're interested in sales, earnings momentum They go and buy stocks with those variables. The buying pressure drives the stock up. When people get nervous, things like P/E [price/earnings] ratios, PEG [price/earnings to growth] ratios come into play. Every quarter, we keep up with the changes out there.

Reprinted from the June 2005 site of SmartMoney.com. Touchstone Funds had no influence on the editorial content of this article. SmartMoney does not endorse any product or service of Touchstone Funds.

SM: How do individual variables factor into the overall formula for selecting stocks?

SP: We take variables and build an overall formula. We give each a certain weighting to figure out which variables are working. We use that to calculate basically a grade point average, like you get in school. We grade stocks the same way. We want to buy A students for our clients, and stay away from the Cs and Ds. Only 100 stocks pass the first step; 50 then pass the second step. We go to the final step of the system, called portfolio optimization, in which we basically diversify the portfolio.

For instance, oil and trucking stocks, they prosper in different cycles. They have what you call a lower or negative correlation to each other. But as long as both are good companies, we put them in. One is zigging while the other is zagging. That's OK because it's balanced out. We build a nice diversified portfolio to shake a lot of the risk out of it. On average we end with 35 to 40 stocks.

SM: How do you see the recent attention placed on large-cap growth group? Many money managers are saying a real shift in market leadership is coming soon.

SP: I don't try to make calls like that. Our system does; it's self-mechanized. We can see it in the fundamentals. We see tech exposure is ticking up. There's a shift in investment patterns, a shift in levels of risk, and a shift in where investors think future earnings are going to come from.

Our variables kind of tell us what's going on. Earnings momentum is 15% of my model now. It hasn't been like that for two years. It's exciting that investors are starting to get more aggressive. Our GARP (growth at a reasonable price) ratio—a more conservative variable—is coming down a little bit. That tells us that the psychology out there is shifting to a more aggressive state.

I think everything ultimately comes down to earnings. And there are a lot of strong earnings out there, but not really in the tech sector. Techs overall have been [disappointing].

SM: But many investment strategists are advocating a bias in portfolios toward large-cap growth, with particular emphasis on tech companies. Are there any that appeal to you?

SP: Apple Computer (AAPL) has been doing very well, though it settled down a little bit. We have that one...

People are saying tech stocks are going to take off at some point. We're in a 2 1/2-year period of solid returns. Year-to-date we're up 5%. And it's because of some boring names, like Hershey (HSY) and Gillette (G). We got a 40% gain on Hershey [since we've owned it]. Gillette is a 21% increase. Aetna (AET) is up 72% since we bought it.... We have J.C. Penney (JCP) and Burlington Northern Santa Fe (BNI). We just bought Prudential Financial (PRU), and it's up. We've been finding strength out there. But not in the typical tech names like Dell (DELL) and Cisco (CSCO). With our view on growth, we try not to get pigeonholed by thinking since we're a growth manager we have to have 30% of our assets in technology. We're not going to force our clients to hold tech if they don't pass our system.

Last year we were up 19%. It's an extended rally the way we see it. Based on a fundamental shift in our model, consumer confidence is up. It's back toward a more growth vs. value play.

SM: Some say that this shift to favoring growth-oriented companies is because value stocks tend to do better in a low-interest-rate environment and in the early stages of an economic recovery. Do you agree?

SP: If you look at the overall economy, we've put three million people back to work, and they're spending money. Interest rates are relatively low. Inflation is in check. People own their own houses. Oil is going up, but other commodities are low.... The stock market has been ticking up for the past couple of years. All these things add up.

SM: Growth managers typically favor operational momentum over things like low price/earnings ratios. How much emphasis do you place on valuation when picking stocks?

SP: We're geared toward growth-type variables. Earnings momentum hadn't been in our system for two years. It was completely out, and it's just recently over the past quarter popping up. That's a sign people are more excited than they used to be. At the same time, GARP ratio is coming down.

There's a lot working for large caps. The weak dollar has worked out for me. A lot of these companies do 30% to 40% of their sales overseas. When we analyzed these companies two and three years ago, they were laying people off in waves. The mentality was to get lean and mean, but they were not generating sales. Now, people are going back to work, and they're out buying stuff. Companies have margins. If you put sales and margins together, you have earnings. They went through their pains, and now they're getting the benefit of their sales. Earnings growth out there is tremendous.

SM: What's the general makeup of your portfolio?

SP: We have a lot of weight in health care. Health technologies like Alcon (ACL) and Johnson & Johnson (JNJ) are 8% of our portfolio. Health services like Aetna are 15%. Tech is 10%, a little underweighted. Energy is about 8%, overweighted. Transportation and railroads are doing OK for us. We also have financials like Allstate (ALL) and Prudential. We're pretty diversified.

SM: What's a stock you recently sold and why?

SP: Well, we're net sellers of oil even though we like them.... We sold eBay (EBAY) back in March. We love the name, but they missed their earnings. We don't get emotional about stocks. If they fall any one of our steps, they're out. Same with Starbucks (SBUX). We made a lot of money on the name; it had solid fundamentals. But we took it completely out in April. Their earnings were at expectations, but same store sales were a little weak. People worried that the company was going to slow down. Our quantitative assessment was negative so we sold it off.

In steps one and two, we look at the large-cap universe to try to find the most profitable and best managed companies. The problem with Wall Street is that you can have two great companies but Wall Street recognizes only one of them. The company has to have buying pressure or it's not going to go anywhere. So there needs to be name recognition.... We're never going to be the first into a name or first out of it. And it's worked for us.

Reprinted by permission of SmartMoney. Copyright ©2005 SmartMoney.
SmartMoney is a joint publishing venture of Dow Jones & Company, Inc. and Hearst Communications, Inc. All Rights Reserved Worldwide.
#TSF-1032-0500



*Investing*     KIPLINGER'S | AUGUST 2004

# Kiplinger's

**PERSONAL FINANCE**

**FUNDS** | Here are the best of the bunch, and our take on which of the one-, three-, five-, ten- and 20-year winners are worth buying now.

# And the WINNERS are...



THE ROAD TO RICHES sometimes takes investors on less-traveled byways. That was certainly the case this past year, when fund investors who strayed off the beaten path generally fared better than those who stayed close to home.

Leading the way were funds that specialize in small companies, both domestic and foreign. Among U S -oriented funds, the smaller their target companies, the better the funds performed, on average, for the one-year period to June 1  Small-company funds outpaced midsize-company funds, which in turn outperformed large-company funds  The stellar performance of small-company stocks continues a trend that began in late 1999

The small-stock effect was especially pronounced overseas. Among nonspecialized funds, the top category over the past year was the group that focuses on stocks of small foreign companies; it returned an average of 43%  Only funds that invest in Japan and those that specialize in Chinese companies performed better, on average, than overseas small-company funds  In fact, it was Asia's performance in general, led by Japanese stocks (the world s second-biggest market), that propelled international funds to the top of the perform-

ance charts  We think foreign stocks still have room to run, and in the article that starts on page 34, we describe our six favorite diversified overseas funds

Note that the average three- and five-year returns for most sectors were unimpressive. That's because those numbers reflect the deleterious impact of the 2000–02 bear market  Unless stock markets rise dramatically in the second half of this year, you may see a notable decline in the average five-year returns for stock funds by the end of 2004  At that point, the post-bubble five-year results will, for the first time, exclude stocks' stunning gains in late 1999. During the final seven months of that year, Standard & Poor's 500-stock index returned 14%, and the Nasdaq 100 soared 77%

On the pages that follow, we list the top gainers over the past one, three, five, ten and 20 years in ten different categories  We also identify funds that we think are worthy of your attention  You shouldn't pick funds just because they appear on a list of top performers; consider other issues, such as the length of a manager's tenure, the risks he or she takes and the fund's size (funds that grow too big can become difficult to manage)  Still, funds that have achieved superior returns under one manager or a group of managers can be excellent choices ——**MANUEL SCHIFFRES**

RENEE COMET

*Investing*

KIPLINGER'S | AUGUST 2004

## Large-company growth funds A key ingredient in your portfolio

Large-company growth and value funds should be the core of your investments. But don't look for guidance from the list of one-year winners. Exception: Marsico 21st Century (and its broker-sold Nations clone). Run by a relative newcomer but part of Tom Marsico's collegial shop, the fund has staying power. Longer-term winners boast more focused and consistent stock picking. Team-managed Jensen Portfolio owns about 25 high-quality companies with a history of earnings growth in its concentrated portfolio. Fidelity Contrafund's eclectic holdings range from Yahoo to Colgate-Palmolive, but veteran manager Will Danoff has his hands full steering a fund with assets totaling $38 billion.

**1 YEAR**

| | |
|---|---|
| 1. ProFund UltraOTC Inv | 40.1% |
| 2. Reynolds Fund | 30.9 |
| 3. Rydex Dynamic Velocity 100 H | 30.6 |
| 4. Reynolds Opportunity | 32.5 |
| 5. ProFund UltraDow 30 Inv | 30.6 |
| 6. AllianceBernstein Growth A | 28.7 |
| 7. Touchstone Large Cap Gro A | 27.5 |
| 8. Marsico 21st Century | 27.4 |
| 9. AFBA Five Star USA Global Instl | 27.2 |
| 10. Nations Marsico 21st Century A | 27.0 |
| CATEGORY AVERAGE | 15.5% |

**5 YEARS**

| | |
|---|---|
| 1. Marsico 21st Century | 6.9% |
| 2. Nations Marsico 21st Century A | 6.5 |
| 3. Gartmore US Growth Leaders A | 5.2 |
| 4. Fidelity Contrafund | 4.4 |
| 5. Dreyfus Premier Alpha Growth A | 4.3 |
| 6. Jensen Portfolio | 3.9 |
| 7. Reynolds Fund | 2.1 |
| 8. Calvert Large Cap Growth A | 2.1 |
| 9. J. Hancock US Global Leaders Gro | 1.5 |
| 10. Exeter Tax Managed A | 1.3 |
| CATEGORY AVERAGE | -5.9% |

**5 YEARS**

| | |
|---|---|
| 1. Marsico 21st Century | 6.9% |
| 2. Nations Marsico 21st Century A | 6.5 |
| 3. Gartmore US Growth Leaders A | 5.2 |
| 4. Fidelity Contrafund | 4.4 |
| 5. Dreyfus Premier Alpha Growth A | 4.3 |
| 6. Jensen Portfolio | 3.9 |
| 7. Reynolds Fund | 2.1 |
| 8. Calvert Large Cap Growth A | 2.1 |
| 9. J. Hancock US Global Leaders Gro | 1.5 |
| 10. Exeter Tax Managed A | 1.3 |
| CATEGORY AVERAGE | -5.9% |

**10 YEARS**

| | |
|---|---|
| 1. Santa Barbara Bender Gro A | 9.3% |
| 2. Jensen Portfolio | 7.4 |
| 3. Chesapeake Core Gro (Nottingham) | 6.9 |
| 4. Strong Large Company Growth Inv | 6.7 |
| 5. Exeter Tax Managed A | 6.4 |
| 6. American Growth Fund of America | 5.8 |
| 7. Buffalo USA Global | 5.7 |
| 8. Vanguard Primecap** | 5.1 |
| 9. AFBA Five Star USA Global Instl | 5.0 |
| 10. Fidelity Adv Dyn Cap App T | 3.3 |
| CATEGORY AVERAGE | -3.7% |

**20 YEARS**

| | |
|---|---|
| 1. Vanguard Primecap** | 15.3% |
| 2. American Growth Fund of America | 14.0 |
| 3. Rydex OTC Inv | 13.7 |
| 4. Janus Growth & Income | 13.2 |
| 5. Jensen Portfolio | 13.1 |
| 6. Fidelity Contrafund | 12.6 |
| 7. ABN AMRO Growth N | 12.3 |
| 8. Oppenheimer Cap Appreciation A | 12.3 |
| 9. Van Kampen Exchange** | 12.3 |
| 10. Janus Twenty** | 12.2 |
| CATEGORY AVERAGE | 8.6% |

## Small and midsize blend funds Tempering growth-stock risks with concern for price

Bridgeway Ultra Small Company didn't quite sweep the listings, but it came close, leading the three- and five-year periods, and scoring well in the one-year period. This remarkable fund is closed, but manager John Montgomery says it may reopen if prices topple in the corner of the market in which it fishes—the smallest 10%. Given that he thinks stocks there are pretty pricey, you may get a shot at this fund. You should also be cautious in this category. Best to stick with other tried-and-true names, such as still-open Meridian Growth, which ranks highly in the five- and ten-year periods. Had it been just a bit older, Meridian, with a lifetime annualized return of 15%, would surely have been a 20-year winner, too.

**1 YEAR**

| | |
|---|---|
| 1. Gartmore Micro Cap Equity A | 60.1% |
| 2. ProFund UltraSmall Inv | 58.2 |
| 3. Strong Small Company Value | 53.3 |
| 4. ProFund UltraMid Cap Inv | 50.9 |
| 5. Dreyfus Premier Enterprise A** | 49.5 |
| 6. Buffalo Small Cap** | 47.3 |
| 7. Bridgeway Ultra Small Co** | 47.1 |
| 8. Satuit Micro Cap | 45.1 |
| 9. Fidelity Leveraged Co Stock | 43.4 |
| 10. Fountainhead Special Value | 42.9 |
| CATEGORY AVERAGE | 28.0% |

**5 YEARS**

| | |
|---|---|
| 1. Bridgeway Ultra Small Co** | 27.1% |
| 2. Fidelity Leveraged Co Stock | 23.2 |
| 3. FBR Small Cap A | 20.2 |
| 4. Satuit Micro Cap | 17.3 |
| 5. American Cent Sm Company Inv** | 17.2 |
| 6. Dreyfus Premier Enterprise A** | 16.9 |
| 7. Delaware American Services A | 16.4 |
| 8. Century Small Cap Select Inv | 16.1 |
| 9. IMS Capital Value | 14.5 |
| 10. Buffalo Small Cap** | 13.5 |
| CATEGORY AVERAGE | 5.8% |

**5 YEARS**

| | |
|---|---|
| 1. Bridgeway Ultra Small Co** | 31.0% |
| 2. Turner Micro Cap Growth** | 30.0 |
| 3. Buffalo Small Cap** | 22.7 |
| 4. Bridgeway Micro-Cap Limited** | 20.3 |
| 5. Wasatch Core Growth** | 18.6 |
| 6. Touchstone Emerging Growth A | 16.0 |
| 7. FBR Small Cap A | 16.0 |
| 8. Meridian Growth | 15.9 |
| 9. Sentinel Small Company A** | 15.6 |
| 10. ABN AMRO Mid Cap N | 14.9 |
| CATEGORY AVERAGE | 9.1% |

**10 YEARS**

| | |
|---|---|
| 1. Wasatch Core Growth** | 18.4% |
| 2. Osterweis Fund | 14.9 |
| 3. California Invmt S&P Mid Cap Index | 14.9 |
| 4. Columbia Acorn Z# | 14.8 |
| 5. Sentinel Small Company A** | 14.5 |
| 6. First Eagle Fund of America Y | 14.4 |
| 7. Dreyfus Midcap Index | 14.2 |
| 8. Meridian Growth | 14.1 |
| 9. Federated Mid Cap Index | 13.9 |
| 10. Rainier Small/Mid Cap Eqty | 13.9 |
| CATEGORY AVERAGE | 11.9% |

**20 YEARS**

| | |
|---|---|
| 1. Columbia Acorn Z# | 16.6% |
| 2. Wayne Hummer Growth | 12.4 |
| 3. T. Rowe Price Small Cap Stock** | 12.3 |
| 4. Jennison Small Company B | 11.1 |
| 5. Wright Selected Blue Chip Eq | 10.8 |
| 6. WPG Tudor | 10.7 |
| 7. Vanguard Small Cap Index Inv | 10.1 |
| 8. AXP Discovery A** | 8.4 |
| 9. Eagle Growth Shares (Baxter) | 7.5 |
| CATEGORY AVERAGE | 11.1 |

Closed to new investors   *Closed to new investors; other share classes are available. Source: Copyright © 2004 Standard & Poor's, a division of The McGraw-Hill Companies, Inc. All rights reserved

Excerpted and adapted with permission from the August 2004 issue of **Kiplinger's Personal Finance**
© 2004 The Kiplinger Washington Editors Inc.
For more information about reprints from Kiplinger's Personal Finance, contact PARS International Corp. at 212-221-9595.

# EXHIBIT M

THE WALL STREET JOURNAL          PAGE C7          TUESDAY, JANUARY 17, 2006

# Effect'

, if investors want to stay in

a great start for the year s," notes Bill McVail, senior ager at Turner Investment t small caps have been out-rge caps for such a while, I such a valuation or senti-toward small caps any

style of investing, Mr. I go with growth stocks. cap value portfolio man-ding for low price/earnings ys. "Now I think they're red to find those names." ds remain.

nomy plays out like people d if the Federal Reserve wing the economy and not ik the January effect could he rest of the year," says president of money man-nti Capital Growth. "It single month, but small perform for the year." eifer, chairman of Schaef-t Research, shares her op-r the January effect is a f the strength seen in the past few years. t to incur the risk of being the prudent thing to do is as that have the potential digit returns, such as the he says.

## Session

or its part was derailed tors, including a sense ains had become techni-ded and required some also data that failed to on that the Bank of Eng-to further ease mone-

to the pound were a orecast January house-also December producer-ta showing that while input costs are rising anufacturers are unable to consumers analysts said the data ht to a recent reversal in st-rate futures market, y as last week was trim-a Bank of England rate

conomist David Watt of rns in Toronto said in a t yesterday's data lend ason to continue to lean g chance of a rate esult, "the pound is un-

r—which has had a slug-

# ETFs' Expansion Into Annuities Gains Appeal

**By Jen Ryan**
*Dow Jones Newswires*

Exchange-traded funds have crawled into some variable annuities, and many financial professionals expect this to begin unfolding on a much larger scale.

ETFs resemble index-based mutual funds but trade on an exchange, like stocks. Because of their low expenses and instant diversification, ETFs have become increasingly popular, making their way into more separately managed accounts, hedge funds, 401(k) plans and, now, variable annuities.


**FUND TRACK**

"We see it as a growing trend....There is room for multiple people to start these" within the annuity world, said Joseph Linhares, managing director within the iShares group at Barclays Global Investors, the largest ETF provider.

Annuities are combination insurance and investment products. Traditional variable annuities allow the buyer to invest in a range of mutual-fund-like accounts, while providing a type of insurance death benefit as well.

An increasing number of insurers already sell annuities with ETF options. A spokesman for Jackson National Life Insurance Co. said the company is considering putting ETFs inside variable annuities.

"I would be very surprised if other companies didn't embrace this...if this isn't widespread down the road," said Phil Deangelo, president of advisory services for registered investment-advisory firm Passante Associates, who said he uses ETF-annuity products from Integrity Life Insurance Co.

According to Integrity, response to its offerings has been good. "We've been out of the gate for the better part of 18 months .... We are seeing advisers embracing this type of strategy using ETFs," said Mike Furghiele, the insurer's vice president of marketing.

One of the biggest reasons is cost. "Typically the costs associated with variable annuities have been high for buyers and that has been an issue," said Barry Meyers, Integrity's vice president of business development. By using ETFs, overall costs are lower, and "hopefully lower cost spells better performance."

Integrity's products are distributed by Touchstone Securities Inc., and each offers about eight to 10 of iShares's ETFs. These products are Touchstone Enhanced ETF Fund, Touchstone Aggressive ETF Fund, Touchstone Moderate ETF Fund and Touchstone Conservative ETF Fund.



**Deutsche Asset Management**

## The Central Europe and Russia Fund, Inc.

Transferable Rights Offering for Common Stock

NYSE Symbol "CEE"
NYSE Rights Symbol "CEE.RT"

◆ Record date was December 22, 2005
◆ Last trading day for rights is January 19, 2006
◆ Offer expires January 20, 2006 (unless extended)

For more information and a prospectus contact:

**Georgeson Shareholder**

17 State Street, 10th Floor
New York, NY 10004
Toll Free: (800) 221-4215
Banks and Brokers Call: (212) 440-9800

**Dealer Manager**

**UBS** Investment Bank

January 17, 2006

*Investors should carefully consider the investment objective, risks, and charges and expenses of the Fund before investing. The Fund's prospectus which contains this and other information about the Fund is available by calling the phone number listed above. An investor should carefully read the Fund's prospectus before investing.*

© 2006 UBS. The key symbol and UBS are registered and unregistered trademarks of the UBS Group of Companies around the world. All rights reserved. All other trademarks are the property of their respective owners in the U.S., securities underwriting, trading, and brokerage activities and i & A advisory activities are provided by UBS Securities LLC, a registered broker/dealer that is a wholly owned subsidiary of UBS AG, a member of U New York Stock Exchange and other principal exchanges, and a member of SIPC.



**Give a Gift! Get a Gift!**

Save on a gift of The Journal.

Our gift for you.



Enjoy this $25 gift card-absolutely free-with your paid subscription to The Journal.

**Call 800-WSJ-2206 ext. 126 or visit subscribe.wsj.com/gift to give a gift, today.**

from 0.69% to 0.76% of invested assets. The end cost for the investor, including additional fees, depends on the type of annuity; the additional costs range from 0.60% to more than 1%.

Rydex Investments, of Rockville, Md., came out with two funds-of-ETFs in July 2003 and has another in registration. The existing Rydex products—CLS Advi-

Despite the progress that these three companies have made in merging ETF with variable annuities, some financia advisers say putting an ETF in a variable annuity doesn't make much sense.

Richard Ferri, president of Invest ment-adviser service Portfolio Solution agrees that there likely will be more o

# EXHIBIT N

# TOUCHSTONE

*Two hundred investment advisors utilized*

*in delivering objective investment advice*





**TOUCHSTONE WAY**

# TOUCHSTONE

## The Touchstone Way

We are revolutionizing the investment management consulting profession. How? We deliver objective investment advice and we utilize a disciplined approach we call the Touchstone Way , an innovative process-oriented model that is based on the Prudent Investment Practices developed by the Foundation for Fiduciary Studies. Touchstone is among a handful of investment consulting firms nationwide that are utilizing this new model.

Touchstone has developed a comprehensive and disciplined approach to ensure that the investor remains in control of the investment decisions. Our approach actually makes investment management easier and less time-consuming for the investor. The investor makes the high-level, impactful decisions and delegates the minor details to prudent experts - the professional investment managers.

PHILOSOPHY

STRATEGY

PROCESS

INVESTMENT
PRACTICE

The Touchstone Way is comprised of four critical components that together represent a holistic approach to investment management:

- Investment Philosophy
- Investment Strategy
- Investment Process
- Investment Practices







# TOUCHSTONE

**TOUCHSTONE WAY**

## The Touchstone Way

### Investment Philosophies

Our investment consultants share the same investment philosophies when providing our objective investment advice to our clients. Institutions and individuals that desire a team of investment consultants that possess these core beliefs are a strong match for Touchstone services.

- Investing is a long-term endeavor that favors the patient investor.
- Investors can benefit greatly by retaining investment professionals that deliver objective investment advice.
- A comprehensive investment planning process is a critical success factor for any sound investment plan.
- The investment planning process begins with a clearly defined goal.
- The investor controls their portfolios by focusing on the high-level investment policy decisions.
- The asset allocation decision is the most important decision an investor makes.
- Proper asset allocation is the primary determinant of portfolio performance.
- Investment risk can be reduced with proper diversification.
- About the investment managers:
  - An investment manager's skills can be identified over time.
  - A manager's tax strategy can heavily play into overall performance.
  - An appropriate blending of investment managers can add significant value.
- Investors need quarterly performance reports to monitor their portfolios.
- Active management can add value over time, especially in the less efficient asset classes





Touchstone Investment Consultants



TOUCHSTONE WAY

## The Touchstone Way

### Investment Strategy

Touchstone's overall strategy in working with clients is simple. We give clients more control over their investment portfolios by allowing them to focus on the high-level investment policy decisions for maximum impact.

We aren't setting out to make investment experts out of our clients. That's our job. We apply a sound investment approach. The Touchstone Investment Strategy, which allows our investors to be in full control by addressing the high-level decisions and outsourcing the details to the prudent experts - the professional investment managers.

TOUCHSTONE





## TOUCHSTONE WAY

## TOUCHSTONE

The Touchstone Way

### Investment Process

For every Touchstone client, we initiate a five-step, ongoing process that promotes prudent investment management and avoids speculation. This process is rooted in the Prudent Investment Practices developed by the Foundation for Fiduciary Studies.

These practices outline a sound process to ensure that investment fiduciaries - the people who manage financial assets for others - do so properly.

Touchstone is among a handful of investment consultants that are applying these practices on a daily basis in the investment advisory services we provide to our clients. We are revolutionizing the investment management consulting profession by leading the charge in the nation-wide adoption of these developing investment standards.

Five simple, yet extremely effective steps are followed by our investment consultants:

- **Analyze** - the current financial position and clarify the goals of the investor
- **Diversify** - the client's investment portfolio
- **Formalize** - an investment policy statement
- **Implement** - the investment policy
- **Monitor** - according to the investment plan

All the above entail ongoing rebalancing of the investment portfolio.





TOUCHSTONE

TOUCHSTONE WAY



The Touchstone Way

Investment Practices

Our practices -- or habits -- are critical to The Touchstone Way and is what makes our team unique compared with other investment advisors. Our investment practices provide for a more disciplined investment decision-making process and allow our clients to make high-level investment decisions for maximum impact.

Many investors fail due to a lack of discipline and focus. The practices below - 27 in all -- are the core of our investment advisory model. Again, these Prudent Investment Practices are based the industry standards developed in 2003 by the Foundation of Fiduciary Studies

1. Investments are managed in accordance with applicable laws, trust documents and written investments policy statements.
2. Fiduciaries are fully aware of their duties and responsibilities.
3. Fiduciaries and parties in interest are not involved in self-dealing.
4. Service agreement and contracts are in writing, and do not contain provisions that conflict with fiduciary standards of care.
5. There is documentation to show timing and distribution of cash flows, and the payment of liabilities.
6. Assets are within the jurisdiction of U.S. courts, and are protected from theft and embezzlement.
7. A risk level has been identified.
8. An expected, modeled return to meet investment objectives has been identified.
9. An investment time horizon has been identified.
10. Selected asset classes are consistent with the identified risk, return, and time horizon.
11. The number of asset classes is consistent with portfolio size.
12. There is detail to implement a specific investment strategy.
13. The investment policy statement defines the duties and responsibilities of all parties involved.
14. The investment policy statement defines diversification and rebalancing activities.
15. The investment policy statement defines due diligence criteria for selecting investment options.
16. The investment policy statement defines monitoring criteria for investment options and service vendors.

Touchstone Investment Consultants

17. The investment policy statement defines procedures for controlling and accounting for investment expenses.
18. The investment policy statement defines investment strategies appropriately structured, socially responsible investment strategies (when applicable).
19. The investment strategy is implemented in compliance with the required level of prudence.
20. The fiduciary is following applicable " Safe Harbor " provisions (when elected).
21. Investment vehicles are appropriate for the portfolio size.
22. A due diligence process is followed in selecting service providers, including the custodian.
23. Periodic reports compare investment performance against appropriate index, peer group and IPS objectives.
24. Periodic reviews are made of qualitative and/or organizational changes of investment decision-makers.
25. Control procedures are in place to periodically review policies for best execution, soft dollars, and proxy voting.
26. Fees for investment management are consistent with agreement and with the law.
27. "Finder's fees," 12b-1 fees, or other forms of compensation that have been paid for asset placement are appropriately applied, utilized and documented.



# EXHIBIT O



**OHIO  KENTUCKY · INDIANA · TENNESSEE**

Carol J. Ney
513.651.6433
CNey@FBTLAW.COM

September 16, 2005

**VIA CERTIFIED MAIL**
Touchstone Investment Consultants
500 South Washington Avenue
Minneapolis, Minnesota 55415

      Re:    **TOUCHSTONE Trademark**

Dear Sirs:

      We are counsel to Western & Southern Financial Group Inc. ("Western Southern"). Western Southern has asked to review issues raised with respect to your company's adoption and use of the trademark TOUCHSTONE INVESTMENT CONSULTANTS in connection with financial planning and investment services.

      Western Southern, along with its IFS Financial Services subsidiary, provides life insurance, annuities, mutual funds, and investment management with a heritage that dates back to 1888. Western Southern is one of only seven life groups in the world to earn Standard & Poor's AAA rating. The IFS Financial Services subsidiary provides financial services, including investment management and distribution services with respect to mutual funds, variable annuities and fixed annuities, and brokerage trade clearing services.

      IFS owns federally registered trademarks for TOUCHSTONE, THE TOUCHSTONE FAMILY OF FUNDS, TOUCHSTONE THE MARK OF EXCELLENCE AND INVESTMENT MANAGEMENT & DESIGN; and TOUCHSTONE SELECT. Copies of our client's trademark registration certificates are enclosed herewith. Over the years, our client has developed a strong reputation for providing quality services in association with its trademarks.

      It has recently come to the attention of our client that your company has adopted and is using the name TOUCHSTONE INVESTMENT CONSULTANTS for financial planning and investment services. We must object to your company's use of TOUCHSTONE INVESTMENT CONSULTANTS on the basis that the mark is confusingly similar to our client's registered trademarks.

---

Touchstone Investment Consultants
September 16, 2005
Page 2

In view of our client's prior and extensive use of the TOUCHSTONE trademarks in connection with services virtually identical to those of your company, consumers are likely to believe that your services are in some way authorized by or associated with IFS. Consequently, consumers are likely to be confused, mistaken or deceived into believing that your company's products and services originate with, or are licensed, sponsored or approved by our client. If your use of the trademark were to be tolerated, it would deprive our client of the ability to control the use of its mark and would, thereby, threaten the goodwill our client has generated over the years.

Accordingly, we must request that Touchstone Investment Consultants discontinue all use of the TOUCHSTONE INVESTMENT CONSULTANTS trademark and transition to a new name that does not incorporate TOUCHSTONE.

As our client would prefer to resolve this matter informally, please provide me with your written assurances detailing the steps that you will take to discontinue all use of the TOUCHSTONE INVESTMENT CONSULTANTS trademark or any trademark confusingly similar thereto. Because we would like to resolve this matter in the very near future, we ask that you respond to our concerns no later than **October 1, 2005**.

Sincerely,

FROST BROWN TODD LLC

Carol J. Ney

by Ken

CJN/kem
Enclosures

CinLibrary 0094861.0353243 1556327v 1



# EXHIBIT P

Message

## Toepfer, Tammi

| | |
|---|---|
| **From:** | Ney, Carol J |
| **Sent:** | Monday, September 19, 2005 2:20 PM |
| **To:** | 'Carolyn.saenz@westernsouthernlife.com' |
| **Cc:** | Michel, Kelly E.; Toepfer, Tammi |
| **Subject:** | FW: Touchstone |

Carolyn, I received a phone call earlier from Dave Gutzke (612-230-3701), a principal of Touchston Investors Consultants in Minneapolis, regarding our Cease & Desist letter of last week.

He was very professional, but he made it clear that he does not think there is an issue here because "clients don't overlap", "they are regional and have no intention of expanding beyond the Minneapolis/St. Paul area", he mentioned that he was aware of many other "Touchstone" uses in this arena, and he even stated that they had an attorney "look" at the name before they adopted it. (I'm not sure why your federal registrations did not turn up - so I assume they did not use a trademark attorney.) In any event, he said he "will not change" his name and was going to disregard this letter. He made multiple references to the fact that he would think you all would like him using the name and partner with him or something. I urged him to not "disregard" the letter and perhaps put in writing his proposal to explore a license or some such avenue. After initially objecting to this idea (he thought we should send a proposal to him), he agreed to send the following.

Please let me know if there is anything further you would like us to do on this matter.

Thank you,
Carol

-----Original Message-----
**From:** David A. Gutzke [mailto:dgutzke@ticllc.com]
**Sent:** Monday, September 19, 2005 12:53 PM
**To:** Ney, Carol J.
**Subject:** Touchstone

Carol,

Thank you for your time this morning. Attached is a very nice column from our local Minneapolis newspaper on our new company. Great press for a new firm!

As we discussed, we only do managed accounts, so if your client would like to speak with me regarding using their managers, please have them call me. Inform your client that we use the Fortigent (Lydian Trust) platform and Schwab as the custodian. I see that your client has Schwab OneSource mutual funds available. I don't know if they do separately managed accounts?

Dave


David A. Gutzke
Director of Sales & Operations
Principal
Touchstone Investment Consultants
500 Washington Avenue South
Suite 2015
Minneapolis, MN 55415
612-230-3701
dgutzke@ticllc.com
www.touchstoneinvestmentconsultants.com

9/19/2005

# Business

www.startribune.com/business    StarTribune    Saturday, August 20, 2005 • Section **D**

# Broker Bromelkamp declares independence from Dain



## On Business

**Neal
St Anthony**
COLUMNIST

Dave Bromelkamp, a well-known Twin Cities stockbroker, has resigned from RBC Dain Rauscher - and, in an eyebrow-raising move, retired his brokerage license - and started a new firm with former Windsor Financial Management veteran Dave Gutzke.

Gutzke, Bromelkamp and several associates this week opened Touchstone Investment Consultants, targeted at individuals, foundations and small pension funds

Bromelkamp, who quit picking individual stocks a few years ago to focus on placing client money with independent money managers, left Dain last Friday in a move that wasn't a huge surprise internally. Bromelkamp is an opinionated guy - as well as a top-quartile revenue producer for 18 years "We wish Dave well," said a spokesman for Dain

But his departure comes as financial services firms and regulators are wrestling with the touchy issue of how a broker who works for a brokerage firm may legally differ from an independent "registered investment adviser," or "financial planner," who is paid solely by the client Under the law, the planner is pledged with absolute fidelity to clients in what's called a "fiduciary relationship" The broker is not

In April, the Securities and Exchange Commission (SEC) announced a half-a-loaf ruling that essentially acknowledged that the broker is first an employee of the firm and that the firm also may get paid by product vendors as well as by clients

The ruling created a "broker exemption" that essentially keeps a broker out of trouble, for example, if he puts a client in a mutual fund that pays him and his firm a commission vs a so-called "no-load" fund that invests in the same stocks, such as an S&P 500 index fund

The fact is, good brokers, many of whom make six-figure incomes, always put their clients first. They tend to make plenty over time

And bad brokers put their wallets first. And they sometimes get in trouble

The SEC basically has concluded that the existing oversight and third-party arbitration systems that cover brokerage infractions are sufficient. At least for now.

Regardless, Bromelkamp had urged Dain to set up a separate company in the firm where brokers could establish independent consulting businesses within Dain, as independent investment advisers paid fixed fees by clients They, in turn, would pay Dain for back-office and support services

"It's not a 'Dain' problem," Bromelkamp said this week in his new shop "It's an industry problem. Last Friday when I resigned was the hardest day in my whole career. Dain gave me my start in the industry.

"But the registered investment adviser is held to a fiduciary higher standard of client care than the broker. In our opinion, the brokerages eventually will have to bifurcate their businesses into brokerages and registered investment advisers."

Bromelkamp takes the position that brokers no longer can give independent "advice" Not everybody in the trade feels the same way. The securities industry is asking for a delay and clarification of the new SEC rules

Regardless, he said it was time for a change and an amicable parting and he wanted to be a partner in his own firm

The "Bromelkamp Group" of five at Dain, including financial planning director Jeremy Graff, controlled about $200 million in client assets. Much of that, if past is precedent when investment executives leave for new firms, will follow them to Touchstone, which is on Washington Avenue, a few blocks from Bromelkamp's old office

The move to Touchstone, which opened Monday, is one of the biggest brokerage "lift outs" of the past few years.

Bromelkamp, 45, also is a certified public accountant who was at Dain for 18 years

Gutzke, 46, is a former owner and chief operating officer of Windsor Capital, a $3 billion-asset shop that manages money for Pohlad-family business interests, among others.



**Dave Bromelkamp said that the day he resigned was the toughest of his career.**

Gutzke cashed out in early 2004 after 13 years to take a hiatus with his family and to work as a volunteer, including establishing and funding handsomely a scholarship fund for kids at his old prep school, Phillips Andover in Massachusetts

The working-class Waverly, Minn., native - whose father died when he was a kid - went on to be a first-class student and All Ivy League football player at Princeton

Gutzke got into the investment business in 1981 - after a tryout in another business

"I like to tell people that Bud Grant fired me from my first job," quipped Gutzke, who was cut by the Minnesota Vikings. "And he was a really nice guy about it."

The Touchstone principals stress that they are taking an "open architecture" approach. That is, they will not be bound to "proprietary" products and services They will charge clients an annual fee of 1 percent for their advisory and financial-planning services. And the clients will choose from a list of independent money managers that Touchstone will provide through a relationship with Fortigent, a service that provides independent advisers with access to select money managers and related services.

*Neal St. Anthony can be reached at 612-673-7144 or nstanthony@startribune.com*

*Copyright 2005 Star Tribune. Republished with permission of Star Tribune, Minneapolis-St. Paul. No further republication or distribution is permitted without written consent of Star Tribune.*

# EXHIBIT Q



**A T T O R N E Y S**

OHIO  KENTUCKY  INDIANA  TENNESSEE

Joseph R Dreitler
(614) 464-7280
JDREITLER@FBTLAW COM

December 16, 2005

**Via FAX and E-MAIL**

Mr. David A. Gutzke
Director of Sales & Operations
Touchstone Investment Consultants
500 South Washington Avenue
Minneapolis, Minnesota  55415

> Re:   **TOUCHSTONE Trademark**

Dear Mr Gutzke:

This is in response to your e-mail of September 19, 2005, to my colleague, Ms. Carol J. Ney. In your e-mail you stated that you do not believe that there is an overlap in your products and services with those of our client. While we appreciate your prompt reply, we totally disagree with your conclusions and maintain our client's position as outlined in Ms. Ney's letter of September 16th.

First of all, Touchstone is a strong and arbitrary trademark. It has no meaning that describes financial services and products. Had you conducted even a cursory online trademark search before adopting Touchstone, it would have alerted you to the fact that, other than the numerous registrations owned by my client, there are no other trademark registrations of Touchstone for anything remotely related to investment and financial products and services.

Second, we have studied your website and materials and clearly there is an overlap of our client's goods and services and yours. Our client sells financial products and services to individuals of all economic strata, including high net-worth individuals, and our financial products are similar to many of the financial products that you are selling. Moreover, because my client sells its products all over the country, the idea that there is no potential for confusion because you are based in Minnesota is simply incorrect, both factually and legally. Indeed, it is highly likely that if your client saw an advertisement for one of my client's Touchstone mutual fund products, they would falsely assume that my client's products were sponsored, endorsed or associated with your firm

Mr. David A. Gutzke
December 16, 2005
Page 2

As set forth in Ms. Ney's letter, my client would prefer to resolve this in an amicable manner. However, we cannot permit you to continue to use Touchstone as a service mark, or as your domain name, trade name, and corporate name. We request that you reconsider your position and agree to promptly change your name to something other than Touchstone, and transfer your domain registration to my client. If we do not have your agreement to make such changes by no later than **December 27, 2005**, we will assume that you are not interested in resolving this in an informal and amicable manner, and will commence appropriate legal action to protect our client's rights in its trademark.

Sincerely

Joseph R. Dreitler

JRD:pp

# EXHIBIT R

Message                                                                    Page 1 of 2

## Picketts, Pixie I.

| | |
|---|---|
| **From:** | Dreitler, Joseph R |
| **Sent:** | Monday, December 19, 2005 5:12 PM |
| **To:** | 'David A Gutzke' |
| **Cc:** | Picketts, Pixie I |
| **Subject:** | RE: Small World! |
| **Importance:** | High |

Mr Gutzke

You're correct, it is a small world indeed

Joseph R Dreitler
Frost Brown Todd, llc
Jdreitler@fbtlaw.com
(614) 559-7280

> -----Original Message-----
> **From:** David A. Gutzke [mailto:dgutzke@ticllc.com]
> **Sent:** Monday, December 19, 2005 1:11 PM
> **To:** Dreitler, Joseph R.
> **Cc:** Picketts, Pixie I.
> **Subject:** Small World!
>
> Mr. Dreitler,
>
> I just noticed that one of our selected investment managers (we suggest our clients hire this firm and they make the final decision) is Frank Mastrapasqua who manages your client's mutual fund, Touchstone Growth Opportunities Fund!  We do individually managed accounts due to our client size and also the mutual fund has a load of 5.75% and expense ratio of 1.68%.
>
> I do not think that any of your client's managers are in our universe other than Mr. Mastrapasqua, but I believe this is through his independent firm.  As I stated in an earlier correspondence, please let me know if your client would like to be introduced to our due diligence provider -- this firm advises over $11 billion for affluent individuals.
>
> Thank you,
>
> Dave Gutzke
>
>
> David A. Gutzke
> Director of Sales & Operations
> Principal
> Touchstone Investment Consultants
> 500 Washington Avenue South
> Suite 2015
> Minneapolis, MN 55415

1/11/2006

Message

612-230-3701
dgutzke@ticllc.com
www.touchstoneinvestmentconsultants.com

### Picketts, Pixie I.

| | |
|---|---|
| **From:** | David A. Gutzke [dgutzke@ticllc.com] |
| **Sent:** | Monday, December 19, 2005 4:55 PM |
| **To:** | Dreitler, Joseph R. |
| **Cc:** | Picketts, Pixie I. |

**Subject:** RE: Touchstone Trademark

Mr. Dreitler,

Thank you for your response. I will get back to you on or before December 27 as you requested in your December 16, 2005 letter. I need to do some more research.

Would you also please mail me a signed original of the December 16 letter? I have not received one yet.

Thank you,

Dave

---

**From:** Dreitler, Joseph R. [mailto:JDreitler@fbtlaw.com]
**Sent:** Monday, December 19, 2005 3:39 PM
**To:** David A. Gutzke
**Cc:** Picketts, Pixie I.
**Subject:** RE: Touchstone Trademark

Mr Gutzke,

Informal and amicable means that we would prefer not to file a lawsuit, and would prefer that you agree to change your company's name  If it takes you 90 or 120 days to do that and both of us agree on that, my client will be reasonable on a phase-out  However, it does not mean that we will agree that your company (or any other financial company) can continue to use Touchstone for financial services or products

I'm not really sure what else to say

Joseph R  Dreitler
Frost Brown Todd, llc
Jdreitler@fbtlaw.com
(614) 559-7280

> -----Original Message-----
> **From:** David A. Gutzke [mailto:dgutzke@ticllc.com]
> **Sent:** Monday, December 19, 2005 12:31 PM
> **To:** Dreitler, Joseph R.
> **Cc:** Picketts, Pixie I.
> **Subject:** RE: Touchstone Trademark
>
> Mr. Dreitler,
>
> I would like to speak with you some time. In your letter dated December 16 you talk about "resolving this is an informal and amicable manner" – this is what I do not understand. Usually

1/11/2006

when things are settled in an informal and amicable manner, there is dialogue between the two sides. You have refused any dialogue.

I would like to explain our business to you and search for a resolution.

Thank you for your time.

Dave

David A. Gutzke
Director of Sales & Operations
Touchstone Investment Consultants
500 Washington Avenue South
Suite 2015
Minneapolis, MN 55415
612-230-3701
dgutzke@ticllc.com
www.touchstoneinvestmentconsultants.com

**From:** Dreitler, Joseph R. [mailto:JDreitler@fbtlaw.com]
**Sent:** Monday, December 19, 2005 10:50 AM
**To:** David A. Gutzke
**Cc:** Picketts, Pixie I.
**Subject:** RE: Touchstone Trademark
**Importance:** High

Mr. Gutzke:

Perhaps you should hire a lawyer if you do not understand what I have asked you to do, which is change your company's name

I am not trying to be difficult, but I have been practicing trademark law for many years, and I have investigated what your company is, what they do and that is why we wrote you that letter. I don't debate trademark law with other lawyers when I write such a letter, and "discussing" this on the telephone with you will do nothing to resolve this. You are not going to convince me that my legal analysis is incorrect

Unless you choose to comply with our requests, we really have nothing to say to one another

Joseph R. Dreitler
Frost Brown Todd, llc
Jdreitler@fbtlaw.com
(614) 559-7280

> -----Original Message-----
> **From:** David A. Gutzke [mailto:dgutzke@ticllc.com]
> **Sent:** Monday, December 19, 2005 11:43 AM
> **To:** Dreitler, Joseph R.
> **Cc:** Picketts, Pixie I.
> **Subject:** RE: Touchstone Trademark
>
> Mr. Dreitler,
>
> I just called your office. I do not understand your email below. How can we resolve things
> without any discussion? I am not an attorney, so maybe there is something that I do not

understand?

We do not have any clients outside of the state of Minnesota and I would guess that 99% live within 30 miles of our office in Minneapolis. Also, we are much different from your client -- we are investment "consultants" and do not sell products (not series 7 registered or registered to sell insurance products) and we do not manage any assets. However, as I mentioned in a previous email, we can recommend that our clients use your client's investment products.

I appreciate your response.

Dave

David A. Gutzke
Director of Sales & Operations
Principal
Touchstone Investment Consultants
500 Washington Avenue South
Suite 2015
Minneapolis, MN 55415
612-230-3701
dgutzke@ticllc.com
www.touchstoneinvestmentconsultants.com

**From:** Dreitler, Joseph R. [mailto:JDreitler@fbtlaw.com]
**Sent:** Monday, December 19, 2005 10:18 AM
**To:** David A. Gutzke
**Cc:** Picketts, Pixie I.
**Subject:** RE: Touchstone Trademark
**Importance:** High

Dear Mr Gutzke:

My assistant has forwarded your email on to me. We have stated our position twice and do not believe it will resolve this matter by debating the merits of this case.

I can tell you that my client does have a physical location in Cincinnati, Ohio, but also operates all over the United States as I mentioned in my letter to you. I can also tell you that my client has and will be taking whatever legal action it believes is appropriate against 3rd parties who are misusing its trademark Touchstone in the financial products and services area  Beyond that, we will not discuss the details

Joseph R  Dreitler
Frost Brown Todd, llc
Jdreitler@fbtlaw.com
(614) 559-7280

-----Original Message-----
**From:** David A. Gutzke [mailto:dgutzke@ticllc.com]
**Sent:** Friday, December 16, 2005 12:31 PM
**To:** Picketts, Pixie I.
**Cc:** Dreitler, Joseph R.
**Subject:** RE: Touchstone Trademark

Ms. Picketts,

One more question for Mr. Dreitler. When I search the SEC's advisor's database, I see eight Touchstone's are listed. Here is the web – just type in Touchstone: http://www.adviserinfo.sec.gov/IAPD/Content/Search/iapd_OrgSearch.aspx

I assume that your client is the one listed in Cincinnati.

Questions:
1) Are the other six part of your organization?
2) If not, did your client give them special permission to use the name?
3) If your client gave them special permission, then what was the arrangement?

Thanks for taking the time to answer my questions.

Dave


David A. Gutzke
Director of Sales & Operations
Principal
Touchstone Investment Consultants
500 Washington Avenue South
Suite 2015
Minneapolis, MN 55415
612-230-3701
dgutzke@ticllc.com
www.touchstoneinvestmentconsultants.com

**From:** Picketts, Pixie I. [mailto:PPicketts@fbtlaw.com]
**Sent:** Friday, December 16, 2005 9:47 AM
**To:** David A. Gutzke
**Cc:** Dreitler, Joseph R.
**Subject:** Touchstone Trademark

Please review the attached correspondence from Joe Dreitler   We look forward to your response

Pixie I. Picketts
Assistant to Joseph R. Dreitler
Phone: 614-559-7228
E-mail: ppicketts@fbtlaw com


NOTICE: This electronic mail transmission is for the use of the named individual or entity to which it is directed and may contain information that is privileged or confidential. It is not to be transmitted to or received by anyone other than the named addressee (or a person authorized to deliver it to the named addressee). It is not to be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, delete it from your system without copying or

forwarding it, and notify the sender of the error by replying via email or
by calling Frost Brown Todd LLC at (513) 651-6800 (collect), so that our
address record can be corrected.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed
by the IRS, we inform you that any tax advice contained in this communication
(including any attachments) was not intended or written to be used, and cannot
be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

NOTICE: This electronic mail transmission is for the use of the named
individual or entity to which it is directed and may contain information
that is privileged or confidential. It is not to be transmitted to or
received by anyone other than the named addressee (or a person authorized to
deliver it to the named addressee). It is not to be copied or forwarded to
any unauthorized persons. If you have received this electronic mail
transmission in error, delete it from your system without copying or
forwarding it, and notify the sender of the error by replying via email or
by calling Frost Brown Todd LLC at (513) 651-6800 (collect), so that our
address record can be corrected.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed
by the IRS, we inform you that any tax advice contained in this communication
(including any attachments) was not intended or written to be used, and cannot
be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

NOTICE: This electronic mail transmission is for the use of the named
individual or entity to which it is directed and may contain information
that is privileged or confidential. It is not to be transmitted to or
received by anyone other than the named addressee (or a person authorized to
deliver it to the named addressee). It is not to be copied or forwarded to
any unauthorized persons. If you have received this electronic mail
transmission in error, delete it from your system without copying or
forwarding it, and notify the sender of the error by replying via email or
by calling Frost Brown Todd LLC at (513) 651-6800 (collect), so that our
address record can be corrected

IRS Circular 230 disclosure: To ensure compliance with requirements imposed
by the IRS, we inform you that any tax advice contained in this communication
(including any attachments) was not intended or written to be used, and cannot

be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

NOTICE: This electronic mail transmission is for the use of the named
individual or entity to which it is directed and may contain information
that is privileged or confidential. It is not to be transmitted to or
received by anyone other than the named addressee (or a person authorized to
deliver it to the named addressee). It is not to be copied or forwarded to
any unauthorized persons. If you have received this electronic mail
transmission in error, delete it from your system without copying or
forwarding it, and notify the sender of the error by replying via email or
by calling Frost Brown Todd LLC at (513) 651-6800 (collect), so that our
address record can be corrected.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed
by the IRS, we inform you that any tax advice contained in this communication
(including any attachments) was not intended or written to be used, and cannot
be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

# EXHIBIT S



January 6, 2006


**VIA FAX AND MAIL**
Joseph R. Dreitler, Esq.
Frost Brown Todd LLC
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215-3484

**RECEIVED**

DEC 0 9 2005

**JRD**

Re:     Touchstone Investment Consultants

Dear Mr. Dreitler:

This firm is counsel to Touchstone Investment Consultants ("TIC"). I am writing in response to your firm's September 16, 2005 letter to TIC and your subsequent communications with David Gutzke of TIC.

You assert that TIC's trademark TOUCHSTONE INVESTMENT CONSULTANTS infringes Western & Southern Financial Group Inc.'s trademark rights in various TOUCHSTONE trademarks. We disagree. Our respective clients provide different services in different geographic areas. TIC is an independent investment advisor, not a broker registered with the NASD like Western & Southern and its subsidiary, Touchstone Investments. TIC provides only independent investment advice. It does not sell proprietary products. TIC is registered as a Registered Investment Advisor, as are seven other companies with the designation TOUCHSTONE in their names. TIC is not a member of the NASD. TIC recruits its customers from Minnesota, and mostly from the Minneapolis/St Paul metro area. It does not appear that your client does business in Minnesota. Because our clients are in different markets and provide different services, there is no likelihood of confusion.

Even if there was a likelihood of confusion, however, my client's use of the mark TOUCHSTONE predates your client's use of its TOUCHSTONE marks. Western & Southern's trademark registrations reflect first use dates in October 1994 and December 1997. TIC's use of the mark TOUCHSTONE dates back to 1988. Thus, if there is any likelihood of confusion, it is your client that must refrain from using its TOUCHSTONE marks in Minnesota.

Enclosed are various materials that demonstrate TIC's use of the TOUCHSTONE trademark dating back to 1988. I have asked my client for cleaner copies and will provide them to you

Attorneys & Advisors  /  Fredrikson & Byron, P A
main  612 492 7000  /  200 South Sixth Street, Suite 4000
fax  612 492.7077  /  Minneapolis, Minnesota
www fredlaw com  /  55402-1425

MEMBER OF THE WORLD SERVICES GROUP  /  OFFICES
A Worldwide Network of Professional Service Providers  /  Minneapolis  London  & Monterrey  Mexico

Joseph R. Dreitler, Esq
January 6, 2006
Page 2

upon receipt. Given that TIC's use of the TOUCHSTONE mark predates Western & Southern's use, TIC has every right to continue using the mark in the region where it does business.

I trust that this concludes the matter. If you have any questions, please feel free to call me.

Sincerely,

Lora Esch Mitchell
*Attorney*
**Direct Dial:** 612.492.7185
**Email:** lmitchell@fredlaw.com

LEM/#3217253\1
Enclosures
cc:    David A. Gutzke

# EXHIBIT T

Whois Touchstoneinvestmentconsultants.com [2006-02-07]                Page 1 of 2

Welcome  **Guest!**

| Whois  touchstoneinvestmen > | Domain Suggestions > | For Sale > | Auctions > | Domain Search > | Domain Monitor | Do

| Ping  > |  Traceroute  > |  My IP Address  |  Cheap Domain Name Registration  |  Bulk Check  |  Logo Con
Power Tools:  |  Reverse IP  |  Domain History  |  Mark Alert  |  Name Server Spy new  |  Advanced Auction

# Whois Record for Touchstoneinvestmentconsultants.com

## Page Information

Thumbnail:

**Website Title:** Touchstone Investment Consultants

**Record Type:** Domain Name

**Meta Description:** Touchstone Investment Consultants - A new breed of investment advisor dedicated to delivering objective investment advice.

**Meta Keywords:** Touchstone Investment Consultants, Touchstone, Investment, Consultants, TICLLC, Advisor, Investment, Advice, Financial, Advisor, Financial Advisor, Financial Advice, Investment Advisor, Investment Advice

## Server Data

**Server Type:** Microsoft-IIS/6 0

**IP Address:** 64.202.165 28 [W] [P] [D] [T]

**IP Location:** 🇺🇸 - Arizona - Scottsdale - Go Daddy Software Inc

**Response Code:** 206

**Blacklist Status:** Clear (history)

**SSL Cert:** secureent2.websitecomplete.com expires in 42 days

**Website Status:** Active

**Reverse IP:** 1,358 other sites hosted on this server

Other TLDs

## Registry Data

**ICANN Registrar:** GO DADDY SOFTWARE, INC.

**Created:** 09-May-2005

**Expires:** 09-May-2015

**Registrar Status:** REGISTRAR-LOCK

**Whois Server:** whois godaddy.com

**Name Server:** WSC2.JOMAX NET

**Whois History:** 3 records have been archived

.com     nei

Ra     ☐

**Domain His**

We have reco
touchstoneinv
2005-12-05
Domain Histor

## Whois Record

Registrant:
    Domains by Proxy, Inc.
    DomainsByProxy.com
    15111 N. Hayden Rd., Ste 160, PMB 353
    Scottsdale, Arizona 85260
    United States

**Monitor**

Watch this do
Monitor Tool

**Reverse IP**

There are 1,3
webserver. Vi

```
Registered through: GoDaddy.com
Domain Name: TOUCHSTONEINVESTMENTCONSULTANTS.COM
 Created on: 09-May-05
 Expires on: 09-May-15
 Last Updated on: 02-May-06

Administrative Contact:
 Private, Registration   touchstoneinvestmentconsultants.com@domainsbyproxy.com

 Domains by Proxy, Inc.
 DomainsByProxy.com
 15111 N. Hayden Rd., Ste 160, PMB 353
 Scottsdale, Arizona 85260
 United States
 (480) 624-2599

Technical Contact:
 Private, Registration   touchstoneinvestmentconsultants.com@domainsbyproxy.com

 Domains by Proxy, Inc.
 DomainsByProxy.com
 15111 N. Hayden Rd., Ste 160, PMB 353
 Scottsdale, Arizona 85260
 United States
 (480) 624-2599

Domain servers in listed order:
 WSC1.JOMAX.NET
 WSC2.JOMAX.NET
```

**Backorder**

Set a backord
touchstoneinv
becomes aval

**Domains fo**

**Domain**

TouchstoneR
TouchstoneC
TheTouchsto



Members Area | Web Hosting | Cheap domain name registration | Whois | Domain Suggestions | Domain Search

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Western & Southern Financial Group, Inc. and IFS Financial Services, Inc.

**DEFENDANTS**
Touchstone Investment Consultants, LLC

**(b)** County of Residence of First Listed Plaintiff _____Hamilton_____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

(■ 3 Federal Question marked)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ■ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **CIVIL RIGHTS** | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 441 Voting | **Habeas Corpus:** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Eject | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | | | ☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ■ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Justice |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statues unless diversity):
15 U.S.C. §§1051 et. seq.; 1114(a) and 1125(a) and (d)
Brief description of cause: Action for trademark infringement, false designation of origin and cybersquatting.

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ■ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions)    JUDGE _____    DOCKET NUMBER _____

DATE  May 23, 2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

RLF1-3014984-1

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved)

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8 (a). F. R. C. P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below

United States plaintiff. (1) Jurisdiction is based on 28 U S C 1345 and 1348. Suits by agencies and officers of the United States are included here

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box

Federal question. (3) This refers to suits under 28 U S C 1331. where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution. an act of Congress or a treaty of the United States. In cases where the U S. is a party, the U S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked

Diversity of citizenship. (4) This refers to suits under 28 U S C 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive

VI. Origin. Place an "X" in one of the seven boxes

Original Proceedings. (1) Cases which originate in the United States district courts

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U S C., Section 1441. When the petition for removal is granted. check this box

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date

Transferred from Another District. (5) For cases transferred under Title 28 U S C Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U S C Section 1407. When this box is checked. do not check (5) above

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23. F R C P

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases

Date and Attorney Signature. Date and sign the civil cover sheet
(rev 07/89)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 6 - 3 3 9

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

MAY 2 3 2006
(Date forms issued)

_Steve Carpenter_
(Signature of Party or their Representative)

STEVE CARPENTER
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action